**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ITT EDUCATIONAL SERVICES, INC., )<br>KEVIN M. MODANY, and DANIEL M. )<br>FITZPATRICK, )<br>)<br>Defendants. )<br>) | Civil Action No. 1:15-cv-00758-JMS-MJD |

## ANSWER AND DEMAND FOR JURY TRIAL

Defendants ITT Educational Services, Inc. ("ITT"), Kevin M. Modany, and Daniel M. Fitzpatrick (collectively, "Defendants"), by their undersigned attorneys, for their Answer to the Complaint of plaintiff United States Securities and Exchange Commission ("SEC" or "Commission") state as follows:

## GENERAL DENIAL

Except as otherwise expressly stated herein, Defendants deny each and every claim, theory, and allegation asserted in the Complaint, including, without limitation, any allegations contained in the preamble, headings, or subheadings. Pursuant to Rule 8(b)(6) of the Federal Rules of Civil Procedure, averments in the Complaint to which no response is required shall be deemed as denied. Further, to the extent the Complaint includes characterizations rather than factual allegations, all such characterizations are denied. This Answer and Demand for Jury Trial ("Answer") is based on Defendants' investigations to date, and each Defendant reserves the right to amend and/or supplement this Answer during the course of litigation as new information is discovered.

**SPECIFIC RESPONSES TO THE NUMBERED PARAGRAPHS IN THE COMPLAINT**

Incorporating the foregoing, Defendants state as follows in response to the specific allegations of the Complaint:

1.      Defendants deny the allegations in Paragraph 1.

2.      Defendants deny the allegations in Paragraph 2.

3.      Defendants deny the allegations in Paragraph 3.

4.      Defendants deny the allegations in Paragraph 4.

5.      Defendants deny the allegations in Paragraph 5.

6.      Defendants deny the allegations in Paragraph 6.

7.      Defendants deny the allegations in Paragraph 7.

8.      Defendants deny the allegations in Paragraph 8.

9.      Defendants deny the allegations in Paragraph 9.

10.     The allegations in Paragraph 10 state legal conclusions to which no response is required. To the extent a response is required, Defendants do not contest the Court's subject-matter jurisdiction over this action. Defendants otherwise deny the allegations in Paragraph 10.

11.     The allegations in Paragraph 11 state legal conclusions to which no response is required. To the extent a response is required, ITT admits that it maintains its headquarters and does business in the Southern District of Indiana, namely Carmel, Indiana. ITT does not contest venue in this District. Mr. Modany admits that he resides within this District. Mr. Modany does not contest venue in this District. Mr. Fitzpatrick admits that he resides within this District. Mr. Fitzpatrick does not contest venue in this District. Defendants otherwise deny the allegations in Paragraph 11.

12.     Defendants admit the allegations in Paragraph 12.

13.     Defendants admit that ITT filed registration statements on Forms S-8 on May 9, 2006 and May 8, 2013, which are to be read and interpreted in their entirety. Defendants otherwise deny the allegations in Paragraph 13.

14.     Defendants admit that ITT awarded equity-based compensation to its executives, Board of Directors, and other non-executive officer employees.  Defendants otherwise deny the allegations in Paragraph 14.

15.     Defendants admit the allegations of the first, second, and third sentences of Paragraph 15.  Defendants further admit that Mr. Modany received a Certified Public Accountant ("CPA") license that became inactive and that he was an auditor with a national accounting firm from 1990 to 1995.  Defendants otherwise deny the allegations in Paragraph 15.

16.     Defendants admit that (i) Mr. Modany, consistent with his obligations as CEO and a certifying officer, was part of ITT's disclosure process and played a role, together with others, including ITT's disclosure committee, outside and in-house counsel, ITT's independent auditors, and ITT's Controller, in editing portions of and reviewing ITT's periodic filings and (ii) pursuant to approval from ITT's Board of Directors or Audit Committee, Mr. Modany signed ITT's filings on behalf of ITT, and certified the filings based on his knowledge.  Defendants otherwise deny the allegations in Paragraph 16.

17.     Defendants admit that Mr. Modany and others signed management representation letters during the relevant period "to the best of [their] knowledge and belief," which were provided to ITT's auditor.  Defendants otherwise deny the allegations in Paragraph 17.

18.     Defendants admit that for 2012 and 2013, Mr. Modany received compensation from ITT in the form of salary, short-term compensation, and equity-based compensation, none of which were tied to the financial performance of ITT.  Defendants otherwise deny the allegations in Paragraph 18.

19.     Defendants admit the allegations of the first and third sentences of Paragraph 19.  Defendants admit that Mr. Fitzpatrick has served as ITT's CFO and executive vice president since approximately April 2009.  Defendants admit that Mr. Fitzpatrick has served as ITT's senior vice president, and principal accounting officer.  Defendants admit that Mr. Fitzpatrick obtained a CPA license, but that license became inactive.

20.     Defendants admit that (i) Mr. Fitzpatrick, consistent with his obligations as CFO and a certifying officer, was part of ITT's disclosure process, and played a role, together with others, including ITT's disclosure committee, outside and in-house counsel, ITT's independent auditors, and ITT's Controller, in editing portions of and reviewing ITT's periodic filings; and (ii) pursuant to approval from ITT's Board of Directors or Audit Committee, he signed ITT's filings on behalf of ITT, and certified the filings based on his knowledge. Defendants otherwise deny the allegations in Paragraph 20.

21.     Defendants admit that Mr. Fitzpatrick and others signed management representation letters during the relevant period "to the best of [their] knowledge and belief," which were provided to ITT's auditor. Defendants otherwise deny the allegations in Paragraph 21.

22.     Defendants admit that for 2012 and 2013, Mr. Fitzpatrick received compensation from ITT in the form of salary, short-term compensation, and equity-based compensation, none of which were tied to the financial performance of ITT. Defendants otherwise deny the allegations in Paragraph 22.

23.     Defendants admit that ITT is a for-profit education company that generates revenue through student tuition payments. Defendants further state that ITT's students historically have relied upon a variety of sources to fund their education, including state and federal financial aid programs, savings, scholarships, military benefits, third-party private loans, and tuition credit offered by ITT. As reported in ITT's 2013 Annual Report (Form 10-K) (Oct. 16, 2014), Defendants admit that in 2013, in the aggregate, ITT's institutions derived approximately 82% of their applicable revenue from funds distributed under various Title IV Programs of the Higher Education Act of 1965, as amended ("HEA"), as determined on a cash accounting basis under the calculation of the provision of the HEA commonly referred to as the "90/10 Rule." Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 23 regarding the primary source of revenue for other for-profit education companies. Defendants admit that federal regulations require ITT to

derive at least 10% of its revenue from non-Title IV sources.  Defendants otherwise deny the allegations in Paragraph 23.

24.     Defendants admit that ITT's students historically have relied on various sources to fund their education, including state and federal financial aid programs, savings, scholarships, military benefits, third-party private loans, and tuition credit offered by ITT.  Defendants admit that ITT generated revenue through student tuition payments financed through various sources. Defendants further admit that private student loans became less available to ITT students during the financial crisis of the late 2000s than they had been previously.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24 regarding the motivations and actions of other parties.  Defendants otherwise deny the allegations in Paragraph 24.

25.     Defendants admit that at various times, in 2008 and 2009, ITT offered tuition credit to certain students ("Temporary Credit").  Defendants further admit that Temporary Credit carried no interest and was generally payable within twelve months.  Defendants otherwise deny the allegations in Paragraph 25.

26.     Defendants admit that ITT entered into agreements related to the CUSO Program and the PEAKS Program in 2009 and 2010, respectively, in an effort to ensure that private, third-party educational loans would remain available for ITT students desiring such loans.  Defendants further admit that certain students who acquired PEAKS and/or CUSO private educational loans used the proceeds to pay their outstanding Temporary Credit balances.  Defendants otherwise deny the allegations in Paragraph 26.

27.     Defendants admit that, in 2009 and 2010, ITT entered into agreements related to the CUSO Program and PEAKS Program, respectively.  Defendants admit that ITT entered into the PEAKS Program in 2010, under which an unaffiliated lender originated private education loans to ITT's eligible students and, subsequently, sold those loans to the PEAKS Trust, which issued senior debt to certain investors.  ITT made certain guarantees to the PEAKS Trust. Defendants further admit that, in 2009, ITT entered into agreements with an unaffiliated Credit

Union Service Organization.  As part of the CUSO Program, private education loans were made available to ITT students.  Defendants further admit that ITT entered into a risk-sharing agreement as part of the CUSO Program.  Defendants further admit that the need for payments by ITT related to PEAKS and CUSO was determined in part by student defaults.  Paragraph 27 purports to characterize the agreements related to the CUSO and PEAKS Program, which are to be read and interpreted in their entirety.  Defendants otherwise deny the allegations in Paragraph 27.

28.     Defendants deny the allegations in Paragraph 28.

29.     Paragraph 29 purports to characterize the terms of documents related to the PEAKS program, which are to be read and interpreted in their entirety.  Defendants otherwise deny the allegations of Paragraph 29.

30.     Defendants admit that, in January 2010, ITT entered into a guarantee agreement relating to the PEAKS Program.  Paragraph 30 contains allegations purporting to summarize this document, which is to be read and interpreted in its entirety.  Defendants otherwise deny the allegations in Paragraph 30.

31.     Defendants admit that, in January 2010, ITT entered into a guarantee agreement relating to the PEAKS Program.  Paragraph 31 contains allegations purporting to summarize the terms of this document, which is to be read and interpreted in its entirety.  Defendants otherwise deny the allegations in Paragraph 31.

32.     Defendants admit that, in January 2010, ITT entered into a guarantee agreement relating to the PEAKS Program.  Defendants further admit that student loan defaults could impact the parity ratio.  Paragraph 32 contains allegations purporting to summarize a guarantee agreement relating to the PEAKS Program, which is to be read and interpreted in its entirety.  Defendants otherwise deny the allegations in Paragraph 32.

33.     Defendants admit that in January 2010, ITT entered into an agreement relating to the PEAKS Program.  Paragraph 33 contains allegations purporting to summarize this document,

which is to be read and interpreted in its entirety. Defendants otherwise deny the allegations in Paragraph 33.

34.     Defendants admit that, in 2009, ITT entered into agreements with an unaffiliated credit union service organization. As part of the CUSO Program, approximately $141 million in education loans were made available to ITT students. Defendants further admit that loans made in each year of the program were aggregated into one of three annual loan pools. Defendants otherwise deny the allegations in Paragraph 34.

35.     Defendants admit that, in February 2009, ITT entered into a risk-sharing agreement as part of the CUSO Program. Paragraph 35 purports to characterize the terms of the risk-sharing agreement, which is to be read and interpreted in its entirety. Defendants otherwise deny the allegations in Paragraph 35.

36.     Defendants admit that ITT entered into a risk-sharing agreement as part of the CUSO Program. Paragraph 36 purports to characterize the terms of the risk-sharing agreement, which is to be read and interpreted in its entirety. Defendants otherwise deny the allegations in Paragraph 36.

37.     Defendants deny the allegations in Paragraph 37.

38.     Paragraph 38 purports to characterize portions of the PEAKS Program and CUSO Program agreements, which set fees and rates that ITT students agreed to pay third-party lenders of the PEAKS and CUSO loans after receiving a written disclosure of those fees and rates. Those agreements and written disclosures are to be read and interpreted in their entirety. Defendants otherwise deny the allegations in Paragraph 38.

39.     Defendants deny the allegations in Paragraph 39.

40.     Defendants admit that PEAKS and CUSO were variable interest entities ("VIEs"). Defendants otherwise deny the allegations in Paragraph 40.

41.     Defendants admit that neither the PEAKS Program nor the CUSO Program was consolidated into ITT's financial statements at the time those programs were created. Defendants otherwise deny the allegations in Paragraph 41.

42. Defendants deny the allegations in Paragraph 42.

43. Defendants deny the allegations in Paragraph 43.

44. Defendants deny the allegations in Paragraph 44.

45. ITT and Mr. Fitzpatrick admit that in June 2012, an institutional investor, who was a PEAKS noteholder, asked Mr. Fitzpatrick about the PEAKS parity ratio. ITT and Mr. Fitzpatrick admit that on June 11, 2012, ITT's Controller sent Mr. Fitzpatrick an email regarding the parity ratio, as reported by the PEAKS Trust, for the report dates of March 20, 2012, April 21, 2012, and May 21, 2012. Paragraph 45 purports to characterize this email, which is to be read and interpreted in its entirety. ITT and Mr. Fitzpatrick otherwise deny the allegations in Paragraph 45.

As to Mr. Modany, Mr. Modany lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45 and therefore denies them.

46. Defendants deny the allegations in Paragraph 46.

47. Defendants admit that, on August 9, 2012, ITT's Controller sent an email to Mr. Modany and Mr. Fitzpatrick. Paragraph 47 purports to characterize this email, which is to be read and interpreted in its entirety. Defendants otherwise deny the allegations in Paragraph 47.

48. ITT and Mr. Fitzpatrick admit that on August 21, 2012, ITT's Controller emailed Mr. Fitzpatrick a copy of the PEAKS Trust Monthly Servicing Report for the monthly measurement date of August 20, 2012. ITT and Mr. Fitzpatrick further admit that ITT's Controller emailed Mr. Fitzpatrick, during August 2012, information regarding the PEAKS parity ratio. Paragraph 48 purports to characterize these two emails, which are to be read and interpreted in their entirety. ITT and Mr. Fitzpatrick otherwise deny the allegations in Paragraph 48.

As to Mr. Modany, he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 and therefore denies them.

49. ITT and Mr. Fitzpatrick admit that, on September 14, 2012, ITT's Controller sent Mr. Fitzpatrick an email. ITT and Mr. Fitzpatrick further admit that, on September 27, 2012,

ITT's Controller sent Mr. Fitzpatrick an email. Paragraph 49 purports to characterize these two emails, which are to be read and interpreted in their entirety. ITT and Mr. Fitzpatrick otherwise deny the allegations in Paragraph 49.

As to Mr. Modany, he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 and therefore denies them.

50. Defendants admit the allegations in Paragraph 50.

51. Defendants deny the allegations in Paragraph 51.

52. Defendants admit that ITT employees regularly provided various information to ITT's auditor in connection with the auditor's review work including with respect to the second and third quarters of 2012. Defendants otherwise deny the allegations in Paragraph 52.

53. Defendants deny the allegations in Paragraph 53.

54. Defendants deny the allegations in Paragraph 54.

55. Defendants admit that, beginning in the fourth quarter of 2012, ITT made payments on behalf of student borrowers. Defendants otherwise deny the allegations in Paragraph 55.

56. Defendants deny the allegations in Paragraph 56.

57. Defendants admit that ITT made payments on behalf of student borrowers in 2013 and the first quarter of 2014. Defendants further admit that ITT did not make any parity ratio guarantee payments in the second quarter of 2013. Defendants otherwise deny the remaining allegations in Paragraph 57.

58. Defendants deny the allegations in Paragraph 58.

59. Defendants deny the allegations in Paragraph 59.

60. Defendants deny the allegations in Paragraph 60.

61. Defendants deny the allegations in Paragraph 61.

62. Paragraph 62 purports to quote from and characterize ITT's 2012 Form 10-K, a document that is to be read and interpreted in its entirety. Defendants admit that ITT's 2012

Form 10-K contains the specific text quoted in Paragraph 62, with the exception of the text in brackets. Defendants otherwise deny the allegations in Paragraph 62.

63. Defendants admit that ITT began making payments on behalf of borrowers in the fourth quarter of 2012. Defendants further admit that ITT made payments on behalf of borrowers in the second quarter of 2013, and did not make any parity payments to the PEAKS Trust in that time period. Defendants otherwise deny the allegations in Paragraph 63.

64. Paragraph 64 purports to quote from and characterize ITT's 2012 Form 10-K, ITT's Form 10-Q for the first quarter of 2013, and ITT's Form 10-Q for the second quarter of 2013, documents that are to be read and interpreted in their entirety. Defendants admit that the specific text quoted in Paragraph 64 appears in ITT's 2012 Form 10-K, ITT's Form 10-Q for the first quarter of 2013, and ITT's Form 10-Q for the second quarter of 2013. Defendants otherwise deny the allegations in Paragraph 64.

65. The allegations in Paragraph 65 state legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 65.

66. Paragraph 66 purports to quote from and characterize ITT's 2012 Form 10-K and ITT's Form 10-Qs for the first three quarters of 2013, documents that are to be read and interpreted in their entirety. Defendants admit that the text quoted in Paragraph 66 appears in ITT's 2012 Form 10-K and ITT's Form 10-Qs for the first three quarters of 2013. Defendants otherwise deny the allegations in Paragraph 66.

67. Paragraph 67 purports to quote from and characterize ITT's 2012 Form 10-K, which is to be read and interpreted in its entirety. Defendants admit that ITT's 2012 Form 10-K contains the specific text quoted in Paragraph 67. Defendants otherwise deny the allegations in Paragraph 67.

68. Defendants admit that Mr. Modany and Mr. Fitzpatrick, consistent with their respective obligations, were part of ITT's disclosure process, and played a role, together with others, including ITT's disclosure committee, outside and in-house counsel, ITT's independent auditors, and ITT's Controller in editing portions of and reviewing ITT's periodic filings.

Defendants admit that pursuant to approval from ITT's Board of Directors or Audit Committee, Mr. Fitzpatrick signed and certified ITT's 2012 Form 10-K and Forms 10-Q for the first and second quarters of 2013 based on his knowledge. Defendants further admit that pursuant to approval from ITT's Board of Directors or Audit Committee, Mr. Modany signed and certified ITT's 2012 Form 10-K, and certified ITT's Forms 10-Q for the first and second quarters of 2013 based on his knowledge. Defendants otherwise deny the allegations in Paragraph 68.

69.  Defendants admit that Mr. Modany and Mr. Fitzpatrick participated in an earnings call on October 25, 2012 in which they discussed the performance of the PEAKS Program. Defendants admit that ITT made its first payment on behalf of borrowers on or about October 25, 2012. Defendants otherwise deny the allegations in Paragraph 69.

70.  Defendants admit that ITT, Mr. Modany, and Mr. Fitzpatrick knew about payments on behalf of borrowers. Defendants otherwise deny the allegations in Paragraph 70.

71.  Defendants deny the allegations in Paragraph 71.

72.  Defendants deny the allegations in Paragraph 72.

73.  Defendants admit that in December 2012, Mr. Fitzpatrick's secretary forwarded an inquiry from a PEAKS noteholder to Mr. Fitzpatrick. Paragraph 73 purports to quote from and characterize that message, which is to be read and interpreted in its entirety. The secretary's message included the text quoted in Paragraph 73. Defendants otherwise deny the allegations in Paragraph 73.

74.  Defendants admit that a PEAKS noteholder wrote to Mr. Modany and Mr. Fitzpatrick in February 2013. Paragraph 74 quotes selectively from and purports to characterize correspondence from this PEAKS noteholder, which is to be read and interpreted in its entirety. That correspondence contains the text quoted in Paragraph 74 and requested additional information regarding payments on behalf of borrowers. Defendants otherwise deny the allegations in Paragraph 74.

75.  Defendants admit that, at times, certain PEAKS noteholders requested information regarding payments on behalf of borrowers. Paragraph 75 quotes selectively from

and purports to characterize a June 14, 2013 email communication, which is to be read and interpreted in its entirety. ITT and Mr. Modany admit that the June 14, 2013 e-mail contains the specific text quoted in Paragraph 75, with the exception of the text in brackets. ITT and Mr. Modany otherwise deny the allegations in Paragraph 75.

As to Mr. Fitzpatrick, he lacks sufficient knowledge or information to form a belief as to the truth of the allegations of the second sentence of Paragraph 75, and therefore denies the allegations.

76. Defendants deny the allegations in Paragraph 76.

77. Defendants admit that ITT received an inquiry from a PEAKS noteholder regarding the practice of making payments on behalf of borrowers in February 2013. Defendants further admit that, in early 2014, ITT communicated with its auditor concerning objections that certain PEAKS noteholders made to the practice of making payments on behalf of borrowers. Defendants otherwise deny the allegations in Paragraph 77.

78. Defendants deny the allegations in Paragraph 78.

79. Defendants admit that, after October 2012, ITT continued to revise the model that was used as part of the process to estimate its contingent liability related to the PEAKS guarantee. Defendants otherwise deny the allegations in Paragraph 79.

80. Defendants deny the allegations in Paragraph 80.

81. Defendants deny the allegations in Paragraph 81.

82. Defendants admit that ITT filed a Form 8-K on January 24, 2013 that included an announcement of the Company's 2012 financial results. Defendants further admit that, after filing the Form 8-K, ITT held an earnings call on January 24, 2013. Paragraph 82 purports to characterize ITT's Form 8-K, a document that is to be read and interpreted in its entirety. Defendants otherwise deny the allegations in Paragraph 82.

83. Defendants admit that ITT held an earnings call on January 24, 2013. Defendants otherwise deny the allegations in Paragraph 83.

84.     Paragraph 84 and its associated footnote quotes and emphasizes selectively from a transcript of the January 24, 2013 earnings call, a document that is to be read and interpreted in its entirety.  Defendants admit that such transcript contains the language quoted in Paragraph 84.  Defendants otherwise deny the allegations in Paragraph 84.

85.     Paragraph 85 contains allegations that quote selectively from and purport to summarize analyst reports, which are to be read and interpreted in their entirety.  Defendants otherwise deny the allegations in Paragraph 85.

86.     Paragraph 86 contains allegations purporting to summarize an analyst report, which is to be read and interpreted in its entirety.  Defendants otherwise deny the allegations in Paragraph 86.

87.     Defendants deny the allegations in Paragraph 87.

88.     The allegations in Paragraph 88 state legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 88.

89.     Defendants deny the allegations in Paragraph 89.

90.     Paragraph 90 quotes selectively from ITT's 2012 Form 10-K, a document that is to be read and interpreted in its entirety.  Defendants admit that ITT's 2012 Form 10-K contains the text quoted in Paragraph 90.  Defendants otherwise deny the allegations in Paragraph 90.

91.     Defendants admit that Mr. Modany and Mr. Fitzpatrick, consistent with their respective obligations, were part of ITT's disclosure process, and played a role, together with others, including ITT's disclosure committee, outside and in-house counsel, ITT's independent auditors, and ITT's Controller in editing portions of and reviewing ITT's periodic filings.  Defendants admit that pursuant to approval from ITT's Board of Directors or Audit Committee, Mr. Fitzpatrick signed and certified ITT's 2012 Form 10-K and Forms 10-Q for the first and second quarters of 2013 based on his knowledge.  Defendants further admit that pursuant to approval from ITT's Board of Directors or Audit Committee, Mr. Modany signed and certified ITT's 2012 Form 10-K, and certified ITT's Forms 10-Q for the first and second quarters of 2013 based on his knowledge.  Defendants otherwise deny the allegations in Paragraph 91.

92. Defendants deny the allegations in Paragraph 92.

93. Defendants deny the allegations in Paragraph 93.

94. Defendants admit that ITT did not consolidate the PEAKS Trust in its consolidated financial statements at the time it entered into the PEAKS Program. Defendants otherwise deny the allegations in Paragraph 94.

95. Paragraph 95 quotes selectively from and purports to characterize letters, dated August 4, 2010 and August 18, 2010, respectively, which are to be read and interpreted in their entirety. Defendants admit that ITT received a letter dated August 4, 2010 from the SEC's Division of Corporation Finance and further admit that ITT's response letter dated August 18, 2010 was signed by Mr. Fitzpatrick. Defendants further admit that the letter dated August 18, 2010 contains the text quoted in Paragraph 95, with the exception of the text in brackets. Defendants otherwise deny the allegations in Paragraph 95.

96. Defendants deny the allegations in Paragraph 96.

97. Paragraph 97 quotes selectively from a portion of management representation letters, which documents are to be read and interpreted in their entirety. Defendants admit that the management representation letters contain the text quoted in Paragraph 97. Defendants admit that Mr. Modany, Mr. Fitzpatrick, and ITT's Controller signed management representation letters "to the best of [their] knowledge and belief," which were provided to ITT's auditor in connection with its 2012 audit and its 2013 quarterly reviews. Defendants otherwise deny the allegations in Paragraph 97.

98. Paragraph 98 purports to characterize certain of ITT's Forms 10-K and 10-Q, which documents are to be read and interpreted in their entirety. Defendants otherwise deny the allegations in Paragraph 98.

99. Defendants deny the allegations in Paragraph 99.

100. Defendants admit that, on February 20, 2009, ITT entered into a risk-sharing agreement as part of the CUSO Program. Defendants admit that ITT had certain obligations under the CUSO agreement. Paragraph 100 purports to summarize certain terms of that

agreement, which is to be read and interpreted in its entirety. Defendants otherwise deny the allegations in Paragraph 100.

101.    Defendants admit that ITT had certain payment obligations under the CUSO Program risk-sharing agreement. Defendants further admit that ITT had multiple options under the CUSO Program risk-sharing agreement in the event that its obligations were triggered. Defendants further admit that, at times, ITT satisfied its CUSO guarantee obligation by making monthly payments on behalf of certain defaulted borrowers. Defendants otherwise deny the allegations in Paragraph 101.

102.    Defendants admit that ITT made its first CUSO guarantee payment in late 2011. Defendants further admit that ITT received monthly statements relating to CUSO. Defendants admit that, at times, these statements were forwarded to Mr. Fitzpatrick. Defendants further admit that, at times, ITT satisfied its CUSO guarantee obligation by making monthly payments on behalf of certain defaulted borrowers. Defendants otherwise deny the allegations in Paragraph 102.

103.    Defendants admit that, at various times, ITT's Director of Student Financing attempted to estimate, based on various assumptions, ITT's estimated payments to satisfy its near-term obligations under the CUSO Program, and that some of these analyses were shared with Mr. Modany and Mr. Fitzpatrick. Defendants otherwise deny the allegations in Paragraph 103.

104.    Defendants deny the allegations in Paragraph 104.

105.    Defendants deny the allegations in Paragraph 105.

106.    Paragraph 106 selectively quotes from and purports to characterize ITT's 2012 Form 10-K, which is to be read and interpreted in its entirety. Defendants admit that ITT's 2012 Form 10-K contains the text quoted in Paragraph 106. Defendants otherwise deny the allegations in Paragraph 106.

107.    Defendants admit that Mr. Modany and Mr. Fitzpatrick, consistent with their respective obligations, were part of ITT's disclosure process, and played a role, together with

others, including ITT's disclosure committee, outside and in-house counsel, ITT's independent auditors, and ITT's Controller in editing portions of and reviewing ITT's periodic filings. Defendants admit that pursuant to approval from ITT's Board of Directors or Audit Committee, Mr. Fitzpatrick signed and certified ITT's 2012 Form 10-K and Forms 10-Q for the first and second quarters of 2013 based on his knowledge. Defendants further admit that pursuant to approval from ITT's Board of Directors or Audit Committee, Mr. Modany signed and certified ITT's 2012 Form 10-K, and certified ITT's Forms 10-Q for the first and second quarters of 2013 based on his knowledge. Defendants otherwise deny the allegations in Paragraph 107.

108. Defendants admit that Mr. Modany and Mr. Fitzpatrick participated in an earnings call on January 24, 2013. Defendants otherwise deny the allegations in Paragraph 108.

109. Defendants deny the allegations in Paragraph 109.

110. Defendants deny the allegations in Paragraph 110.

111. Defendants admit that ITT provided its auditor with a number of CUSO risk share obligation estimates. Paragraph 111 purports to characterize those estimates, which should be read and interpreted in their entirety. Defendants otherwise deny the allegations in Paragraph 111.

112. Defendants deny the allegations in Paragraph 112.

113. Defendants admit that ITT made payments on behalf of borrowers to the servicer for the benefit of the PEAKS Trust in the third quarter of 2013. Defendants otherwise deny the allegations in Paragraph 113.

114. Defendants admit the first sentence of Paragraph 114. Paragraph 114 selectively quotes from and purports to characterize ITT's third quarter 2013 Form 10-Q, a document that is to be read and interpreted in its entirety. Defendants admit that the filing contains the text quoted in Paragraph 114 with the exception of the ellipsis. Defendants otherwise deny the allegations in Paragraph 114.

115. Defendants admit that in the third quarter of 2013, Mr. Modany and Mr. Fitzpatrick were part of communications with certain PEAKS noteholders regarding payments

on behalf of borrowers and a potential recapitalization of the senior notes. Defendants otherwise deny the allegations in Paragraph 115.

116. Defendants deny the allegations in Paragraph 116.

117. Defendants deny the allegations in Paragraph 117.

118. Defendants deny the allegations in Paragraph 118.

119. Defendants deny the allegations in Paragraph 119.

120. Defendants admit that Mr. Modany and Mr. Fitzpatrick, consistent with their respective obligations, were part of ITT's disclosure process, and played a role, together with others, including ITT's disclosure committee, outside and in-house counsel, ITT's independent auditors, and ITT's Controller in editing portions of and reviewing ITT's periodic filings. Defendants admit that pursuant to approval from ITT's Board of Directors or Audit Committee, Mr. Fitzpatrick signed and certified ITT's Form 10-Q for the third quarter of 2013 based on his knowledge. Defendants further admit that pursuant to approval from ITT's Board of Directors or Audit Committee, Mr. Modany certified ITT's Form 10-Q for the third quarter of 2013 based on his knowledge. Defendants otherwise deny the allegations in Paragraph 120.

121. Defendants deny the allegations in Paragraph 121.

122. Defendants deny the allegations in Paragraph 122.

123. Defendants deny the allegations in Paragraph 123.

124. Defendants admit that, in October 2013, Mr. Modany and Mr. Fitzpatrick received a draft CUSO cash flow forecast. Defendants otherwise deny the allegations in Paragraph 124.

125. Paragraph 125 selectively quotes from and purports to characterize ITT's third quarter 2013 Form 10-Q, a document that is to be read and interpreted in its entirety. Defendants otherwise deny the allegations in Paragraph 125.

126. Defendants deny the allegations in Paragraph 126.

127. Defendants admit that Mr. Modany and Mr. Fitzpatrick, consistent with their respective obligations, were part of ITT's disclosure process and played a role, together with

others, including ITT's disclosure committee, outside and in-house counsel, ITT's independent auditors, and ITT's Controller in editing portions of and reviewing ITT's periodic filings. Defendants otherwise deny the allegations in Paragraph 127.

128.    Defendants deny the allegations in Paragraph 128.

129.    Defendants deny the allegations in Paragraph 129.

130.    Defendants admit that ITT's stock price declined during certain periods in 2014. Defendants otherwise deny the allegations in Paragraph 130.

131.    Defendants admit that ITT filed a Form 8-K on January 30, 2014. Paragraph 131 purports to characterize ITT's January 30, 2014 Form 8-K, a document that is to be read and interpreted in its entirety. Defendants admit that the change in price of ITT's stock on January 31, 2014 was a decline of approximately 20%. Defendants otherwise deny the allegations in Paragraph 131.

132.    Defendants admit that ITT filed a Form 8-K on March 21, 2014. Paragraph 132 purports to characterize ITT's March 21, 2014 Form 8-K, a document that is to be read and interpreted in its entirety. Defendants admit that the change in closing price of ITT's stock on March 21, 2014, to the closing price on March 24, 2014, was a decline of approximately 7%. Defendants otherwise deny the allegations in Paragraph 132.

133.    Defendants admit that ITT filed a Form 8-K on May 22, 2014. Paragraph 133 purports to characterize ITT's May 22, 2014 Form 8-K, a document that is to be read and interpreted in its entirety. Defendants admit that the change in closing price on May 22, 2014 to closing price on May 23, 2014, was a decline of approximately 8%. Defendants otherwise deny the allegations in Paragraph 133.

134.    Defendants admit that on October 16, 2014, ITT filed its 2013 Form 10-K, along with restated Forms 10-Q for the first three quarters of 2013. Paragraph 134 purports to characterize certain aspects of ITT's SEC filings described in Paragraph 134, which are to be read and interpreted in their entirety. Defendants otherwise deny the allegations in Paragraph 134.

135.     Paragraph 135 purports to characterize certain aspects of ITT's SEC filings described in Paragraph 134, which are to be read and interpreted in their entirety.  Defendants admit that in October 2014, ITT consolidated the PEAKS Trust as of the first quarter of 2013.  Defendants otherwise deny the allegations in Paragraph 135.

136.     Paragraph 136 purports to characterize certain aspects of ITT SEC filings, which are to be read and interpreted in their entirety.  Defendants otherwise deny the allegations in Paragraph 136.

137.     Paragraph 137 purports to characterize certain aspects of ITT's 2013 Form 10-K, which is to be read and interpreted in its entirety.  Defendants otherwise deny the allegations in Paragraph 137.

138.     Paragraph 138 purports to characterize certain aspects of ITT's SEC filings, which are to be read and interpreted in their entirety.  Defendants otherwise deny the allegations in Paragraph 138.

139.     Paragraph 139 purports to characterize certain aspects of ITT's SEC filings, which are to be read and interpreted in their entirety.  Defendants otherwise deny the allegations in Paragraph 139.

140.     Defendants deny the allegations in Paragraph 140.

141.     Defendants deny the allegations in Paragraph 141.

142.     Defendants deny the allegations in Paragraph 142.

143.     Defendants deny the allegations in Paragraph 143.

144.     Defendants deny the allegations in Paragraph 144.

145.     Defendants deny the allegations in Paragraph 145.

146.     Paragraph 146 purports to characterize portions of management representation letters, which are to be read and interpreted in their entirety.  Defendants admit that Mr. Fitzpatrick, Mr. Modany, and ITT's Controller signed management representation letters, "to the best of [their] knowledge and belief," which were provided to ITT's auditor.  Defendants otherwise deny the allegations in Paragraph 146.

147.     Defendants deny the allegations in Paragraph 147.

148.     The allegations in Paragraph 148 set forth legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 148.

149.     Defendants admit that during the relevant period, Mr. Modany was ITT's CEO and chairman of its Board of Directors, positions he has held since 2007 and 2008, respectively. Additionally, the allegations in Paragraph 149 set forth legal conclusions to which no response is required.  To the extent a response is required, Defendants otherwise deny the allegations in Paragraph 149.

150.     Defendants admit that during the relevant period, Mr. Fitzpatrick was ITT's CFO and principal accounting officer.  Additionally, the allegations in Paragraph 150 set forth legal conclusions to which no response is required.  To the extent a response is required, Defendants otherwise deny the allegations in Paragraph 150.

151.     Defendants admit that ITT is subject to the requirements of Section 13(a), and Rules 13a-1, 13a-11, 13a-13 and 12b-20 thereunder, as well as Regulation S-K including Item 303 (relating to MD&A disclosure).  Additionally, the allegations in Paragraph 151 set forth legal conclusions to which no response is required.  To the extent a response is required, ITT otherwise denies the allegations in Paragraph 151.

152.     Defendants deny the allegations in Paragraph 152.

153.     Defendants deny the allegations in Paragraph 153.

154.     Defendants admit that ITT is subject to the requirements of Section 13(b)(2)(A) and Section 13(b)(2)(B).  Additionally, the allegations in Paragraph 154 set forth legal conclusions to which no response is required.  To the extent a response is required, Defendants otherwise deny the allegations in Paragraph 154.

155.     Defendants deny the allegations in Paragraph 155.

156.     Defendants deny the allegations in Paragraph 156.

157.     Defendants deny the allegations in Paragraph 157.

158. Defendants admit that Mr. Modany and Mr. Fitzpatrick are subject to the requirements of Rule 13a-14. Additionally, the allegations in Paragraph 158 set forth legal conclusions to which no response is required. To the extent a response is required, Defendants otherwise deny the allegations in Paragraph 158.

159. Defendants deny the allegations in Paragraph 159.

160. Paragraph 160 purports to reallege and incorporate by reference Paragraphs 1 through 159. Defendants incorporate by reference their responses to Paragraphs 1 through 159.

161. Defendants deny the allegations in Paragraph 161.

162. Defendants deny the allegations in Paragraph 162.

163. Paragraph 163 purports to reallege and incorporate by reference Paragraphs 1 through 159. Defendants incorporate by reference their responses to Paragraphs 1 through 159.

164. Defendants deny the allegations in Paragraph 164.

165. Defendants deny the allegations in Paragraph 165.

166. Paragraph 166 purports to reallege and incorporate by reference Paragraphs 1 through 159. Defendants incorporate by reference their responses to Paragraphs 1 through 159.

167. Defendants deny the allegations in Paragraph 167.

168. Defendants deny the allegations in Paragraph 168.

169. Defendants deny the allegations in Paragraph 169.

170. Paragraph 170 purports to reallege and incorporate by reference Paragraphs 1 through 159. Defendants incorporate by reference their responses to Paragraphs 1 through 159.

171. Defendants deny the allegations in Paragraph 171.

172. Defendants deny the allegations in Paragraph 172.

173. Paragraph 173 purports to reallege and incorporate by reference Paragraphs 1 through 159. Defendants incorporate by reference their responses to Paragraphs 1 through 159.

174. Defendants deny the allegations in Paragraph 174.

175. Defendants deny the allegations in Paragraph 175.

176. Defendants deny the allegations in Paragraph 176.

177.     Paragraph 177 purports to reallege and incorporate by reference Paragraphs 1 through 159.  Defendants incorporate by reference their responses to Paragraphs 1 through 159.

178.     Defendants deny the allegations in Paragraph 178.

179.     Defendants deny the allegations in Paragraph 179.

180.     Paragraph 180 purports to reallege and incorporate by reference Paragraphs 1 through 159.  Defendants incorporate by reference their responses to Paragraphs 1 through 159.

181.     Defendants deny the allegations in Paragraph 181.

182.     Defendants deny the allegations in Paragraph 182.

183.     Paragraph 183 purports to reallege and incorporate by reference Paragraphs 1 through 159.  Defendants incorporate by reference their responses to Paragraphs 1 through 159.

184.     Defendants deny the allegations in Paragraph 184.

185.     Defendants deny the allegations in Paragraph 185.

186.     Paragraph 186 purports to reallege and incorporate by reference Paragraphs 1 through 159.  Defendants incorporate by reference their responses to Paragraphs 1 through 159.

187.     Defendants deny the allegations in Paragraph 187.

188.     Defendants deny the allegations in Paragraph 188.

189.     Paragraph 189 purports to reallege and incorporate by reference Paragraphs 1 through 159.  Defendants incorporate by reference their responses to Paragraphs 1 through 159.

190.     Defendants deny the allegations in Paragraph 190.

191.     Defendants deny the allegations in Paragraph 191.

192.     Defendants deny the allegations in Paragraph 192.

193.     Paragraph 193 purports to reallege and incorporate by reference Paragraphs 1 through 159.  Defendants incorporate by reference their responses to Paragraphs 1 through 159.

194.     Defendants deny the allegations in Paragraph 194.

195.     Defendants deny the allegations in Paragraph 195.

196.     Defendants deny the allegations in Paragraph 196.

197. Paragraph 197 purports to reallege and incorporate by reference Paragraphs 1 through 159. Defendants incorporate by reference their responses to Paragraphs 1 through 159.

198. Defendants deny the allegations in Paragraph 198.

199. Defendants deny the allegations in Paragraph 199.

200. Paragraph 200 purports to reallege and incorporate by reference Paragraphs 1 through 159. Defendants incorporate by reference their responses to Paragraphs 1 through 159.

201. Defendants deny the allegations in Paragraph 201.

202. Defendants deny the allegations in Paragraph 202.

203. Defendants deny the allegations in Paragraph 203.

204. Paragraph 204 purports to reallege and incorporate by reference Paragraphs 1 through 159. Defendants incorporate by reference their responses to Paragraphs 1 through 159.

205. Defendants deny the allegations in Paragraph 205.

206. Defendants deny the allegations in Paragraph 206.

207. Defendants deny the allegations in Paragraph 207.

208. Paragraph 208 purports to reallege and incorporate by reference Paragraphs 1 through 159. Defendants incorporate by reference their responses to Paragraphs 1 through 159.

209. Defendants deny the allegations in Paragraph 209.

210. Defendants deny the allegations in Paragraph 210.

211. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 211 regarding any exemption under the Sarbanes-Oxley Act of 2002. Defendants therefore deny the allegations in Paragraph 211.

212. Defendants deny the allegations in Paragraph 212.

## **ANSWER TO PRAYER FOR RELIEF**

Defendants deny that the Commission is entitled to relief requested against Defendants or to any relief whatsoever, and Defendants request that the Court dismiss all claims against them with prejudice.

## JURY TRIAL DEMANDED

The Commission demanded a jury in this matter. ITT, Modany, and Fitzpatrick also demand a trial by jury for all claims so triable.

## DEFENSES AND AFFIRMATIVE DEFENSES

Defendants assert the following defenses and affirmative defenses without assuming the burden of proof as to any issue or element that otherwise rests with Plaintiff. This statement of defenses and affirmative defenses is based on Defendants' investigation to date, and each Defendant reserves the right to supplement or amend these defenses or affirmative defenses during the course of litigation. To the extent any of the defenses or affirmative defenses asserted herein or asserted in any supplement or amendment is mutually exclusive with any other asserted defense or affirmative defense, such defense or affirmative defense is asserted in the alternative to the other.

1.    The Complaint fails to state any claim against any Defendant upon which relief can be granted.

2.    The Complaint fails to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b).

3.    To the extent the Complaint asserts claims against Defendants based on statements made, such statements were made in good faith, in the belief that such statements were accurate, that there was no omission of a material fact required to be disclosed or necessary to make any such statements not misleading, and that such statements were proper in all respects.

4.    Defendants acted at all relevant times in good faith, without scienter, and without actual knowledge that any of the alleged statements or omissions were false or misleading.

5.    The claims in the Complaint are barred, in whole or in part, to the extent that they seek to impose upon Defendants disclosure obligations that are inconsistent with, or in excess of those imposed by the federal securities laws and the rules and regulations promulgated thereunder by the Securities and Exchange Commission.

6.      The claims in the Complaint are barred in whole or in part because of a lack of materiality.

7.      The claims in the Complaint are barred in whole or in part because the alleged conduct was not (i) in connection with the purchase or sale of securities, or (ii) in the offer or sale of securities.

8.      Defendants are not liable on any theory of scheme liability either because that theory is not cognizable, or because the SEC has not adequately pleaded, and cannot prove, any plan or scheme to defraud, the factual predicates necessary to establish any such plan or scheme, or that the alleged conduct was deceptive or manipulative.

9.      Defendants are not liable because they did not obtain money or property by means of any false or misleading statements.

10.     Defendants are not liable because they did not engage in any transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

11.     Defendants are not liable because they did not engage in any act, practice, or course of business, which operated or would operate as a fraud or deceit upon any person.

12.     Defendants Modany and Fitzpatrick cannot be held liable for any false or misleading statements that they did not "make" as that term is defined in *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. --- , 131 S.Ct. 2296 (2011).

13.     Defendants are not liable to the extent the alleged misstatements or judgments constitute expressions of honest opinion or corporate optimism.

14.     Defendants are not liable because alleged misstatements were forward-looking and were accompanied by meaningful cautionary statements and risk disclosures, so as to be non-actionable under, inter alia, the bespeaks caution doctrine, or were made by or with the approval of an executive officer and such officer did not have actual knowledge that any such statements were false or misleading.

15.     Defendants are not liable because Defendants had no duty, under federal securities laws or otherwise, to disclose the information that the Complaint alleges was omitted or misstated.

16. Defendants are not liable because none of the alleged misrepresentations (by way of alleged misstatement or omission) or conduct was materially manipulative or deceptive in view of, inter alia, the totality of information available to the investing public.

17. Defendants are not liable because they relied upon the work, involvement, advice, judgment, and opinions of numerous professionals and subject-matter experts engaged by the company.

18. The individual defendants are not liable for control person liability under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), because (i) they did not act as a control persons with respect to any alleged misconduct that purportedly constituted a violation, (ii) the Complaint fails to adequately plead any primary violation by a controlled person, and/or (iii) they at all relevant times acted in good faith and did not directly or indirectly induce any act alleged to constitute a violation.

19. The SEC's claims are barred, in whole or in part, because Defendants had no reasonable ground to believe, and did not believe, that the statements referenced in the Complaint were untrue or contained any material omission.

20. The SEC's claims are barred, in whole or in part, because any alleged false or misleading statements referenced in the Complaint were based on information supplied by other sources, which information the Defendants believed to be true.

21. Defendants are not liable because at all relevant times, any information alleged to have been omitted was in fact disclosed or otherwise known.

22. Injunctive relief is unavailable because there has been no violation of the securities laws; any violations of law that may have occurred were not egregious; the lack of scienter is inconsistent with the likelihood of any future violation of the securities laws. Therefore, the SEC cannot establish there is a reasonable likelihood that any Defendant would violate the securities laws in the absence of injunctive relief.

23. No order should issue barring the individual defendants from acting as an officer or director of a public company because the evidence does not demonstrate that he is unfit to serve in that capacity.

24. No disgorgement should be granted because the individual defendants received no profits (such as stock sales), ill-gotten gains or any form of pecuniary benefit that was tied to the alleged misconduct.

25.     The imposition of a civil penalty is not appropriate under the applicable standards, including a lack of scienter (or even negligence), that the Defendants acted in good faith, and the fact that the Defendants were not unjustly enriched.

26.     The individual defendants are not liable under Section 304 of the Sarbanes-Oxley Act because, among other reasons, there was no "misconduct."

27.     The claims in the Complaint are barred, in whole or in part, by applicable statutes of limitation as they are premised on alleged conduct that occurred or alleged statements that were made more than five years before the SEC filed its complaint in this case on May 12, 2015.

28.     To the extent that any of the claims are based upon new interpretations of the antifraud provisions at issue, principles of due process bar these claims.

29.     Each Defendant has insufficient knowledge or information upon which to form a belief as to whether he or it may have additional yet unstated affirmative defenses and each Defendant reserves the right to assert any additional affirmative defenses as may be discovered during the conduct of this litigation.


Dated:  July 17, 2015                          Respectfully submitted,

                                               ICE MILLER, LLP

                                               By:   /s/ *Philip A. Whistler*
                                                     Philip A. Whistler (#1205-49)

                                                     Thomas E. Mixdorf (#16812-49)
                                                     One American Square, Suite 2900
                                                     Indianapolis, IN  46282-0200
                                                     Telephone: (317) 236-2100
                                                     Facsimile: (317) 236-2219
                                                     Philip.Whistler@icemiller.com
                                                     Thomas.Mixdorf@icemiller.com
                                                     *Attorneys for Defendants*
                                                     *ITT Educational Services, Inc. and*
                                                     *Kevin M. Modany*

WILLIAMS & CONNOLLY LLP
Enu Mainigi (*pro hac vice* pending)
Steven M. Farina (*pro hac vice* forthcoming)
Steven M. Pyser (*pro hac vice* pending)
Christopher J. Mandernach (*pro hac vice* pending)
Amanda C. Boozer (*pro hac vice* pending)
725 Twelfth Street, N.W.
Washington, DC 20005-5901
Telephone: 202-434-5000
Facsimile: 202-434-5029
emainigi@wc.com
sfarina@wc.com
spyser@wc.com
cmandernach@wc.com
aboozer@wc.com

*Attorneys for Defendant*
*ITT Educational Services, Inc*

MORGAN, LEWIS & BOCKIUS LLP
Eric W. Sitarchuk (*pro hac vice* pending)
Ryan P. McCarthy (*pro hac vice* pending)
1701 Market St.
Philadelphia, PA 19103
(215) 963-5000 (Telephone)
(215) 963-5001 (Fax)
esitarchuk@morganlewis.com
rmccarthy@morganlewis.com

David I. Miller (*pro hac vice* pending)
101 Park Ave.
New York, NY 10178
(212) 309-6000 (Telephone)
(212) 309-6001 (Fax)
david.miller@morganlewis.com

*Attorneys for Defendant Kevin M. Modany*


FROST BROWN TODD LLC

By:  /s/  Bryan S. Strawbridge (with consent)
        Bryan S. Strawbridge (#29076-49)

MCDERMOTT WILL & EMERY LLP
Fredric D. Firestone (*pro hac vice* pending)
Michael A. Ungar (*pro hac vice* pending)
James M. Commons (*pro hac vice* pending)
Alison L. Nadel (*pro hac vice* pending)
500 North Capitol Street, N.W.
Washington, D.C. 20001
Telephone: (202) 756-8000
Facsimile: (202) 756-8087
rfirestone@mwe.com

Alan S. Brown (#3536-49)
201 North Illinois Street, Suite 1900
P.O. Box 44961
Indianapolis, IN 46244-0961
Telephone: (317) 237-3800
Fascimile: (317) 237-3900
abrown@fbtlaw.com


*Attorneys for Defendant Daniel M. Fitzpatrick*

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2015, copies of the foregoing Answer were filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


_/s/  Philip A. Whistler_
Philip A. Whistler