**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 1:15-cv-00758-JMS-MJD |
| ITT EDUCATIONAL SERVICES, INC., KEVIN M. MODANY, and DANIEL M. FITZPATRICK, | ) ) ) | |
| Defendants. | ) ) | |

<u>**PLAINTIFF'S BRIEF IN SUPPORT OF ITS**</u>
<u>**MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

## Table of Contents

INTRODUCTION .................................................................................................................2

ELEMENTS UPON WHICH THE COMMISSION IS MOVING ..........................................4

    I.      Interstate Commerce .............................................................................................4

    II.     In Connection With the Purchase or Sale ............................................................4

    III.    Offer of Sale........................................................................................................5

    IV.   Control Person .....................................................................................................5

    V.     SOX 304..............................................................................................................5

    VI.   Reliance on Counsel ............................................................................................6

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE.....................................................6

    I.      General Background .............................................................................................6

    II.     Additional Undisputed Material Facts Concerning the "Offer or Sale"
         Requirements of Securities Act Section 17 ..........................................................9

    III.    Additional Undisputed Material Facts Concerning Reliance on Counsel ..............9

         A.   General........................................................................................................9

         B.   Disclosures Related to Payments on Behalf of Borrowers ...........................11

         C.   Disclosures Related to ITT's Projected PEAKS Payments ..........................12

         D.   Disclosures Related to CUSO.....................................................................13

ARGUMENT ......................................................................................................................14

    I.      Interstate Commerce ...........................................................................................15

    II.     In Connection With the Purchase or Sale ............................................................17

    III.    In the Offer or Sale .............................................................................................18

    IV.   Control Person .....................................................................................................20

    V.     SOX 304..............................................................................................................22

VI.    Reliance on Counsel ................................................................................................23

    A.    Disclosures Related to Payments on Behalf of Borrowers ...........................25

    B.    Disclosures Related to PEAKS Netting .......................................................26

    C.    Disclosures Related to CUSO ......................................................................27

CONCLUSION ...............................................................................................................28

<u>Table of Authority</u>

<u>Cases</u>

*Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083 (10th Cir. 2003) ................................................ 21

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................. 15

*Canen v. Chapman*, 847 F.3d 407 (7th Cir. 2017) ...................................................... 15

*Dorsey v. Morgan Stanley*, 507 F.3d 624 (7th Cir. 2007) .......................................... 15

*Howard v. Everex Sys.*, 228 F.3d 1057 (9th Cir. 2000) ................................................ 22

*Newby v. Lay  (In re Enron Corp. Sec., Derivative & ERISA Litig.* , 258 F. Supp. 2d 576
    (S.D. Tex. 2003) ........................................................................................................ 22

*Reserve Fund Secs. & Derivative Litig. v. Reserve Mgmt. Co.* , No. 09 Civ. 4346 (PGG),
    2012 WL 4774834 (S.D.N.Y. Sept. 12, 2012) ........................................................ 25

*Rieger v. Drabinsky  (In re Livent Noteholders Sec. Litig.*), 151 F. Supp. 2d 371
    (S.D.N.Y. 2001) ........................................................................................................ 22

*Schwartz v. State Farm Mut. Auto. Ins. Co*., 174 F.3d 875 (7th Cir. 1999) ................................. 15

*SEC v. Antar*, 15 F. Supp. 2d 477 (D.N.J. 1998) ........................................................ 18

*SEC v. Bangor Punta Corp*., 331 F. Supp. 1154 (S.D.N.Y. 1971) ............................................ 19

*SEC v. Benson*, 657 F. Supp. 1122 (S.D.N.Y. 1987) ..................................................... 19

*SEC v. Chester Holdings, Ltd*., 41 F. Supp. 2d 505 (D.N.J. 1999) ...................................... 18, 19

*SEC v. Goldsworthy*, CV 06-10012-JGD, 2008 WL 8901272 (D. Mass. June 11, 2008) .......... 19

*SEC v. Hasho*, 784 F. Supp. 1059 (S.D.N.Y. 1992) ..................................................... 16

*SEC v. Huff*, 758 F. Supp. 2d 1288 (S.D. Fla. 2010) .......................................... 16, 17

*SEC v. Jenson*, 835 F.3d 1100 (9th Cir. 2016) ................................................... 23, 24

*SEC v. Life*, 854 F.3d 765 (5th Cir. 2017) ................................................. 23

*SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801 (2d Cir. 1975) ...................................... 20

*SEC v. Nutmeg Grp., L.L.C.*, No. 09-cv-1775, 2017 WL 3269389 (N.D. Ill. Aug. 1, 2017) ...... 25

*SEC v. Randy*, 38 F. Supp. 2d 657 (N.D. Ill. 1999) ...................................... 16

*SEC v. Softpoint, Inc.*, 958 F. Supp. 846 (S.D.N.Y. 1997) ........................................... 19

*SEC v. Stanard*, 2009 WL 196023 (S.D.N.Y. Jan. 27, 2009) .................................... 16

*SEC v. StratoComm Corp*., 2 F. Supp. 3d 240 (N.D.N.Y. 2014) ...................................... 21

*SEC v. Tex. Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir. 1968) ..................................... 17

*SEC v. Zandford*, 535 U.S. 813 (2002) ....................................................... 17

*U.S. SEC v. Jensen*, 835 F.3d 1100 (9th Cir. 2016) ........................................... 22-23

*U.S. v. Naftalin*, 441 U.S. 768 (1979) .................................................................. 18, 19

*U.S. v. Roti*, 484 F.3d 934 (7th Cir. 2007) ................................................................ 24

*U.S. v. Van Allen*, 524 F.3d 814 (7th Cir. 2008) ................................................ 4, 6, 25

*Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir. 1987) ........................... 22

*Wyo. State Treasurer v. Moody's Inv'rs Serv. (In re Lehman Bros.*
  *Mortgage-Backed Sec. Litig.*), 650 F.3d 167 (2d Cir. 2011) ........................... 20

<u>Statutes</u>

15 U.S.C. § 10(b) ............................................................................................. 4, 15, 17

15 U.S.C. § 12(b) .......................................................................................................... 6

15 U.S.C. § 17 ............................................................................................................... 9

15 U.S.C. § 17(a) ............................................................................... 4, 5, 15, 18, 19, 20

15 U.S.C. § 17(a)(2) .................................................................................................... 19

15 U.S.C. § 20(a) .............................................................................................. 5, 20, 22

15 U.S.C. § 77q ......................................................................................................... 4, 15

15 U.S.C. § 77q(a) ...................................................................................................... 18

15 U.S.C. § 78j ............................................................................................... 4, 15, 17

15 U.S.C. § 78t .............................................................................................................. 5

15 U.S.C. § 78t(a) ....................................................................................................... 20

15 U.S.C. § 304 ............................................................................................................. 5

15 U.S.C. § 7243 ...................................................................................................... 5, 22

15 U.S.C. §§ 15, 20(a) ............................................................................................... 20

Plaintiff United States Securities and Exchange Commission, pursuant to Fed. R. Civ. P. 56 and Local Rule 56-1, hereby submits its Brief in Support of its Motion for Partial Summary Judgment.

## **<u>INTRODUCTION</u>**

In this securities fraud case, the SEC has alleged that defendants Kevin Modany and Dan Fitzpatrick, the former CEO and CFO of ITT Educational Services, Inc. ("ITT") engaged in a scheme to conceal the failures of two of ITT's off-balance sheet student loan programs. Defendants Modany and Fitzpatrick are charged with, among other things, intentionally, recklessly, or negligently participating in this scheme and making various false or misleading statements related to the financial health of the student loan programs, which were known as PEAKS and CUSO. In light of the substantial burden a moving party must bear to prevail on summary judgment, the Commission recognizes that many issues involved in these claims must await resolution by the jury.

That said, there are certain important elements of various claims on which there can be no genuine dispute of material fact, and on which the Commission is entitled to judgment as a matter of law. For example, there is no dispute that ITT was a publicly-traded company and that the misconduct alleged occurred through, among other things, public filings and investor calls – facts that courts routinely recognize meet the "interstate commerce" element of the Commission's fraud claims. Similarly, the undisputed fact that the alleged misrepresentations were made in documents such as public filings and press releases, which are designed to reach investors and to influence their decisions to transact in a publicly-traded security, meets the "in connection with the purchase or sale" requirement of the Commission's claims for violation of Section 10(b) of the Securities Exchange Act of 1934 and related Rule 10b-5. And that fact –

coupled with the undisputed fact that the alleged misstatements and omissions were incorporated in ITT's securities registration statements filed with the SEC – clearly meets the related requirement that the misconduct be in the "offer or sale" of securities for purposes of Section 17(a) of the Securities Act of 1933.

The Commission has also alleged that the defendants are liable as control persons for many of the charged violations. The control person provisions in the federal securities laws are expansive, and are intended to reach prospective wrongdoers rather than to permit the escape of those who would otherwise be responsible for the acts of their employees. It is undisputed that defendants Modany and Fitzpatrick were the chief executive officer and chief financial officer, respectively, of ITT, were part of ITT's disclosure process, played a role in editing portions of and reviewing ITT's periodic filings, and signed and certified the SEC filings at issue. As such, it is clear that Modany and Fitzpatrick had the sort of power and authority to make them control persons under the law.

Relatedly, the Commission has alleged that, because of the misstatement of ITT's financial statements for numerous periods, Modany and Fitzpatrick are required to give up certain bonus and equity based compensation under the clawback provisions of the Sarbanes-Oxley Act ("SOX"). The SOX clawback provisions are triggered when the restatements are "as a result of misconduct." The Commission is entitled to judgment as a matter of law that, for purposes of this provision, the misconduct need not be intentional.

Finally, in response to the Commission's allegations, defendants have asserted that they are "not liable" because they relied on ITT's in-house and external counsel for many key disclosure issues. While reliance on counsel is a real affirmative defense, a defendant must prove, among other things, that he "in good faith sought to advice of an attorney" and, once

advice was received, the defendant "acted strictly in accordance with the advice of his attorney." *U.S. v. Van Allen*, 524 F.3d 814, 823 (7th Cir. 2008). Here, the undisputed evidence shows that neither defendant Modany nor defendant Fitzpatrick actually sought or followed legal advice regarding the key disclosures at issue. Thus, the Commission is entitled to judgment as a matter of law as to this defense.

As outlined in detail below, the Commission is entitled to summary judgment on these elements of its claims. The remaining issues must await a decision by the finder of fact.

## ELEMENTS UPON WHICH THE COMMISSION IS MOVING[1]

The Commission is moving for summary judgment on the following elements of its claims:

### I. Interstate Commerce

To prove a violation of Section 10(b) of the Exchange Act, the Commission must show that the violative acts occurred "by use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange." 15 U.S.C. § 78j. Similarly, Section 17(a) of the Securities Act requires that the violative acts occur "by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails." 15 U.S.C. § 77q. The Commission is moving for summary judgment on this element [Claims 1 – 5]. [Filing No. 1 at ¶¶ 161, 163, 167, 171, 174 (Complaint).]

### II. In Connection With the Purchase or Sale

To prove a violation of Section 10(b) of the Exchange Act, the Commission must show that the violative acts occurred "in connection with the purchase or sale of a security." The

---

[1] On October 23, 2017, Commission counsel reached out to Defendants to ask if they would stipulate to the elements of interstate commerce, offer or sale, and purchase or sale. Defendants were unable to do so.

Commission is moving for summary judgment on this element [Claims 1 – 3]. [Filing No. 1 at ¶¶ 161, 163, 167 (Complaint).]

III. Offer or Sale

Similarly, to prove a violation of Section 17(a) of the Securities Act, the Commission must show that the violative acts were committed "in the offer or sale" of securities. The Commission is moving for summary judgment on this element [Claims 4 – 5]. [Filing No. 1 at ¶¶ 171, 174 (Complaint).]

IV. Control Person

Section 20(a) of the Exchange Act provides that "every person who, directly or indirectly, controls any person" liable under the Exchange Act is also liable "to the same extent as the controlled person." 15 U.S.C. §78t. Thus, if defendant Modany and/or defendant Fitzpatrick are "control persons" of ITT, they are liable to the same extent as ITT. The Commission is moving for summary judgment that defendants are control persons of ITT [Claims 2, 11, 14]. [Filing No. 1 at ¶¶ 164, 195, 206 (Complaint).]

V. SOX 304

Section 304 of the Sarbanes Oxley Act of 2002 provides that "if an issuer is required to prepare an accounting restatement due to the material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws, the chief executive officer and chief financial officer of the issuer shall reimburse the issuer for any bonus or other incentive-based or equity-based compensation received by that person from the issuer during the 12–month period following the first public issuance or filing with the Commission (whichever first occurs) of the financial document embodying such financial reporting requirement." 15 U.S.C. § 7243. The Commission is moving for summary judgment that the

"misconduct" required by this Section is not limited to intentional misconduct [Claim 15]. [*See* Filing No. 1 at ¶¶ 208-212 (Complaint).]

VI. Reliance on Counsel

In response to the Commission's allegations, defendants assert that they are not liable because they relied upon the advice of ITT's in-house and outside attorneys, among other professionals. [*See* Filing No. 210 at ¶ 17 (Defendants' Statement of Claims and Defenses); *see also* Filing No. 33 (Defendants' Answer).] In the Seventh Circuit, the elements required to assert a reliance on counsel or advice of counsel defense include that a defendant "in good faith sought to advice of an attorney" and, once advice was received, the defendant "acted strictly in accordance with the advice of his attorney." *U.S. v. Van Allen*, 524 F.3d 814, 823 (7th Cir. 2008). Because the undisputed evidence shows that neither defendant Modany nor defendant Fitzpatrick actually sought or followed legal advice regarding the key disclosures at issue, the Commission is moving for summary judgment on this defense. [Filing No. 210 at ¶ 17 (Defendants' Statement of Claims and Defenses).]

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

I.   General Background

1.   ITT Educational Services, Inc. was a Delaware corporation with headquarters in Carmel, Indiana. [Filing No. 1 at ¶12 (Complaint); Filing No. 33 at ¶ 12 (Answer).]

2.   ITT was a for-profit higher education company. [Filing No. 1 at ¶12 (Complaint); Filing No. 33 at ¶ 12 (Answer).]

3.   ITT's stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act, and was quoted on the New York Stock Exchange. [Filing No. 1 at ¶12 (Complaint); Filing No. 33 at ¶ 12 (Answer).]

4.   ITT filed with the Commission a Form 10K for 2012 and Forms 10-Q for the first three quarters of 2013. [*See* Filing No. 225-2 at 7, 17-20  (ITT Educational Services 10K dated 12/31/2012); Filing No. 225-3 at 7, 9-12, 18, 22-25, 32, 34-37 (ITT Educational Services 10Q for periods ending March 31, 2013, June 20, 2013 and September 30, 2013).]

5.   Defendant Modany was ITT's chief executive officer ("CEO") and chairman of its board of directors during the relevant period, positions he had held since 2007 and 2008, respectively. [Filing No. 1 at ¶15 (Complaint); Filing No. 33 at ¶ 15 (Answer).]

6.   Modany was ITT's president and chief operating officer from approximately 2005 to 2007 and was ITT's chief financial officer ("CFO") from approximately 2003 to 2005. [Filing No. 1 at ¶15 (Complaint); Filing No. 33 at ¶ 15 (Answer).]

7.   Fitzpatrick was ITT's CFO and principal accounting officer during the relevant time period. [Filing No. 1 at ¶ 150 (Complaint); Filing No. 33 at ¶ 150 (Answer).]

8.   Fitzpatrick was ITT's CFO and executive vice president from approximately April 2009. [Filing No. 1 at ¶19 (Complaint); Filing No. 33 at ¶ 19 (Answer).]

9.   Modany was part of ITT's disclosure process and played a role in editing portions of and reviewing ITT's periodic filings. [*See* Filing No. 1 at ¶¶ 16, 91, 107, 120 (Complaint); Filing No. 33 at ¶¶ 16, 91, 107, 120 (Answer).]

10. Modany signed and certified ITT's periodic filings. [*See* Filing No. 1 at ¶ 16 (Complaint); Filing No. 33 at ¶ 16 (Answer).]

11. Fitzpatrick was part of ITT's disclosure process, and played a role in editing portions of and reviewing ITT's periodic filings. [*See* Filing No. 1 at ¶¶ 20, 91, 107, 120 (Complaint); Filing No. 33 at ¶¶ 20, 91, 107, 120 (Answer).]

12. Fitzpatrick signed and certified ITT's periodic filings. [*See* Filing No. 1 at ¶20 (Complaint); Filing No. 33 at ¶ 20 (Answer).]

13. Modany signed and certified ITT's 2012 Form 10-K, and certified ITT's Forms 10-Q for the first and second quarters of 2013. [*See* Filing No. 1 at ¶¶ 68, 91, 107 (Complaint); Filing No. 33 at ¶¶ 68, 91, 107 (Answer).]

14. Fitzpatrick signed and certified ITT's 2012 Form 10-K and Forms 10-Q for the first and second quarters of 2013. [*See* Filing No. 1 at ¶¶ 68, 91, 107 (Complaint); Filing No. 33 at ¶¶ 68, 91, 107 (Answer).]

15. Modany certified ITT's Form 10-Q for the third quarter of 2013. [*See* Filing No. 1 at ¶ 120 (Complaint); Filing No. 33 at ¶ 120 (Answer).]

16. Fitzpatrick signed and certified ITT's Form 10-Q for the third quarter of 2013. [*See* Filing No. 1 at ¶ 120 (Complaint); Filing No. 33 at ¶ 120 (Answer).]

17. Modany participated in an earnings call on October 25, 2012 in which he discussed the performance of the PEAKS Program. [*See* Filing No. 1 at ¶ 69 (Complaint); Filing No. 33 at ¶ 69 (Answer).]

18. Fitzpatrick participated in an earnings call on October 25, 2012 in which he discussed the performance of the PEAKS Program. [*See* Filing No. 1 at ¶ 69 (Complaint); Filing No. 33 at ¶ 69 (Answer).]

19. ITT held an earnings call on January 24, 2013 in which Modany and Fitzpatrick participated. [*See* Filing No. 1 at ¶¶ 82-83, 108 (Complaint); Filing No. 33 at ¶¶ 82-83, 108 (Answer).]

20. On October 16, 2014, ITT filed its 2013 Form 10-K, along with restated Forms 10-Q for the first three quarters of 2013. [Filing No. 1 at ¶ 134 (Complaint); Filing No. 33 at ¶ 134 (Answer).]

21. Modany is subject to the requirements of Rule 13a-14. [Filing No. 1 at ¶ 158 (Complaint); Filing No. 33 at ¶ 158 (Answer).]

22. Fitzpatrick is subject to the requirements of Rule 13a-14. [Filing No. 1 at ¶ 158 (Complaint); Filing No. 33 at ¶ 158 (Answer).]

II. Additional Undisputed Material Facts Concerning the "Offer or Sale" Requirement of Securities Act Section 17

23. ITT filed registration statements on Forms S-8 on May 9, 2006 and May 8, 2013. [Filing No. 1 at ¶13 (Complaint); Filing No. 33 at ¶ 13 (Answer).]

24. ITT's Form S-8 registration statements incorporated certain prior filings and all subsequently filed periodic reports until all of the registered securities are sold or deregistered. [*See* Filing No. 225-4 at 2 (ITT Form S-8, filed May 9, 2006); Filing No. 225-5 at 3 (ITT Form S-8, filed May 8, 2013).]

III. Additional Undisputed Material Facts Concerning Reliance on Counsel

A. General

25. Defendants assert that they are not liable because they relied upon the advice of ITT's in-house and outside attorneys, among other professionals. [Filing No. 210 at ¶ 17 (Defendants' Statement of Claims and Defenses); *see also*[Filing No. 33 at 26 ¶ 17 (Answer).]

26. Defendants assert that Christine Long and Clark Elwood provided them advice regarding ITT's disclosures to be included in ITT's SEC Form 10-Q for the third quarter of 2012, Form 10-K for 2012, Form 10-Q for the first quarter of 2013, Form 10-Q for the second quarter of 2013, and Form 10-Q for the third quarter of 2013, as well as earnings calls and releases during these

time periods. [*See* Filing No. 225-6 at 7, 15 (Defendants' Supplemental Discovery Responses dated 5/18/2016).]

27. Defendants assert that Brian Lane provided them advice regarding ITT's disclosures to be included in ITT's SEC Form 10-Q for the third quarter of 2013. [*See* Filing No. 225-6 at 8, 15 (Defendants' Supplemental Discovery Responses dated 5/18/2016).]

28. Defendants assert that Janelle Blankenship provided them advice regarding ITT's Form 10-Q for the third quarter of 2012. [*See* Filing No. 225-7 at 9, 11 (Defendants' Response to SEC Requests for Admissions and Interrogatories dated 6/30/2016).]

29. Christine Long was in-house counsel for ITT from March 2007 until approximately November 2012. [*See* Filing No. 225-8 at 4, 5, 6 (Christine Long Depo at 12:15-12:17, 13:14-15:8, 17:5-17:13).]

30. Beginning in January 2013, Christine Long became counsel at the law firm of Faegre Baker Daniels, LLP, and ITT was a client of hers. [*See* Filing No. 225-8 at 6, 7 (Christine Long Depo at 17:5-17:13, 22:15-22:24).]

31. Clark Elwood was in-house counsel for ITT from approximately 1991 until he retired in May 2013. [*See* Filing No. 225-9 at 5-6 (Clark Elwood Depo at 14:6-14:9, 16:1-16:10, 16:21-17:6).]

32. Clark Elwood had a consulting relationship with ITT between May 2013 and 2014. [*See* Filing No. 225-9 at 6 (Clark Elwood Depo at 19:25-20:6).]

33. Brian Lane is a partner at the law firm of Gibson Dunn & Crutcher. [*See* Filing No. 225-10 at 4 (Brian Lane Depo at 11:21-23).]

34. At some point prior to 2011, Brian Lane began representing ITT on certain matters. [*See* Filing No. 225-10 at 5 (Brian Lane Depo at 13:15-14:18).]

35. Janelle Blankenship was an attorney at the law firm of Faegre Baker Daniels LLP. [*See* Filing No. 225-11 at 4 (Janelle Blankenship Depo at 11:25-12:1).]

36. From approximately 2006 until early January 2013, Janelle Blankenship provided legal services to ITT. [*See* Filing No. 225-11 at 5 (Janelle Blankenship Depo at 16:11-16:19).]

37. Janelle Blankenship does not recall any specific issues anyone at ITT wanted her to be aware of or consider with respect to ITT's Form 10-Q for the third quarter of 2012. [*See* Filing No. 225-11 at 7 (Janelle Blankenship Depo at 24:9-24:15).]

38. Janelle Blankenship does not recall giving any legal advice at the October 2012 disclosure committee meeting. [*See* Filing No. 225-11 at 10, 12 (Janelle Blankenship Depo at 39:17-40:1, 47:4-47:12).]

39. Defendants do not assert that any other attorney provided them advice regarding disclosures to be included in ITT's Form 10-Q for the third quarter of 2012, Form 10-K for 2012, Form 10-Q for the first quarter of 2013, Form 10-Q for the second quarter of 2013, and Form 10-Q for the third quarter of 2013, as well as earnings calls and releases during these time periods. [*See* Filing No. 225-6 at 5-8, 11 (Defendants' Supplemental Discovery Responses dated 5/18/2016); Filing No. 225-7 at 3-7, 11 (Defendants' Response to SEC Requests for Admissions and Interrogatories dated 6/30/2016).]

B. <u>Disclosures Related to Payments on Behalf of Borrowers</u>

40. The SEC alleges that, in the fourth quarter of 2012, ITT began making payments on PEAKS loans that were nearing default (payments on behalf of borrowers, or "POBOB"). [*See, e.g.*, Filing No. 1 at ¶ 4 (Complaint); *see also* Filing No. 33 at ¶¶ 55, 57 (Answer).]

41. Prior to the third quarter of 2013, Christine Long does not recall anyone from ITT asking for advice on whether ITT should disclose the fact that it was making POBOB. [*See* Filing No. 225-8 at 19 (Christine Long Depo at 149:25-151:2).]

42. Prior to the third quarter of 2013, Christine Long does not recall advising anyone from ITT regarding whether ITT should disclose the fact that it was making POBOB. [*See* Filing No. 225-8 at 19 (Christine Long Depo at 149:25-151:2).]

43. Clark Elwood does not recall anyone in ITT's management asking whether the practice of making POBOB needed to be disclosed in the Management Discussion and Analysis section of ITT's 2012 Form 10-K. [*See* Filing No. 225-9 at 9 (Clark Elwood Depo at 91:10-91:18).]

44. Prior to the third quarter of 2013, Brian Lane does not recall anyone at ITT asking for advice on whether to disclose POBOB. [*See* Filing No. 225-10 at 8 (Brian Lane Depo at 39:24-40:5).]

45. Kevin Modany does not recall being personally involved in seeking advice from counsel on whether or not to disclose POBOB to ITT's investors. [*See* Filing No. 225-12 at 8, 9, 12 (Kevin Modany Depo at 97:7-97:16, 108:14-108:18, 117:13-117:18).]

46. Dan Fitzpatrick does not remember specially asking any attorney what disclosure ITT needed to make related to the POBOB practice. [*See* Filing No. 225-13 at 6 (Daniel Fitzpatrick Depo at 135:1-135:12, 136:2-136:9).]

C. Disclosures Related to ITT's Projected PEAKS Payments

47. The SEC alleges that, from the fourth quarter of 2012 through the third quarter of 2013, ITT projected making more than $100 million in total guarantee payments to the PEAKS program, but disclosed only its much lower contingent liability. [*See, e.g.*, Filing No. 1 at ¶ 5 (Complaint).]

48. From the third quarter of 2012 through the third quarter of 2013, Christine Long did not recall whether anyone from ITT asked her for legal advice as to whether ITT should separately disclose the amount of PEAKS guarantee payments projected to be made. [*See* Filing No. 225-8 at 10, 13 (Christine Long Depo at 33:10-34:4, 90:13-91:1).]

49. Clark Elwood does not recall anyone asking him whether ITT should disclose that it would pay approximately $120 million over the next seven to ten years on the PEAKS program. [*See* Filing No. 225-9 at 12, 13, 16, 18, 21 (Clark Elwood Depo at 103:9-103:21, 106:7-106:24, 121:1-121:15, 159:6-159:12, 169:7-169:12).]

50. In connection with his disclosure advice for the Form 10-Q for the third quarter of 2013, Brian Lane does not recall specifically being asked by anyone at ITT whether ITT should disclose the amounts of PEAKS guarantee payments projected to be made. [*See* Filing No. 225-10 at 11 (Brian Lane Depo at 54:9-55:13).]

51. Kevin Modany was not a party to any conversations with counsel where counsel was specifically asked whether ITT needed to disclose the gross cash payments it anticipated making to the PEAKS program versus the net liability. [*See* Filing No. 225-12 at 14, 15-16 (Kevin Modany Depo at 225:9-225:24, 248:8-249:7).]

52. Dan Fitzpatrick did not specifically ask counsel for advice regarding disclosures in light of the way ITT calculated its PEAKS liability. [*See* Filing No. 225-13 at 9 (Daniel Fitzpatrick Depo at 181:21-181:25, 183:23-184:12).]

D.  Disclosures Related to CUSO

53. The SEC alleges that ITT failed to disclose important information with respect to the CUSO student loan program. [*See, e.g.*, Filing No. 1 at ¶¶ 102-109, 124-129 (Complaint).]

54. From the third quarter of 2012 through the third quarter of 2013, Christine Long did not recall anyone from ITT asking for advice regarding disclosures related to the CUSO program's contingent liability. [*See* Filing No. 225-8 at 16 (Christine Long Depo at 135:25-136:18).]

55. From the third quarter of 2012 through the third quarter of 2013, Christine Long did not recall providing any advice regarding disclosures related to the CUSO program's contingent liability. [*See* Filing No. 225-8 at 16 (Christine Long Depo at 135:25-136:18).]

56. Clark Elwood does not recall ever being asked by anyone at ITT whether the different payment options available under the CUSO documents needed to be disclosed in ITT's public filings. [*See* Filing No. 225-9 at 23 (Clark Elwood Depo at 183:3-183:9, 183:15-183:22).]

57. In connection with his disclosure advice for the Form 10-Q for the third quarter of 2013, Brian Lane does not recall anyone from ITT seeking specific disclosure advice relating to the CUSO program. [*See* Filing No. 225-10 at 13 (Brian Lane Depo at 88:9-88:17).]

58. In connection with his disclosure advice for the Form 10-Q for the third quarter of 2013, Brian Lane does not recall anyone from ITT asking whether ITT should disclose its internal projections of CUSO cash flow forecasts. [*See* Filing No. 225-10 at 14 (Brian Lane Depo at 90:1-90:7).]

## **ARGUMENT**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 644

(7th Cir. 2016). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Canen v. Chapman*, 847 F.3d 407, 412 (7th Cir. 2017). However, the court is "not required to draw every conceivable inference from the record" in favor of the nonmoving party, but "only those inferences that are reasonable." *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999). "[I]nferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).

The movant bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted). If it fails to do so, summary judgment should be granted for the movant.

## I.     Interstate Commerce

To prove a violation of Section 10(b) of the Exchange Act, the Commission must show that the violative acts occurred "by use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange."  15 U.S.C. § 78j. Similarly, Section 17(a) of the Securities Act requires that the violative acts occur "by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails." 15 U.S.C. § 77q.

The Commission has alleged that, among other things, defendants engaged in the following fraudulent conduct:

a.　　Making misstatements or omissions in public filings made with the SEC. [*See*, *e.g.*, Filing No. 1 at ¶¶ 3, 4, 60-68, 87-93, 105, 119 (Complaint).]

b.　　Failing to consolidate the PEAKS Trust into ITT's financial statements. [*See*, *e.g.*, Filing No. 1 at ¶¶ 3, 6, 94-99 (Complaint).]

c.　　Making misstatements or omissions in conference calls. [*See*, *e.g.*, Filing No. 1 at ¶ 3, 69-71, 82-86, 108 (Complaint).]

The Commission is not moving for summary judgment on whether these violations occurred. That is a factual question for determination by the jury. Rather the Commission is moving for judgment that, if these violations occurred, they occurred through the use of interstate commerce.

Misstatements or omissions made in public filings made with the SEC are made by the use of interstate commerce. *See SEC v. Huff*, 758 F. Supp. 2d 1288, 1353 (S.D. Fla. 2010) *aff'd*, 455 Fed. Appx. 882 (11th Cir. 2012); *SEC v. Stanard*, 2009 WL 196023 at *25 (S.D. N.Y. Jan. 27, 2009). ITT's Form 10-Ks and 10-Qs are public filings made with the SEC. Undisputed Fact # 4. If violative misstatements or omission were made in public filings, those violations occurred through the use of interstate commerce.

Misstatements or omissions made in telephone calls are also made using interstate commerce. *See Huff*, 758 F. Supp. 2d at 1353; *SEC v. Randy*, 38 F. Supp. 2d 657, 667 (N.D. Ill. 1999); *SEC v. Hasho*, 784 F. Supp. 1059, 1106 (S.D. N.Y. 1992). Defendants participated in the phone calls alleged to be violative. Undisputed Fact # 17, 18, 19. Accordingly, if violative misstatements or omission were made in those phone calls, those violations occurred through the use of interstate commerce.

Finally, ITT was a publically traded company using the New York Stock Exchange, a national securities exchange. Undisputed Fact # 3. This fact satisfies the requirement for the use of interstate commerce. *See Huff*, 758 F. Supp. 2d at 1353. As a result, any violation connected to securities of ITT occurred through the use of interstate commerce.

There is no genuine issue that any violations of Securities Act 17(a) or Exchange Act 10(b) occurred through the use of interstate commerce and the Commission is entitled to summary judgment on that element of Claims 1 through 5.

## II.   In Connection With the Purchase or Sale

To prove a violation of Section 10(b) of the Exchange Act, the Commission must show that the violative acts occurred "in connection with the purchase or sale of a security."  15 U.S.C. § 78j. In SEC enforcement actions, courts broadly construe the "in connection with the purchase or sale of a security" language to effectuate the securities statutes' remedial purposes and to protect investors. *See SEC v. Zandford,* 535 U.S. 813, 819 (2002) (the in connection with requirement "should be 'construed "not technically and restrictively, but flexibly to effectuate its remedial purposes."'"). "Whenever assertions are made ... in a manner reasonably calculated to influence the investing public" the "in connection with" requirement is satisfied. *See SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 861-862 (2d Cir.1968) (en banc)). Thus, the misrepresentation need only be a "public dissemination in a document ... on which an investor would presumably rely. *SEC v. Rana Research, Inc.,* 8 F.3d 1358, 1362 (9th Cir.1993). Misrepresentations in documents such as public filings and press releases, which are designed to reach investors and to influence their decisions to transact in a publicly-traded security meet the "in connection with the purchase or sale" requirement. *See SEC v. Wolfson,* 539 F.3d 1249, 1262 (10th Cir. 2008) (collecting cases).

As discussed above, the Commission has alleged that defendants' violations included misstatements or omissions in public filings made with the SEC and in earnings calls. [*See*, *e.g.*, Filing No. 1 at ¶¶ 3, 4, 60-71, 82-99, 105, 108 119 (Complaint).] Those filings and calls were designed to reach investors and to influence investors' decisions related to ITT securities. As a result, any violations arising from those filings or calls occurred in connection with the purchase or sale of a security.

There is no genuine issue that any violations of Exchange Act 10(b) occurred in connection with the purchase or sale of a security and the Commission is entitled to summary judgment on that element of Claims 1 through 3.

III. <u>In the Offer or Sale</u>

To prove a violation of Section 17(a) of the Securities Act, the Commission must establish that the violations are committed "in the offer or sale" of securities. 15. U.S.C. § 77q(a). The terms offer and sale "are expansive enough to encompass the entire selling process," and there is no requirement "that the fraud occur in any particular phase of the selling transaction." *U.S. v. Naftalin,* 441 U.S. 768, 773 (1979). The statutory language of Section 17(a) "has been broadly construed to encompass a wide range of conduct." *SEC v. Chester Holdings, Ltd.,* 41 F.Supp.2d 505, 518 (D. N.J. 1999) (quoting *SEC v. Antar,* 15 F.Supp.2d 477, 528 (D. N.J. 1998)).

Violations committed outside the context of a specific securities offering, such as misstatements and omissions in periodic filings, meet the "in the offer or sale" requirement of Section 17(a) of the Securities Act. As the Supreme Court noted in *Naftalin*, "[u]nlike much of the rest of the [Securities] Act, [Section 17(a)] was intended to cover any fraudulent scheme in an offer or sale of securities, whether in the course of an initial distribution or in the course of

ordinary trading." *U.S. v. Naftalin,* 441 U.S. at 778; *see also, SEC v. Goldsworthy*, 2008 WL

8901272 (D. Mass. June 11, 2008) (holding that "the SEC's claims under Section 17(a) were

properly predicated upon misstatements and omissions contained in [a] press release and in []

Forms 10-Q and 8-K filed with the SEC."); *SEC v. Chester Holdings, Ltd.*, 41 F. Supp. 2d 505,

527 (D. N.J. 1999) (granting SEC's motion for summary judgment on Section 17(a) and Rule

10b-5 based on material misstatements contained in a press release and SEC filings). The

Commission has alleged that the defendants engaged in a fraudulent scheme and made material

misstatements and omissions in periodic filings with the Commission and other statements to the

public. [*see*, *e.g.*, Filing No. 1 at ¶¶ 1, 3, 4, 7, 60-71, 87-99, 105-109, 119-123 (Complaint).]

These violations were committed "in the offer or sale" of securities in violation of Section 17(a).

 Moreover, defendants made material misstatements and omissions that were incorporated

in ITT's securities registration statements filed with the SEC, which clearly meets the "in the

offer or sale" requirement of Section 17(a). *See, e.g.*, *SEC v. Softpoint*, 958 F. Supp. 846, 863

(S.D. N.Y. 1997) (misstatements in a Form S-8 registration statement "fall within the scope" of

Section 17(a)(2) and (3)); *SEC v. Benson*, 657 F. Supp. 1122, 1130 (S.D. N.Y. 1987) (omissions

and misstatements about a corporation's income in securities registration statements violated

Section 17(a)); *SEC v. Bangor Punta Corp.*. 331 F. Supp. 1154, 1160–61 (S.D. N.Y.1971)

(omission of just one material fact in a securities registration statement violated Section 17(a)).

ITT filed registration statements on Forms S-8 on May 9, 2006 and May 8, 2013 which

incorporate subsequently filed periodic reports that the Commission has alleged contain material

misstatements and omission as a result of the defendants' violations. *See* Undisputed Fact # 23-

24; [*see*, *e.g.*, Filing No. 1 at ¶¶ 3, 4, 60-71, 87-99, 105-109, 119-123 (Complaint).] Defendants

violative misstatements and omissions, which were incorporated into ITT's registration statements, were made "in the offer or sale" of securities in violation of Section 17(a).

There is no genuine issue that any violations of Securities Act 17(a) occurred in the offer or sale of a security and the Commission is entitled to summary judgment on that element of Claims 4 and 5.

## IV. Control Persons

Section 20(a) of the Exchange Act provides that "every person who, directly or indirectly, controls any person" liable under the Exchange Act is also liable "to the same extent as the controlled person." 15 U.S.C. §78t(a). [T]he "controlling person" provisions were enacted to expand, rather than restrict, the scope of liability under the securities laws. *SEC v. Mgmt. Dynamics, Inc.,* 515 F.2d 801, 812-13 (2d Cir.1975). Control was defined in a broad fashion to reach prospective wrongdoers, rather than to permit the escape of those who would otherwise be responsible for the acts of their employees. *Id.* A controlled "person" by definition includes corporations. *See* 15 U.S.C. § 78c(a)(9). "Control" is defined as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405.[2] The Commission need not show that Modany or Fitzpatrick were culpable in the violations to prove control person liability. *Harrison v. Dean Witter Reynolds, Inc.,* 974 F.2d 873, 881 (7th Cir.1992). [3]

---

[2] Because the control person provisions under the 1933 and 1934 Acts are "roughly parallel," courts have found that the definition of "control" under § 15 and § 20(a) is the same. *See In re Lehman Bros. Mortgage–Backed Sec. Litigation,* 650 F.3d 167, 185 (2d Cir.2011).

[3] As a defense, Section 20(a) allows a defendant to prove that he acted with "good faith." 15 U.S.C. §78t(a). The Commission is not moving for summary judgment on this element of the claim, only for a finding that defendants were, in fact, control persons of ITT.

This control requirement is demonstrated by showing that the defendant "had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws ... [and] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability." *Brown v. Enstar Group, Inc.,* 84 F.3d 393, 396 (11th Cir.1996). As discussed above, the Commission has alleged that defendants' violations included misstatements or omissions in public filings made with the SEC and in earnings calls. [*See*, *e.g*., Filing No. 1 at ¶¶ 3, 4, 60-71, 82-99, 105, 108 119 (Complaint).] The Commission has also alleged that ITT violated the false filings and books and records provisions of the securities laws and that Modany and Fitzpatrick have control person liability for those violations. [*See*, *e.g*., Filing No. 1 at ¶¶ 193-196, 204-207 (Complaint).]

Modany was the CEO and chairman of the board of ITT. Undisputed Fact # 5. As such, he was a control person of ITT because he would have possessed the ultimate management authority of the corporation on a daily basis. *See Adams v. Kinder-Morgan, Inc.,* 340 F.3d 1083, 1108 (10th Cir. 2003). He thus clearly possessed "the power to direct or cause the direction of the management and policies" of ITT. *See id; SEC v. StratoComm Corp,*, 2 F. Supp. 3d 240, 251 (N.D. N.Y. 2014). Modany had, at least, the power to indirectly influence the specific corporate policies which resulted in ITT's violations and, thus, is liable as a control person. *See Brown*, 84 F.3d at 396.

Fitzpatrick was ITT's CFO and principle accounting officer during the relevant time period. Undisputed Fact # 7, 8. It is "reasonable to infer" that, as CFO, he had "at least indirect control" over ITT's financial reporting. *See Adams*, 340 F.3d at 1109. Fitzpatrick had, at least, the power to indirectly influence the specific corporate policies which resulted in ITT's violations and, thus, is liable as a control person. *See Brown*, 84 F.3d at 396.

Finally, Modany and Fitzpatrick signed and certified the relevant public filings. Undisputed Facts # 10, 12-16. Involvement in the formulation of financial statements and authority over the preparation and presentation to the public of financial statements is sufficient to "presume control over the 'transactions giving rise to the alleged securities violation.'" *Howard v. Everex Systems, Inc.,* 228 F.3d 1057, 1065-1066 (9th Cir. 2000) (citing *Wool v. Tandem Computers Inc.,* 818 F.2d 1433, 1441 (9th Cir. 1987)). In addition, those who have authority to sign and do sign corporation's public filings are controlling persons for liability under § 20(a). *See In re Enron Corp. Securities, Derivative & ERISA Litigation,* 258 F. Supp. 2d 576, 598 (S.D. Tex. 2003); *In re Livent, Inc. Noteholders Securities Litigation,* 151 F. Supp. 2d 371, 437 (S.D. N.Y. 2001).

There is no genuine dispute that Modany and Fitzpatrick were control persons as to any violations of the Exchange Act and the Commission is entitled to summary judgment on that element of Claims 2, 11, and 14.

V.  <u>SOX 304</u>

SOX 304 provides that "if an issuer is required to prepare an accounting restatement due to the material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws, the chief executive officer and chief financial officer of the issuer shall reimburse the issuer for any bonus or other incentive-based or equity-based compensation received by that person from the issuer during the 12–month period following the first public issuance or filing with the Commission (whichever first occurs) of the financial document embodying such financial reporting requirement." 15 U.S.C. § 7243.

As a preliminary matter, the "misconduct" at issue is that of the company issuing the financial reports. *See SEC v. Jensen*, 835 F.3d 1100, 1115 (9th Cir. 2016) ("it is the issuer's

misconduct that matters."). Furthermore, the company's motivation in issuing the restatement is irrelevant. *SEC v. Life Partners Holding, Inc.*, 854 F. 3d 765, 788 (5th Cir. 2017). Because the company's motivation is irrelevant, the statute cannot require intentional conduct.

Furthermore, the legislative history of the provision indicates that the required "misconduct" is akin to mismanagement or accounting misstatement rather than requiring intentional wrongdoing by the company.[4] The report from the Senate Committee on Banking, Housing, and Urban Affairs on the bill that became the law indicated that SOX 304 was developed with the broad goal of addressing concerns "about management benefitting from unsound financial statements." S. Rep. No. 107–205 at 26, 2002 WL 1443523 (July 3, 2002). That report echoed then-President George W. Bush's recommendations that "'CEOs or other officers should not be allowed to profit from erroneous financial statements,' and that 'CEO bonuses and other incentive-based forms of compensation [sh]ould be disgorged in cases of accounting restatement and misconduct." *Id.* "Unsound," "erroneous," and "restatement" are all terms that do not imply or express intentional conduct.

No court has determined that SOX 304 requires intentional conduct.[5] Cases considering SOX 304 and the legislative history for that provision demonstrate that intentional misconduct is not required. Accordingly, the Commission is entitled to summary judgment on the legal issue that SOX 304 does not require intentional conduct.

## VI. Reliance on Counsel

The SEC alleges that defendants violated the anti-fraud provisions of the federal securities laws, in part, because they failed to disclose to ITT's investors material information

---

[4] The first definition of "misconduct" at Merriam-Webster.com is "mismanagement."

[5] A concurring opinion asserted that the Ninth Circuit should adopt an intentional violation of the law standard. *See SEC v. Jenson*, 835 f. 3d 1100, 1115 (9th Cir. 2016). Neither the Ninth Circuit, or any other court, has done so. *Id.*

regarding the PEAKS and CUSO programs. Specifically, the SEC alleges that defendants misled investors by failing to disclose that ITT was making payments on behalf of certain PEAKS borrowers whose loans were approaching default ("payments on behalf of borrowers," or "POBOB"). [*See, e.g.*, Filing No. 1 at ¶ 4 (Complaint).] The SEC also alleges that defendants misled investors by only disclosing the "net" amount of payments they projected making to the PEAKS program, rather than the more than $100 million in gross cash payments they anticipated. [*See, e.g.*, *id.* at ¶ 5.] Finally, the SEC alleges that defendants failed to disclose important information about projected cash flows related to the CUSO program. [*See, e.g.*, *id.* at ¶¶ 6, 102-112, 124-129.] In general, the SEC alleges that defendants made these false and misleading statements in ITT's Form 10-Q for the third quarter of 2012, ITT's Form 10-K for the year 2012, and ITT's Forms 10-Q for the first, second, and third quarters of 2013.

In response to the SEC's allegations, defendants have argued that they are not liable because they relied upon the advice of ITT's in-house and outside attorneys, among other professionals. Undisputed Fact # 25. Specifically, they argue that two of ITT's in-house lawyers – Christine Long and Clark Elwood[6] -- and two external lawyers – Brian Lane and Janelle Blankenship – provided legal advice regarding ITT's disclosures in the relevant public filings. Undisputed Fact # 26-35, 39.

In the Seventh Circuit,

"Advice of counsel is not a free-standing defense, though a lawyer's fully informed opinion that certain conduct is lawful (followed by conduct strictly in compliance with that opinion) can negate the mental state required for some crimes, including fraud." *United States v. Roti*, 484 F.3d 934, 935 (7th Cir.2007). In order for this theory to be supported by the evidence, a defendant must establish the following elements:

---

[6] During the relevant time period, Ms. Long left ITT and went to the law firm of Faegre Baker Daniels. Undisputed Fact # 30. ITT remained a client of hers at that firm. Undisputed Fact # 30.

> (1) before taking action, (2) **he in good faith sought the advice of**
> **an attorney** whom he considered competent, (3) **for the purpose of**
> securing advice on the lawfulness of his possible future conduct,
> (4) and made a full and accurate report to his attorney of all
> material facts which the defendant knew, (5) **and acted strictly in**
> **accordance with the advice of his attorney** who had been given a
> full report.
>
> [*U.S. v.*] *Al–Shahin*, 474 F.3d [941,] 947–48 [(7th Cir. 2007).]

*U.S. v. Van Allen*, 524 F.3d 814, 823 (7th Cir. 2008) (emphasis added); *see also Securities and*

*Exchange Commission v. Nutmeg Group, LLC,* 2017 WL 3269389, at *4 (N.D. Ill., Aug. 1,

2017) ("To establish an advice of counsel defense, a defendant must show that he (1) 'made a

complete disclosure to counsel; (2) sought advice from counsel as to the legality of his actions;

(3) received advice that his conduct was legal; and (4) relied on such advice in good faith.'")

(quoting *In re Reserve Fund Securities and Derivative Litigation*, 2012 WL 4774834, at *2

(S.D.N.Y. Sept. 12, 2012)). In other words, for a defendant to establish a reliance on counsel

defense, he must be able to show that he, among other things, actually sought legal advice and

then implemented that advice when received. In this case, defendants simply cannot establish

that they actually sought or followed legal advice regarding the key disclosures at issue.

A.     Disclosures Related to Payments on Behalf of Borrowers.

As noted above, one of the SEC's allegations is that defendants failed to disclose that ITT

was making payments on behalf of borrowers on PEAKS loans that were approaching default.

More specifically, the SEC alleges that ITT's public filings were false and misleading for failing

to disclose POBOB between the inception of the practice and the third quarter of 2013. [*See, e.g.*,

Filing No. 1 at ¶ 60 (Complaint).] The undisputed evidence shows that neither Mr. Modany nor

Mr. Fitzpatrick sought legal advice on this disclosure issue. Neither Ms. Long nor Mr. Elwood –

ITT's in-house counsel – recalls being asked for advice on whether ITT should disclose the

POBOB practice. Undisputed Fact # 41, 43. Similarly, Ms. Long does not recall providing any such advice. Undisputed Fact # 42. Mr. Lane was not asked, prior to the third quarter of 2013, for advice on whether to disclose POBOB. Undisputed Fact # 44. And Ms. Blankenship does not recall any specific legal advice related to the third quarter of 2012 – the only relevant quarter in which she was advising ITT. Undisputed Fact # 37-38. Perhaps most telling, neither Mr. Modany nor Mr. Fitzpatrick recalls personally seeking advice regarding disclosure of POBOB. Undisputed Fact # 45-46. In short, whatever the involvement of legal counsel with respect to ITT's disclosures, the undisputed evidence shows that neither Mr. Modany nor Mr. Fitzpatrick sought or received legal advice regarding the disclosure of POBOB. As a result, neither defendant may assert a reliance on counsel defense with respect to this issue.

      B.      <u>Disclosures Related to PEAKS Netting.</u>

In addition to defendants' failure to disclose POBOB, the SEC also alleges that defendants failed to disclose the total amount of guarantee payments ITT was projecting making to the PEAKS program, instead disclosing only the contingent liability that resulted from "netting" these payments against future recoveries. [*See, e.g.*, Filing No. 1 at ¶ 5 (Complaint).] Once again, the undisputed evidence shows that neither defendant sought or received advice on this disclosure issue, from in house or outside counsel. As with POBOB, neither Ms. Long nor Mr. Elwood recalls anyone asking whether ITT should disclose the total amount of PEAKS guarantee payments projected to be made. Undisputed Fact # 48-49. The same is true of Mr. Lane. Undisputed Fact # 50. And as noted above, Ms. Blankenship does not recall any specific legal advice related to the third quarter of 2012 – the only relevant quarter in which she was advising ITT. Undisputed Fact # 37-38. Mr. Modany was not party to any conversations with counsel where counsel was specifically asked whether ITT needed to disclose the gross cash

payments it anticipated making to the PEAKS program. Undisputed Fact # 51. And Mr. Fitzpatrick did not specifically ask counsel for advice regarding disclosures in light of the way ITT calculated its PEAKS liability. Undisputed Fact # 52. Thus, again, regardless of any lawyer's general involvement in reviewing ITT's disclosures, defendants cannot make out an essential element of a reliance on counsel defense.

      C.      <u>Disclosures Related to CUSO.</u>

Finally, the SEC alleges that defendants failed to disclose important facts regarding the CUSO program, including that ITT was projecting making significantly more payments to the CUSO program than was reflected in the disclosed contingent liability. [*See, e.g.*, Filing No. 1 at ¶¶ 102-109, 124-129 (Complaint).] Just like the disclosure issues above, the evidence is undisputed that neither defendant actually sought legal advice on CUSO disclosure issues. Ms. Long does not recall anyone asking for, or her providing, legal advice regarding disclosures related to the CUSO program's contingent liability. Undisputed Fact # 54-55. Similarly, Mr. Elwood does not recall ever being asked by anyone at ITT whether the different payment options available under the CUSO documents needed to be disclosed in ITT's public filings. Undisputed Fact # 56. And Mr. Lane does not recall anyone from ITT seeking disclosure advice regarding the CUSO program generally, or the disclosure of ITT's projected cash payments specifically. Undisputed Fact # 57-58. As a result, defendants cannot prove a reliance on counsel defense on this issue.

The Commission has demonstrated that defendants cannot show a genuine issue for trial on the required elements of reliance on counsel and the Commission is entitled to summary judgment on that defense.

CONCLUSION

For the reasons stated above, the Commission respectfully requests that the Court enter summary judgements on the elements and defense upon which it is moving.

Dated:  October 30, 2017               Respectfully submitted,

*s/ Polly Atkinson*
Nicholas P. Heinke
Polly A. Atkinson
Zachary T. Carlyle
U.S. SECURITIES & EXCHANGE
COMMISSION
Byron G. Rogers Federal Building
1961 Stout St., Suite 1700
Denver, CO  80294-1961
Telephone:  (303) 844-1071
Fax:  (303) 297-3529
*heinken@sec.gov*
*atkinsonp@sec.gov*
*carlylez@sec.gov*

*Attorneys for Plaintiff*
*U.S. Securities & Exchange Commission*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2017, a copy of the foregoing PLAINTIFF'S  BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/ Polly Atkinson*
Polly Atkinson