**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 1:15-cv-00758-JMS-MJD |
| ITT EDUCATIONAL SERVICES, INC., KEVIN M. MODANY, and DANIEL M. FITZPATRICK, | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S
<u>MOTIONS IN LIMINE</u>**

Table of Contents

I.  Evidence Concerning the Investigation Conducted by Cravath, Swaine, & Moore, LLP
    At the Direction of the Audit Committee Should be Excluded ...................................2

    A.  Background ..........................................................................................................2

    B.  Evidence to be Excluded and Argument...........................................................2

        1.  Evidence of the Conclusions of the Cravath Investigation Should be
            Excluded .................................................................................................2

            a.  This Evidence Should be Excluded as Hearsay................................3

            b.  This Evidence Would be Unfairly Prejudicial, Cause Confusion, and
                Waste Time ........................................................................................4

                i.  This Evidence is of Limited Probative Value .......................4

                ii.  This Evidence Would Cause Jury Confusion .......................4

                iii.  This Evidence Would be Unfairly Prejudicial .....................5

                iv.  This Evidence Would Waste Time ......................................6

            c.  This Evidence Should be Excluded ...................................................6

        2.  Evidence of PWC's Response to the Cravath Investigation Should be Excluded...6

            a.  This Evidence Would be Unfairly Prejudicial, Cause Confusion, and
                Waste Time ........................................................................................7

                i.  This Evidence is of Limited Probative Value .......................7

                ii.  This Evidence Would be Unfairly Prejudicial and Confusing..............7

                iii.  This Evidence Would Waste Time ......................................7

            b.  This Evidence Should be Excluded ...................................................8

        3.  PWC's Workpapers Summarizing Cravath's Investigation Should be Excluded ...8

            a.  This Evidence is Inadmissible Hearsay .............................................9

            b.  This Evidence Would be Unfairly Prejudicial and Cause Confusion..........10

i

        i.   This Evidence is of Limited Probative Value ......................................10

        ii.   This Evidence Would be Unfairly Prejudicial ...................................10

        iii.   This Evidence Would Cause Confusion ...........................................10

      c.   This Evidence Should be Excluded ..............................................................11

II.  PWC Documents Not Seen By Defendants Should be Excluded ...........................................11

    A.   Background ..........................................................................................................11

    B.   Evidence to be Excluded and Argument........................................................................11

      1.   This Evidence Would be Unfairly Prejudicial, Cause Confusion, and Waste Time ...............................................................................................................12

        a.   This Evidence is of Limited Probative Value ..............................................12

        b.   This Evidence Would Cause Jury Confusion ..............................................13

        c.   This Evidence Would be Unfairly Prejudicial ..............................................13

      2.   This Evidence Should be Excluded ..............................................................14

III. Evidence Related to Lawyer Witnesses Should Be Limited ..................................................14

    A.   Background ..........................................................................................................14

    B.   Evidence to be Excluded and Argument........................................................................14

      1.   Attorneys Should be Precluded From Testifying About the Legality of ITT's Disclosures ...............................................................................................14

      2.   Brian Lane Should be Precluded from Testifying About Pre Q3 2013 Disclosures ...............................................................................................15

      3.   Defendants Should Be Precluded from Proffering Evidence of the Silence or Non-Objection of Counsel ..............................................................................16

    C.   This Evidence Should Be Excluded..............................................................................18

IV. Evidence of Defendants' Purported Good Character Should Be Precluded............................18

    A.   Background ..........................................................................................................18

B.    Evidence To Be Excluded and Argument.......................................................19

C.    This Evidence Should Be Excluded..............................................................22

V.  Evidence or Argument Regarding the SEC's Charging Decisions Should be Precluded........22

    A.    Background ....................................................................................22

    B.    Evidence To Be Excluded and Argument.......................................................22

        1.    This Evidence Should Be Excluded Because It Is Irrelevant ...............................22

        2.    It Should Also Be Excluded Because It Would Waste Time And Confuse The Jury...................................................................................23

    C.    This Evidence Should Be Excluded..............................................................23

VI. Evidence or Argument Regarding the SEC's Charging Decisions Should be Precluded........24

    A.    Background ....................................................................................24

    B.    Evidence to be Excluded and Argument.......................................................24

        1.    This Evidence Is Irrelevant ...............................................................24

        2.    This Evidence Is Unfairly Prejudicial....................................................25

    C.    This Evidence Should Be Excluded..............................................................26

VII.  Conclusion.....................................................................................27

Table of Authorities

Cases

*Cont'l Cas. Co. v. Howard*, 775 F.2d 876 (7th Cir. 1985) ........................................................ 20

*Flomo v. Bridgestone Americas Holding, Inc.*, 2009 WL 10688034

    (S.D. Ind. June 16, 2009) ........................................................................................................ 5

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act Litig.* , No. 09

    MD 2058 (PKC), 2011 WL 3211472 (S.D.N.Y. July 29, 2011) ..................................... 16

*Kadlec Med. Center v. Lakeview Anesthesia Assocs.*, 2006 WL 622796

    (E.D. La. Mar. 7, 2006) .......................................................................................................... 5

*Lewis v. City of Chi. Police Dep't*, 590 F.3d 427 (7th Cir. 2009) ......................................... 4, 13

*Loeb v. Hammond*, 407 F.2d 779 (7th Cir. 1969) ...................................................................... 20

*Rogers v. United States*, 422 U.S. 35 (1975) ............................................................................. 24

*SEC v. Acord*, 2010 WL 11505963 (S.D. Fla. Aug. 23, 2010) ................................................. 20

*SEC v. Enters. Sols., Inc.*, 142 F. Supp. 2d 561 (S.D.N.Y. 2001) ............................................ 15

*SEC v. Jacobs*, 2014 WL 12597832 (N.D. Ohio Feb. 25, 2014) ......................................... 19, 20

*SEC v. Kokesh*, 2014 WL 11516545 (D.N.M. July 21, 2014) ................................................... 13

*SEC v. Moran*, No. 95 Civ. 4472 (BN), 1995 WL 785953 (S.D.N.Y. Oct. 30, 1995) ............... 25

*SEC v. Nat'l Student Mktg. Corp.*, 457 F. Supp. 682 (D.D.C. 1978) ........................................ 16

*SEC v. Peters*, 978 F.2d 1162 (10th Cir. 1992) ........................................................................ 21

*SEC v. Saul*, No. 90 C 2633, 1991 WL 218061 (N.D. Ill. Oct. 15, 1991) ........................... 20, 26

*SEC v. Tiffany Indus., Inc.*, 535 F. Supp. 1167 (E.D. Mo. 1982) ............................................. 23

*SEC v. Tourre*, 950 F. Supp. 2d 666 (S.D.N.Y. 2013) .............................................................. 18

*SEC v. Towers Fin. Corp.*, 966 F. Supp. 203 (S.D.N.Y. 1997) ................................................ 20

*Shannon v. United States*, 114 S. Ct. 2419 (1994) .................................................................... 24

*Tulloss v. Near N. Montessori Sch., Inc.*, 776 F.2d 150 (7th Cir. 1985) ................................ 4, 13

*United States v. Almonte*, 956 F.2d 27 (2d Cir. 1992) ................................................................ 9

*United States v. Baskes*, 649 F.2d 471 (7th Cir. 1980) .............................................................. 14

*United States v. Benson*, 961 F.2d 707 (8th Cir. 1992) ............................................................... 9

*United States v. Burke*, 781 F.2d 1234 (7th Cir. 1985) ............................................................. 20

*United States v. Cheung Kin Ping*, 555 F.2d 1069 (2d Cir. 1977) ............................................ 23

*United States v. Duke Energy Corp.*, 208 F.R.D. 553 (M.D.N.C. 2002) ..................................... 5

*United States v. Godinez,* 110 F.3d 448 (7th Cir. 1997) ........................................................... 10

*United States v. Hauert*, 40 F.3d 197 (7th Cir. 1994) ............................................................... 14

*United States v. Leonardi*, 623 F.2d 746 (2d Cir. 1980) ............................................................. 9

*United States v. Mosky*, No. 89 CR 669, 1990 WL 70832 (N.D. Ill., 1990) .............................. 22

*United States v. Rea*, 958 F.2d 1206 (2d Cir. 1992) .................................................. 14

*United States v. Richardson*, 130 F.3d 765 (7th Cir. 1997) ........................................... 25

*United States v. Saget,* 991 F.2d 702 (11th Cir.) .................................................... 9

*United States v. Schoenborn,* 4 F.3d 1424 (7th Cir. 1993) ............................................. 9

*United States v. Severson*, 49 F.3d 268 (7th Cir. 1995) ............................................... 3

*United States v. Van Allen*, 524 F.3d 814 (7th Cir. 2008) ............................................ 16

*United States v. Vigneau*, 187 F.3d 70 (1st Cir. 1999) ............................................... 3

*United States v. Young*, 20 F.3d 758 (7th Cir. 1994) ................................................ 22

*Willy v. Admin. Review Bd.,* 423 F.3d 483 (5th Cir. 2005) ............................................. 5

<u>Rules</u>

Fed. R. Civ. P. 26(a)(2) ........................................................................... 14

Fed. R. Evid. 401 ........................................................................... <u>passim</u>

Fed. R. Evid. 402 ........................................................................ 23, 24, 26

Fed. R. Evid. 403 ........................................................................... <u>passim</u>

Fed. R. Evid. 403(b) ...................................................................... 23, 25

Fed. R. Evid. 404 ...................................................................... 19, 20, 22

Fed. R. Evid. 404(a)(1) .......................................................................... 20

Fed. R. Evid. 405 .............................................................................. 21

Fed. R. Evid. 405(a) ............................................................................ 21

Fed. R. Evid. 408 .............................................................................. 20

Fed. R. Evid. 608(a) ............................................................................ 19

Fed. R. Evid. 801 .............................................................................. 3

Fed. R. Evid. 801(c) ............................................................................ 3

Fed. R. Evid. 802 ............................................................................ 6, 10

Fed. R. Evid. 803 .............................................................................. 3

Fed. R. Evid. 804 .............................................................................. 3

Fed. R. Evid. 805 .............................................................................. 3

Fed. R. Evid. 807(a) ............................................................................ 3

Fed. R. Evid. 807(b) ............................................................................ 3

Plaintiff, Securities and Exchange Commission, hereby submits its motions in limine, to preclude or limit certain evidence.

The SEC conferred with defendants before filing these motions. The parties have agreed not to introduce evidence or argument concerning 1) ITT's bankruptcy or the fact that ITT is no longer in business; 2) matters related to settlement; 3) any other government investigations; 4) that the CUSO loan program should have been consolidated onto ITT's balance sheet; 5) that "taxpayer money" was spent on this case, experts, etc.; 6) claims that have been dismissed; 7) that the SEC did not introduce evidence defining the applicable standard of care (but defendants reserve the right to argue that the SEC did not meet its burden to prove by a preponderance of the evidence that Mr. Modany and/or Mr. Fitzpatrick breached the applicable standard of care); 8) that the contingent liability amounts recorded for the PEAKS or CUSO student loan programs were mathematically inaccurate and/or calculated improperly (but the parties reserve the right to introduce evidence and argument concerning (i) that the disclosures about the contingent liability during the relevant time period were misleading because the defendants did not disclose the projected payments that ITT expected to make under the CUSO and/or PEAKS guarantees, and (ii) that, under GAAP, once ITT was required to consolidate the PEAKS program onto its balance sheet, ITT should have recorded no contingent liability for PEAKS as of the date that consolidation was first required under GAAP); and 9) that during the period of the alleged violations, defendant did not sell any ITT securities. The SEC conferred on the matters listed below, but the parties were unable to reach agreement.

I.   Evidence Concerning The Investigation Conducted By Cravath At The Direction Of The
     Audit Committee Should Be Excluded.

   A.   Background.

        In January 2014, the SEC took the sworn testimony of PriceWaterhouseCoopers

("PWC") audit partner Richard Quimby as part of its non-public investigation into possible

violations of the securities laws by ITT Educational Services Inc. and related individuals. As a

result of that testimony, Mr. Quimby informed ITT's Audit Committee of certain facts that ITT

management had not previously disclosed to PWC. The Audit Committee, in turn, hired Cravath,

Swaine, & Moore, LLP ("Cravath") to conduct an investigation into those facts. The

investigation was conducted in stages and concluded in a 2.5 hour presentation to the Audit

Committee. *See* [Filing No. 281-1(Depo. Ex. 544, PwC Combined Significant Matters and

Consultation Template); Filing No. 281-2 (Depo. Ex. 545, Audit Opinion)].

        ITT has not waived its attorney client privilege or work product protection related to this

investigation. The SEC has not received any underlying interview notes or other material, nor

has the SEC been permitted to examine any witness about the conduct of this investigation.

   B.   Evidence To Be Excluded And Argument.

        1.   Evidence of the Conclusions of the Cravath Investigation Should be Excluded.

        The PWC workpapers reciting information about the Cravath investigation generally

report that Cravath informed PWC that Cravath had concluded that there was no evidence that

ITT management intentionally withheld information from PWC about a letter from the PEAKS

noteholders, advice received from Cravath, a CUSO cash-flow analysis, or information that the

PEAKS servicer could be terminated. *See*, *e.g.* [Filing No. 281-1at 3-4 (Depo. Ex. 544, PwC Combined Significant Matters and Consultation Template)].[1]

      a.  <u>This Evidence Should be Excluded as Hearsay.</u>

While the PWC workpapers may, themselves, not be hearsay, the report by PWC about what Cravath told PWC about what Cravath concluded from its investigation is an out of court statement of Cravath, presumably offered by defendants to prove the truth of the matter that there is no evidence that ITT management intentionally withheld information from PWC. Thus, it is hearsay within hearsay. *See* Fed. R. Evid. 801(c). Under Fed. R. Evid. 805, all levels of hearsay must come within exceptions to the hearsay rule for hearsay within hearsay to be admissible. *United States v. Severson*, 49 F.3d 268, 271 (7th Cir. 1995); *see also United States v. Vigneau*, 187 F.3d 70, 75 (1st Cir. 1999) (the business records exception does not embrace statements contained within a business record that were made by one who is *not* a part of the business if the embraced statements are offered for their truth.). No exclusion or exception for the hearsay statement of Cravath to PWC applies. *See* Fed. R. Evid. 801, 803, 804.

Moreover, the actual evidence about the Cravath investigation has been withheld from the SEC as privileged information. To the extent defendants would attempt to prove that PWC's recitation of what Cravath told them is trustworthy and probative under Fed. R. Evid. 807(a), the evidence would, at least, fail to satisfy Fed. R. Evid. 807(b). The SEC does not and cannot have a fair opportunity to meet this information because all underlying information has been withheld as privileged. The only way to meet this information would be to call Cravath witnesses and examine them fully about the investigation underlying the conclusion. This would be a fruitless and time-consuming exercise because the testimony could only result in claims of privilege.

---

[1] The SEC, mindful of the Court's direction to limit exhibits, has not attached all objectionable documents, but rather exemplars.

b.   This Evidence Would be Unfairly Prejudicial, Cause Confusion, and Waste Time.

While defendants could avoid a hearsay objection by calling a Cravath witness to testify to the conclusion of the investigation, such evidence should be excluded pursuant to Fed. R. Evid. 403 as unfairly prejudicial and likely to cause confusion.

i.   This Evidence is of Limited Probative Value.

The issues in this case for the jury to determine include whether the defendants engaged in deceptive conduct by withholding information from the auditors and defendants' state of mind.

Cravath's conclusion, as reported to and recited by PWC, that there is no evidence that ITT management intentionally withheld information from PWC is of limited probative value in deciding these issues. The jury must decide for itself if there is evidence that defendants withheld information from PWC. In addition, Cravath's conclusion that there is no evidence of intentionality is also of limited probative value because, again, the jury must decide whether, if information was withheld, it was done so intentionally, recklessly, or negligently.

ii.   This Evidence Would Cause Jury Confusion.

Cravath's conclusion that there is no evidence that ITT management intentionally withheld information from PWC would intrude on the jury's function to make a determination about whether, as part of a scheme to defraud investors, defendants withheld information from PWC. Evidence that a law firm reached a conclusion about the very question the jury is being asked to determine could confuse the jury into thinking that the issue was already determined. *See*, *e.g.*, *Tulloss v. Near N. Montessori School, Inc.*, 776 F.2d 150, 153-43 (7th Cir. 1985) (Court excluded determination because its "was tantamount to saying this has already been decided and here is the decision."); *Lewis v. City of Chicago Police Department*, 590 F. 3d 427,

442 (7th Cir. 2009) (Determination excluded because it "merely presents the question the jury was tasked with answering."). Moreover, the jury could also be confused because Cravath's conclusion apparently only addressed whether information was "intentionally" withheld, while the securities laws also include standards of recklessness and negligence. Thus, this information could confuse the jury about the standards to be applied in this case.

### iii.  This Evidence Would be Unfairly Prejudicial.

In addition to the fact that the SEC would be unfairly prejudiced by having the answer to a critical issue suggested to the jury with the imprimatur of the Cravath law firm, the SEC would also be unduly prejudiced by the fact that the investigation is privileged and information underlying the investigation was withheld. *See Kadlec Medical Center et al. v. Lakeview Anesthesia Associates et al.*, 2006 WL 622796 at*1 (E.D. La. March 7, 2006) (The prejudicial impact of such evidence [of internal investigations] is significant in view of the fact that the investigations themselves are privileged).

As noted above, privilege was not waived as to the Cravath investigation. It is well settled that "a party may not use privileged information both offensively and defensively at the same time." *Willy v. Admin. Review Bd.,* 423 F.3d 483, 497 (5th Cir.2005); *see also United States v. Duke Energy Corp.,* 208 F.R.D. 553, 558 (M.D.N.C.2002) ("A party may not use a privilege (or work product) as a shield during discovery and then hammer it into a sword for use at the trial."). Federal Courts "routinely refuse[] to let litigants selectively disclose information only when, and to the extent, that disclosure suits their present purpose; sword-and-shield litigation tactics are anathema to the Federal Rules' discovery provisions." *Flomo v. Bridgestone Americas Holding, Inc.*, 2009 WL 10688034 at *4 (S.D. Ind. June 16, 2009); s*ee also*

*Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 132 F.R.D. 204, 207 (N.D. Ind. 1990) (calling selective disclosure "truth garbling").

> iv.  This Evidence Would Waste Time.

Finally, the time this evidence would waste would substantially outweigh whatever probative value it could have. If this evidence were admitted, the SEC would be required to call at least one Cravath witness in an attempt to explain to the jury the limitations of the Cravath investigation. Similarly, the SEC would be required to examine PWC witnesses about their understanding and participation (or lack thereof) in the investigation.

> c.  This Evidence Should be Excluded.

As discussed above, Cravath's conclusion that there is no evidence that ITT management intentionally withheld information from PWC as well as the PWC workpapers reciting that Cravath reported to PWC that it had concluded that there was no evidence that ITT management intentionally withheld information from PWC should be excluded under Fed. R. Evid. 802 and Fed. R. Evid. 403.

> 2.  Evidence of PWC's Response to the Cravath Investigation Should be Excluded.

The SEC anticipates that defendants may attempt to elicit testimony that, after Cravath's investigation was concluded, PWC performed the audit of ITT's financials for 2013[2] and accepted management representation letters from defendants. *See* [Filing No. 281-3 at 14 (Depo. of Kevin Muller at p. 339:1-10)]. In addition, the PWC workpapers reciting information about the Cravath investigation also include information about PWC's audit of Cravath's investigation, the remedial measures PWC wanted ITT to take, and the remedial measures ITT agreed to take. *See*, *e.g.* [Filing No. 281-2 at 18 (Depo. Ex. 545); Filing No. 281-4 at 4-5 (Depo. Ex. 543,

---

[2] The SEC has not charged any violations related to ITT's 10-K for 2013.

10/11/2014 Memo)]. Witnesses also testified about this subject. *See*, *e.g*., [Filing No. 281-3 at 17 (Depo. of Kevin Muller at pp. 405:16-406:22)].

### a.  This Evidence Would be Unfairly Prejudicial, Cause Confusion, and Waste Time.

#### i.  This Evidence is of Limited Probative Value.

Evidence of PWC's response to Cravath's investigation is not probative of whether the jury finds that defendants engaged in deceptive conduct by withholding information from the auditors, or defendants' state of mind. PWC's response to the investigation does not prove one way or the other whether defendants engaged in deceptive conduct by withholding information from the auditors, nor does it bear on defendants' state of mind.

#### ii.  This Evidence Would be Unfairly Prejudicial and Confusing.

For the reason discussed above, the conclusion reached in Cravath's investigation should be excluded. Attempting to elicit PWC's response to Cravath's investigation without disclosing or implying Cravath's conclusion would be impossible. In fact, the only reason for eliciting PWC's response would be to suggest that there was an investigation exonerating defendants, and that PWC agreed with that conclusion. As a result, revealing the response without revealing the conclusion would result in jury confusion about what the evidence meant and what Cravath's investigation was about. For the reasons stated above, such evidence would unduly prejudice the SEC and cause jury confusion.

#### iii. This Evidence Would Waste Time.

While PWC performed the audit of ITT's financials for 2013 and accepted management representation letters from defendants, PWC also required additional management representation letters and ITT agreed to take additional remedial measures. *See*, *e.g*. [Filing No. 281-2 at 18 (Depo. Ex. 545); Filing No. 281-4 at 4-5 (Depo. Ex. 543)]. Disclosure of PWC's response to

Cravath's investigation would require the SEC to fully explore all actions PWC and ITT took in response to Cravath's investigation. This would require additional examination of witnesses, additional exhibits, and possibly additional witnesses, all concerning an audit related to a filing that does not form the basis for any alleged violation.

      b.  <u>This Evidence Should be Excluded.</u>

The probative value of evidence related to an investigation which cannot be fully disclosed because of privilege claims and an audit of a filing for which no violations have been charged is limited and is far outweighed by the unfair prejudice, confusion and waste of time that would result. Evidence of PWC's response to Cravath's investigation should be excluded under Fed. R. Evid. 403.

      3.  <u>PWC's Workpapers Summarizing Cravath's Investigation Should be Excluded.</u>

During Cravath's investigation Cravath interviewed a number of people, including asking them to relate conversations and other communications with defendants. *See*, *e.g.*, [Filing No. 281-5 (Depo. Ex. 666, 7/8/2017 PwC Conf. Memo)]. Then, during a phone call several weeks later, a Cravath Associate, Kyle Gazis, relayed to PWC employees a summary of the interview conducted by counsel for Cravath. *Id*. For some interviews there were as many as five Cravath representatives present. *Id*. There is no indication of who conducted the questioning. *Id*. PWC's recollection of Mr. Gazis' summary was then reduced to a memo from a PWC Senior Associate and that memo was included in PWC's workpapers. *Id*. The memos indicate that they are not intended to be verbatim recitations of Cravath's summary. *Id*. Nor is there any indication that Cravath's summary was intended to be a verbatim recitation of the interviews. *Id*. Defendants introduced these memos in depositions and the SEC anticipates that the defendants will try to introduce them into evidence or use them for impeachment purposes. *See*, *e.g.*, [Filing No. 281-6

(Depo. Ex. 430, 7/8/2011 PwC Conf. Memo); Filing No. 281-5 (Depo. Ex. 666); Filing No. 281-7 (Depo. Ex. 672, 3/5/2014 PwC Conf. Memo); Filing No. 281-8 (Depo. Ex. 673, 7/9/2014 PwC Conf. Memo)].

       a.  <u>This Evidence is Inadmissible Hearsay.</u>

These documents – a summary report of a summary report of an interview conducted by undetermined interviewers – contain, at least, triple hearsay. As such, they are inadmissible.

To be used for impeachment, extrinsic evidence of a prior inconsistent statement must be competent and otherwise admissible. But, "[a] third party's characterization of a witness's statement 'does not constitute a prior statement of that witness unless the witness has subscribed to that characterization.' " *United States v. Schoenborn,* 4 F.3d 1424, 1427, 1428 n.3 (7th Cir.1993) ("[o]ur finding that [the] report did not constitute a statement made by [the witness] precludes admission of the report pursuant to Rules 607 and 613(b)."); *See also, e.g., United States v. Almonte,* 956 F.2d 27, 29–30 (2d Cir.1992) (per curiam) (proponent of notes of alleged prior inconsistent statement must prove that the "notes reflect the witness's own words rather than the note-taker's characterization;" third party's characterization of witness's statement "does not constitute a prior statement of that witness unless the witness has subscribed to that characterization"); *United States v. Benson,* 961 F.2d 707, 709 (8th Cir.1992) (reports of interviews of witness that were not adopted by witness were "inadmissible double hearsay" and not admissible to prove prior inconsistent statement); *United States v. Saget,* 991 F.2d 702, 710 (11th Cir.) ("[A] witness may not be impeached with a third party's characterization or interpretation of a prior oral statement unless the witness has subscribed to or otherwise adopted the statement as his own."), *cert. denied,* 510 U.S. 950, 114 S.Ct. 396, 126 L.Ed.2d 344 (1993); *United States v. Leonardi,* 623 F.2d 746, 757 (2d Cir.1980) (FBI notes offered to impeach not

attributable to witness because "a witness may not be charged with a third party's characterization of his statements unless the witness has subscribed to them"); 28 Wright & Gold § 6203 ("Rule 613 does not itself create any exception to the hearsay rule.").

  b. <u>This Evidence Would be Unfairly Prejudicial and Cause Confusion.</u>

   i. <u>This Evidence is of Limited Probative Value.</u>

  As discussed above, these memos summarizing a summary report of an interview conducted by undetermined interviewers is, at least, triple hearsay. Hearsay is excluded because it is inherently unreliable. *See United States v. Godinez*, 110 F.3d 448, 456 (7th Cir. 1997). In fact, in this case the SEC has no way to test the original witness statement made to Cravath since ITT did not waive privilege as to Cravath's investigation. Unreliable evidence is necessarily of limited probative value.

   ii. <u>This Evidence Would be Unfairly Prejudicial.</u>

  In addition, as previously discussed, ITT has not waived privilege as to the Cravath investigation. The SEC has not been allowed to question any Cravath witness about the investigation including about the interviews conducted. As a result, it would be unfairly prejudicial to allow defendants to attempt to elicit information about the Cravath investigation using these triple hearsay documents. The SEC has no reason to anticipate that defendants might try to avoid the hearsay issue by calling Cravath witnesses to testify about their interviews. For instance, no notes of interviews have been produced. Attempting to offer this evidence through this method would still result in unfair prejudice to the SEC.

   iii. <u>This Evidence Would Cause Confusion.</u>

  Admission of this evidence would also cause jury confusion. Selective disclosure of information about Cravath's investigation would confuse the jury about the process, purpose, and

result of Cravath's investigation and its relationship to the case at bar. The jury could be confused about whether the issue of defendants' disclosure of or withholding of information from PWC had already been determined.

        c.  <u>This Evidence Should be Excluded.</u>

PWC workpapers summarizing Cravath's investigation should be excluded under Fed. R. Evid. 802 and Fed. R. Evid. 403.

II.  <u>PWC Documents Not Seen By Defendants Should Be Excluded.</u>

  A.  <u>Background.</u>

As part of PWC's engagement to review and audit ITT financial statements, PWC created a large number of documents, including workpapers and other documents. In addition, as part of PWC's audit of ITT's 2012 financial statements, PWC staff read the non-financial statement portion of ITT's 2012 10-K to ensure it was presented in a way that was consistent with PWC's understanding. *See* [Filing No. 281-9 at 12-13 (Depo. of Richard Quimby at pp. 546:5 – 547:1]. However, PWC does not audit, review, or issue an opinion on the non-financial statement portion of 10-Ks. *See* [Filing No. 281-9 at 13 (Depo. of Richard Quimby at p. 547:2 – 9]. PWC's procedures are documented in its workpapers or other documents. *See*, *e.g*., [Filing No. 281-10 (Depo. Ex. 493, FSDCL Workpaper); Filing No. 281-11 (Depo. Ex. 494 Workpaper); Filing No. 281-12 (Depo. Ex, 511, 2/19/2013 Audit Committee Report)]. PWC's workpapers belong to PWC and are not normally shared with PWC's clients. *See* [Filing No. 281-9 at 5 (Depo. of Richard Quimby at p. 269:14-20); Filing No. 281-3 at 15-16 (Depo. of Kevin Muller at pp. 366:19-367:11)].

  B.  <u>Evidence to be Excluded and Argument.</u>

The SEC anticipates that defendants will offer PWC documents for two purposes. First, the SEC anticipates that defendants will offer PWC documents as substantive proof that there are

no material misstatements in ITT's public filings. *See*, *e.g*., [Filing No. 281-3 at 5-7 (Depo. of Kevin Muller at pp. 49:18 – 51:5 and pp. 53:22-55:18)]. Second, because the defendants have claimed that they relied on PWC in preparing ITT's public filings, the SEC anticipates that defendants will offer PWC documents as evidence to support that contention, even when there is no evidence that defendants have seen or relied on the documents being offered. These documents should only be used to impeach or refresh the recollection of PWC witnesses (if appropriate), and should be excluded as substantive evidence pursuant to Fed. R. Evid. 403.

    1.  <u>This Evidence Would be Unfairly Prejudicial, Cause Confusion, and Waste Time.</u>

        a.  <u>This Evidence is of Limited Probative Value.</u>

The issues in this case for the jury to consider include whether defendants made misstatements or omissions, whether defendants engaged in deceptive conduct by withholding information from the auditors, and defendants' state of mind. The PWC documents have limited probative value on these issues.

While the PWC documents may be probative of whether *PWC* concludes that defendants made misstatements or omissions, they are not probative of whether the jury reaches that conclusion, because the jury must evaluate the evidence presented and decide for itself whether defendants made misstatements or omission. Similarly, the PWC documents have limited probative value concerning whether information was withheld from auditors. Multiple witnesses from PWC are expected to testify and can address whether information was withheld. To the extent PWC documents are needed to impeach or refresh the recollection of those witnesses, they should be used for that limited purpose. Finally, documents that have never been seen or relied on by defendants can have no bearing on defendants' state of mind at the time of the relevant conduct and thus are not probative of that issue.

12

   b.   This Evidence Would Cause Jury Confusion.

PWC documents that defendants have never seen could confuse the jury in two ways.
First, any documents that include conclusions about whether SEC filings, or portions of filings,
are misleading, contain adequate disclosures, or contain material misstatements could confuse
the jury about what is at issue in the case. Evidence that PWC reached a conclusion about the
very question the jury is being asked to determine could confuse the jury into thinking that the
issue was already determined. *See*, *e.g*., *Tulloss*, 776 F.2d at 153-43; *Lewis*, 590 F. 3d at 442.

   These documents could also confuse the jury about defendants' reliance on PWC.
Defendants could not have relied on information in PWC documents if they were unaware of it
and, thus, the information is not relevant to their state of mind. Introduction of these documents
could mislead the jury into concluding that defendants had knowledge that they, in fact, didn't
have. *See SEC v. Kokesh*, 2014 WL 11516545 at *3 (D. N.M. July 21, 2014) (*rev'd* on other
grounds) ("Defendant would like to present such evidence to show that he was not aware of any
wrongdoing, the evidence's probative value is outweighed by the danger that the jury will be
misled and confused. Such evidence is likely to be misinterpreted by a lay jury as implicit or
explicit "blessings" of the legality and adequacy of all aspects of the transactions at issue.").

   c.   This Evidence Would be Unfairly Prejudicial.

   Admission of documents that include conclusions about whether SEC filings, or portions
of filings, are misleading, contain adequate disclosures, or contain material misstatements – the
very question the jury is being asked to determine – would be unfairly prejudicial. *See*, *e.g*.,
*Tulloss*, 776 F.2d at 153-43; *Lewis*, 590 F. 3d at 442.

2. This Evidence Should be Excluded

For the reasons stated above, PWC documents that defendants did not see during the relevant time period should be excluded pursuant to Fed. R. Evid. 403.

III. Evidence Related To Lawyer Witnesses Should Be Limited.

A. Background.

As this Court is aware, the defendants intend to introduce evidence regarding the involvement of lawyers in ITT's disclosures. *See, e.g.*, [Filing No. 259 at 15]. The SEC anticipates that defendants will attempt to elicit evidence from lawyers that should be precluded under the Federal Rules of Evidence.

B. Evidence to be Excluded and Argument.

1. Attorneys Should be Precluded from Testifying about the Legality of ITT's Disclosures.

The defendants should not be permitted to elicit testimony from lawyers (or any other witnesses) regarding whether ITT's disclosures complied with the law. None of the lawyers listed as defense witnesses were disclosed as expert witnesses. *See* Fed. R. Civ. P. 26(a)(2). Nor can the lawyers offer lay opinion testimony regarding the legality of ITT's disclosures under F.R.E 401 because it would not be helpful. *See, e.g.*, *U.S. v. Hauert*, 40 F.3d 197, 201 (7th Cir. 1994) ("[O]pinion testimony on a party's knowledge of the law 'in most instances ... will not meet the requirements of Rule 701.'") (quoting *U.S. v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992); *see also U.S. v. Baskes*, 649 F.2d 471, 478 (7th Cir. 1990) (trial court properly excluded questions regarding legality of conduct as not helpful to the jury). Indeed, the Court has already suggested that testimony on disclosure issues is not appropriate in this case. *See* [Filing No. 264 at 6-15]. For all of these reasons, the defendants should be precluded from asking witnesses whether ITT's disclosures were legally adequate.

14

2.  <u>Brian Lane Should be Precluded from Testifying About Pre Q3 2013 Disclosures.</u>

In addition, as to one lawyer-witness specifically, the defendants should be precluded from eliciting *any* testimony regarding disclosures prior to the third quarter of 2013. During discovery, the SEC asked defendants to identify all individuals on whom they were resting their reliance defense. *See* [Filing No. 225-6 at p. 3]. In response, defendants identified, among others, Brian Lane, a lawyer at the Gibson Dunn law firm. *See id.* at 8.  Defendants expressly disclaimed any reliance on Mr. Lane for disclosures prior to the third quarter 2013 Form 10-Q, filed in October 2013. *See id.* Further, during his deposition, Mr. Lane acknowledged that he did not recall providing any contemporaneous disclosure advice on ITT's third quarter 2012 Form 10-Q, its year-end 2012 Form 10-K, its first quarter 2013 Form 10-Q, or its second quarter 2013 Form 10-Q. *See* [Filing No. 281-13 at 5 (Depo. of Brian Lane at p. 78:2-25)]. However, when the SEC asked defendants to stipulate that they would not seek to elicit testimony from Mr. Lane on the accuracy of ITT's disclosures prior to the third quarter 2013, defendants refused.

Defendants should be precluded from offering Mr. Lane's testimony on pre-third quarter 2013 disclosures for at least two reasons. First, as noted above, the defendants disclaimed any reliance on Mr. Lane prior to that time, and Mr. Lane himself did not recall providing any disclosure advice prior to that time. Second, in light of the fact that Mr. Lane offered no contemporaneous disclosure advice prior to the third quarter of 2013, any testimony about the accuracy of earlier filings would be expert testimony rather than testimony of a percipient fact witness. But Mr. Lane was not disclosed as an expert. Nor would his testimony about pre-third quarter 2013 disclosures be proper under Rule 701, since such testimony must be "rationally based on the witness's perception." F. R. E. 701(a).

3. <u>Defendants Should be Precluded from Proffering Evidence of the Silence or Non-Objection of Counsel.</u>

Defendants should be precluded from offering evidence that counsel was simply present for certain discussions and/or did not object to certain issues. Such evidence is irrelevant, since silence of counsel does not equate to reliance on counsel. *See* Fed. R. Evid. 401. Further, such evidence is confusing, unfairly prejudicial, and could mislead the jury, since they could easily assume that counsel being present and not objecting amounted to counsel rendering advice that the issue was legally sound. *See* Fed. R. Evid. 403.

This Court has previously ruled that "advice of counsel is a proper consideration in analyzing a defendant's state of mind." *See* [Filing No. 259 at p. 17]. In assessing advice of counsel, the factors to be considered include whether the defendant sought advice from a competent attorney, provided that attorney with all relevant facts, received advice from the attorney, and followed that advice in good faith. *See id. See also, e.g.*, *U.S. v. Van Allen*, 524 F.3d 814, 823 (7th Cir. 2007). Counsel merely being present and not speaking up is not advice. *See, e.g.*, *SEC v. National Student Marketing Corp.*, 457 F. Supp. 682, 711 n.68 (D.D.C. 1978) (finding that defendant "did not rely upon actual advice of counsel, but, if at all, on counsel's silence, and this despite the fact that he never asked for a specific opinion on the legality of" the issue; "This blind inaction hardly constitutes good faith reliance on counsel."); *In re Bank of Am. Corp. Sec. Litig.*, 2011 WL 3211472, *8 (S.D.N.Y. Jul. 29, 2011) ("'Good faith reliance on the advice of counsel means more than simply supplying counsel with information'") (quoting *SEC v. Enterprises Solutions, Inc.*, 142 F.Supp.2d 561, 576 (S.D.N.Y. 2001)); *cf. Van Allen*, 524 F.3d at 823 (finding advice of counsel instruction not warranted where defendant "did not produce evidence suggesting that his attorney advised him to act in any particular way"). Put bluntly,

"silence of counsel is not advice of counsel." Jury Charge at 30, *SEC v. Wyly et al.*, 10 Civ. 5760 (S.D.N.Y.), *See* [Filing 276-1 at 33; *see also* Filing No. 276-2 at 32].

During discovery, the defendants repeatedly asserted this sort of silence of counsel evidence. For example, one of the issues in this case is defendants' failure to disclose the gross cash outlays it projected making for ITT's private student loan programs. When, during his deposition, Mr. Modany was asked whether he asked for advice on disclosure of the cash outlays, he answered:

> this information and – the gross and net and the numbers, which I don't specifically recall, as I think I've testified, were shared with the board in an audit committee meeting, with general counsel in that meeting, with participants of the disclosure committee, with PricewaterhouseCoopers, with SEC counsel, all of those parties being in the room when those amounts were being discussed and reviewed, and the methodology for recording and disclosing being discussed.
>
> So I'm confident they were aware of that information. And I have worked with these folks for a long period of time. If they had an objection to that, they would have raised it. So there – they were very aware of it. I was in the room when these conversations were taking place. You're asking me if I specifically posed that question. I don't recall that. But what I recall is that that conversation occurred with multiple parties.

[Filing No. 281-14 at 7-8 (Depo. of Kevin Modany at pp. 248:14-249:7)]. Similarly, Mr. Fitzpatrick testified that he did not ask counsel for advice on this issue, but rather counsel "knew the business. We worked together closely. I didn't have to specifically ask them to look at a certain paragraph on a certain page. I knew when I got their feedback that they reviewed it." [Filing No. 281-15 at 5 (Depo. of Daniel Fitzpatrick at p. 184:4-9)].

Defendants should be precluded from offering this sort of evidence – that counsel was present for certain discussions, or that counsel did not object to certain issues – unless defendants can show that they actually sought and received advice. As discussed above, such evidence is legally suspect, since silence of counsel is not advice of counsel. Further, by proffering this sort

17

of evidence, the jury could be misled to think that counsel's presence and/or non-objection amounted to advice, which would allow defendants the benefit of purported "reliance on counsel" evidence without evidence of actual reliance. *Cf. SEC v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013) ("A lay jury could easily believe that the fact that a lawyer is present at a meeting means that he or she must have implicitly or explicitly "blessed" the legality of all aspects of a transaction. Likewise, the fact that lawyers saw and commented on disclosure language could be understood as "blessing" the sufficiency of that disclosure. This misunderstanding would give the defendant all of the essential benefits of an advice of counsel defense without having to bear the burden of proving any of the elements of the defense.").

C. This Evidence Should be Excluded.

For the reasons stated above, evidence related to lawyer witnesses should be limited.

IV. Evidence Of Defendants' Purported Good Character Should Be Precluded.

A. Background.

In discovery defendants elicited extensive character evidence from witnesses. For example, when questioning Angela Knowlton, ITT's former controller, defendants asked numerous questions to elicit evidence of Mr. Fitzpatrick's purported good character:

Q And can you describe Mr. Fitzpatrick's work ethic?

A He has a very strong work ethic, you know, worked all kinds of hours, very diligent. Very, very strong work ethic.

Q Did you -- based on your work with Mr. Fitzpatrick, did you consider him to be diligent in his role as CFO?

A Absolutely.

…

Q Based on your experience working with Mr. Fitzpatrick, did you observe him to be diligent in trying to reach appropriate accounting conclusions regarding the PEAKS and CUSO programs?

…

A Yes. I believe he definitely always wanted to try to get to the right answer.

Q Did you and Mr. Fitzpatrick, you know, work with great concentration to try to address all the issues that were arising as a result of the PEAKS and CUSO programs?

…

A I believe we tried to relay the information and take the counsel of, you know, PwC and work with them to get to the right conclusions and the right answers.

Q And based on your experience working with Mr. Fitzpatrick, did you observe him to be diligent in trying to ensure that appropriate disclosures were made in ITT's SEC filings regarding the PEAKS and CUSO programs?

…

A I believe he did, yes.

…

Q Based on your experience, did you have confidence in Mr. Fitzpatrick's judgments that he made as the CFO?

A Yes.

…

Q Based on your experience working with Mr. Fitzpatrick, do you have any reason to believe that Mr. Fitzpatrick ever provided false or misleading information to you?

A No.

Q And in your experience working with Mr. Fitzpatrick, do you have any reason to believe that Mr. Fitzpatrick provided false or misleading information either to PwC or to ITT's counsel?

A I don't believe he would have done that, no.

Q In your experience working with Mr. Fitzpatrick, did you have any reason to believe that Mr. Fitzpatrick withheld relevant information from PwC or ITT's counsel?

A I don't believe so.

[Filing No. 281-16 at 5, 7 (Depo. of Angela Knowlton at pp. 123:3-124:10 and p. 130:13-16)].

The SEC anticipates that defendants will attempt to elicit similar testimony at trial.

B. Evidence to be Excluded and Argument.

At trial, defendants should be precluded from eliciting this sort of testimony or otherwise introducing irrelevant character evidence.

Federal Rule of Evidence 404 provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in

accordance with this character or trait." Fed. R. Evid. 404(a)(1). This rule makes good sense,

since, as the Advisory Committee explained,

> "[c]haracter evidence is of slight probative value and may be very prejudicial. It
> tends to distract the trier of fact from the main question of what actually happened
> on the particular occasion. It subtly permits the trier of fact to reward the good
> man and to punish the bad man because of their respective characters despite what
> the evidence in the case shows actually happened."

Fed. R. Evid. 404, advisory committee notes, 1972 Proposed Rules (quoting California

Law Revision Commission); *see also, e.g.*, *U.S. v. Burke*, 781 F.2d 1234, 1239 (7th Cir. 1985)

(noting that character evidence is "usually inadmissible, because it is usually off the point. It

does not speak to the question whether the accused committed the crime. People of impeccable

reputation may commit crimes, and when they are charged with crime the question is whether

they did it, not whether they enjoy a high social standing."). For these reasons, character

evidence is not admissible in a civil case, even when the charge involves fraud or other quasi-

criminal conduct. *See, e.g.*, *Continental Cas. Co. v. Howard*, 775 F.2d 876, 879 n.1 (7th Cir.

1985) (rejecting argument that district court erred in excluding evidence of good character; "'[I]n

a civil suit based on fraud, the reputation of the defendant is not in issue.'") (quoting *Loeb v.

Hammond*, 407 F.2d 779, 781 (7th Cir. 1969)); *see also SEC v. Jacobs*, 2014 WL 12597832, *3

(N.D. Ohio Feb. 25, 2014) (granting SEC's motion in limine to exclude character evidence); *SEC

v. Acord*, 2010 WL 11505963 (S.D. Fla. Aug. 23, 2010) (same); *SEC v. Towers Financial Corp.*,

966 F. Supp. 203, 205 (S.D.N.Y. 1997) (same).[3]

Similarly, evidence of a witness's character for truthfulness is only admissible after such

character has been attacked. Fed. R. Evid. 608(a). While the Commission may seek to impeach

---

[3] In *SEC v. Saul*, the district court recognized the general rule that "character evidence is not admissible in a civil
case" but admitted character evidence "under the unique circumstances of th[at] case." 1991 WL 218061, *2 (N.D.
Ill. Oct. 16, 1991). *Saul* was decided prior to the 2006 amendments to Federal Rule of Evidence 408, which
"clarif[ied] that in a civil case evidence of a person's character *is never admissible* to prove that the person acted in
conformity with the character trait." (emphasis added).

the defendants, such impeachment is not attacking their *character* for truthfulness. *See* 4 Jack B. Weinstein, *Weinstein's Federal Evidence* § 608.02 ("Offering evidence of untruthful character is not the only method of attacking a witness's credibility …. Other means of impeaching a witness include the following: Introducing prior inconsistent statements. Demonstrating the witness's interest, bias, or hostility. Attacking the witness's perception or memory. Introducing conflicting evidence or conflicting testimony of other witnesses[.]"). Nor is the fact that this case involves allegations of fraud an attack on the defendants' character for truthfulness. *Jacobs*, 2014 WL 12597832 at *3 ("Filing a claim based on allegations of securities fraud does not constitute an attack on a defendant's character for truthfulness."). Thus, evidence of the defendants' purported good character is simply not relevant to this case.

Further, if the defendants are permitted to introduce such evidence of witnesses' opinions of the defendants' purported good character, the SEC intends to rebut it. For example, pursuant to Fed. R. Evid. 405, the SEC should be permitted to cross-examine witnesses who offer character evidence regarding specific instances of the defendants' conduct. Fed. R. Evid. 405(a). Among other things, the SEC should be entitled to ask questions about events or allegations that bear on the defendants' character. Such events would include other lawsuits filed against the defendants or other investigations into the defendants' conduct. *See, e.g.*, *SEC v. Peters*, 978 F.2d 1162, 1170 (10th Cir. 1992) ("[I]t is well established that opinion witnesses may be asked 'have you heard' questions concerning rumors, allegations or events about which the witnesses may lack first-hand knowledge.").[4]

---

[4] The SEC has stipulated that it will not seek to affirmatively introduce evidence of ITT's bankruptcy or other government investigations, but informed the defendants that if the defendants opened the door to any such topics, the SEC reserved the right to respond accordingly. Seeking to introduce evidence of the defendants' purported good character would open the door to this evidence that bears directly on defendants' character.

C.   This Evidence Should be Excluded.

This evidence is inadmissible under Fed. R. Evid. 404 and should be excluded.

V.   Evidence Or Argument Regarding The SEC's Charging Decisions Should Be Precluded.

A.   Background.

Beginning in 2013, the Securities and Exchange Commission conducted a non-public investigation concerning ITT Educational Services, Inc. At the end of the investigation the Commission, in its sole discretion, determined whether to bring charges of violations under the securities laws, whom to charge, and what charges to make. The Commission's deliberations about those charges are subject to various privileges.

B.   Evidence to be Excluded and Argument.

The defendants should be precluded from introducing evidence or making arguments regarding the fact that SEC did not charge additional entities or individuals in connection with this case.

1.   This Evidence and Argument Should be Excluded Because it is Irrelevant.

The SEC's charging decisions with respect to other entities or individuals are irrelevant because they do not have "any tendency to make the existence of a fact that is of consequence" to the jury's determination of whether the defendants violated the law "more probable or less probable." Fed. R. Evid. 401; *see, e.g., United States v. Young,* 20 F.3d 758, 765 (7th Cir. 1994) (granting, on relevancy grounds, the government's motion to preclude the defendant from introducing evidence that another individual who had been arrested with him was not charged); *United States v. Mosky*, No. 89 CR 669, 1990 WL 70832, at *1 (N.D. Ill. 1990) ("The government seeks to bar only any reference to its decisions regarding who to indict and for what acts. The government is correct that those decisions are not relevant to the charges faced by these defendants."). Accordingly, argument and evidence regarding the SEC's decision to sue the

22

defendants and not others has no relevance to any issue properly before the jury and should be excluded under Fed. R. Evid. 401 and Fed. R. Evid. 402.

    2.  <u>It Should Also be Excluded Because it Would Waste Time and Confuse the Jury.</u>

Further, even if such evidence and argument was relevant – which it is not – it should be excluded pursuant to Fed. R. Evid. 403. Fed. R. Evid. 403(b) permits exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Agencies such as the SEC that are "engaged in prosecutorial or enforcement activities are provided a wide discretion on when to file charges and against whom the charges should be instituted." *SEC v. Tiffany Indust., Inc.*, 535 F. Supp. 1167, 1168 (E.D. Mo. 1982) (citation omitted). And "law enforcement policy [i]s not [the jury's] concern," instead the jury should "focus its attention on the real issue, namely, whether the government ha[s] proved the facts alleged…". *United States v. Cheung Kin Ping*, 555 F.2d 1069, 1073 (2d Cir. 1977). Evidence and argument regarding the SEC's charging decisions has no probative value to the issue of whether the defendants committed the alleged violations of the law, and would only serve to mislead the jury, waste time, cause the jury to speculate regarding the SEC's deliberative processes, and ultimately confuse the issues the jury needs to decide under the Court's instructions.

    C.  <u>This Evidence and Argument Should be Excluded.</u>

For the reasons stated above, argument and evidence regarding the SEC's charging decisions should be precluded pursuant to Fed. R. Evid. 402 and 403.

VI. <u>Evidence or Argument of Adverse Impact from this Case or any Remedies Should be Precluded.</u>

   A. <u>Background.</u>

      The SEC anticipates that defendants may try to offer evidence of the impact that the investigation or litigation has had on them and of the impact the imposition of any remedies would have on them. This evidence is improper and should be excluded.

   B. <u>Evidence to be Excluded and Argument.</u>

      Defendants should be precluded from introducing evidence or argument regarding any adverse impact from the SEC's investigation and this litigation, as well as the remedies the Court may impose if the defendants are found to have violated the federal securities laws. The jury's role is to determine whether the defendants violated the federal securities laws. Any collateral effects on the defendants from the investigation, litigation, trial, or relief the Court might impose should not enter into the jury's deliberations. Such evidence and argument is irrelevant to the issue of whether the defendants violated the federal securities laws and would create a substantial danger of unfair prejudice.

     1. <u>This Evidence and Argument Is Irrelevant.</u>

      First, evidence of any potential impacts from this case on the defendants, before or after trial, would be irrelevant because they do not have "any tendency to make the existence of a fact that is of consequence" to the jury's determination of whether the defendants violated the law "more probable or less probable." Fed. R. Evid. 401; *see also* Fed. R. Evid. 402 ("[i]rrelevant evidence is not admissible."). Under well settled law, argument or evidence regarding the consequences of the jury finding the defendants liable is irrelevant and improper. *See Shannon v. United States*, 114 S. Ct. 2419, 2424 (1994) ("information regarding the consequences of a verdict are irrelevant" for the finder of fact); *Rogers v. United States*, 422 U.S. 35, 40 (1975)

24

(holding that a verdict must be reached "without regard to what sentence might be imposed"); *United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997) (holding that "arguing punishment to a jury is taboo."). Evidence and argument regarding any adverse impacts on defendants from the investigation and litigation leading up to trial is also irrelevant. *See SEC v. Steffes*, 10-cv-6266 (N.D. Ill. 2014), Dkt. No. 261 ("any impact [from] the Commission's investigation and civil enforcement action" is "not relevant to whether defendants engaged in insider trading.") [Filing No. 281-17]; *SEC v. Jacobs*, 13-cv-1289 (N.D. Ohio 2014), Dkt. No. 78, at 11 (granting the SEC's motion to bar evidence of adverse consequences that the defendants claimed "as a result of Plaintiff's investigation or this litigation.") [Filing No. 281-18]; *SEC v. Moran*, No. 95 Civ. 4472, 1995 WL 785953, at *1 (S.D.N.Y. Oct. 31, 1995) (granting the SEC's motion *in limine* to preclude the defendants "from offering any evidence regarding hardship or loss which the defendants suffered *as a result of these charges being lodged or that may result from the court's verdict*," holding "[t]here is no relevant basis under which such proof could be offered.") (emphasis added). Evidence and argument regarding any negative impact on defendants from this case – whether from the investigation, litigation, trial, or potential relief following an adverse jury verdict – have no bearing on whether the defendants violated the federal securities laws and should therefore be precluded pursuant to Fed. R. Evid. 401 and 402.

    2.   <u>This Evidence and Argument Is Unfairly Prejudicial.</u>

    Second, even if evidence of any adverse impacts on defendants from this case was relevant (it is not), the evidence should be precluded because it would be unfairly prejudicial under Fed. R. Evid. 403. Fed. R. Evid. 403(b) permits exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Under Fed. R. Evid. 403, the term 'unfair prejudice' "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee note. As the court found in *SEC v. Saul*, No. 90 C 2633, 1991 WL 218061 (N.D.Ill. Oct 16, 1991), "[s]peculation about the consequences [the defendants] might suffer from a jury finding against them would likely distract the jury from the allegations of the SEC's complaint and encourage deliberation based on emotional considerations which are improper." *Id.* at *1 (excluding, pursuant to Fed. R. Evid. 403, "testimony concerning the possible penalties which could be imposed upon the defendants and the other consequences which defendants might experience as the result of an adverse judgment."). Evidence or argument regarding any hardship or loss suffered by defendants as a result of the investigation or litigation, or from potential relief that might be imposed against the defendants following a finding of liability, has no probative value and would be unfairly prejudicial because it would create a substantial danger that the jury would improperly base its verdict on the jurors' sympathy for the defendants, rather than application of the law to the evidence as instructed by the Court. Further, this evidence and argument would confuse the issues in this case, mislead the jury, and waste time. Accordingly, all evidence and argument regarding negative impacts on the defendants flowing from this case should be precluded pursuant to Fed. R. Evid. 403.

C.  This Evidence and Argument Should be Excluded.

Evidence or argument regarding any adverse impact from the SEC's investigation and this litigation, as well as the remedies the Court may impose if the defendants are found to have violated the federal securities laws, should be precluded under Fed. R. Evid. 402 and 403.

VII.    <u>Conclusion.</u>

For the reasons stated above, the SEC respectfully requests that the motions in limine

discussed above be granted.

Dated:  May 23, 2018                          Respectfully submitted,

                                              */s/ Polly A. Atkinson*
                                              Nicholas P. Heinke
                                              Polly A. Atkinson
                                              Zachary T. Carlyle
                                              U.S. Securities and Exchange Commission
                                              Byron G. Rogers Federal Building
                                              1961 Stout Street, Suite 1700
                                              Denver, CO 80294-1961
                                              Phone: (303) 844-1071 (Heinke)
                                              (303) 844-1046 (Atkinson)
                                              (303) 844-1084 (Carlyle)
                                              *HeinkeN@sec.gov*
                                              *AtkinsonP@sec.gov*
                                              *CarlyleZ@sec.gov*

                                              *Attorneys for Plaintiff United States*
                                              *Securities and Exchange Commission*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a copy of the foregoing document to be served upon all counsel of record by operation of the Court's Electronic Notification system this 23rd day of May, 2018.

<u>/s/ Polly A. Atkinson</u>

Polly A. Atkinson
