**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> ITT EDUCATIONAL SERVICES, INC., KEVIN M. MODANY, and DANIEL M. FITZPATRICK, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) )  Civil Action No. 1:15-cv-00758-JMS-MJD |

## DEFENDANTS' MOTIONS *IN LIMINE*

Defendants Kevin M. Modany and Daniel M. Fitzpatrick ("Defendants"), by their respective counsel, and pursuant to the Court's April 23, 2018 Final Pretrial Conference Order (Filing No. 265), as modified (Filing No. 272), respectfully submit the following motions *in limine*.

### Preliminary Statement

The Court's recent rulings on the parties' motions for summary judgment (Filing No. 259) and motions to exclude opinions of expert witnesses (Filing No. 264) have narrowed and focused this litigation in advance of trial, commencing July 9, 2018. To further narrow contested issues at trial, and mindful of the Court's encouragement that the parties enter into stipulations where possible, Defendants and the SEC have agreed to several stipulations that have obviated the need for motions *in limine* on certain issues, which Defendants propose to enter into the record during the final pretrial conference on June 18, 2018. The SEC has agreed that it will not seek to affirmatively introduce evidence or argument:

- Concerning ITT's bankruptcy or the fact that it is no longer in business;

- Concerning any settlement, including (i) ITT's settlement with the SEC (or prior offer during the investigation and in the Wells submission), (ii) SEC settlement discussions with either of the Defendants, and (iii) settlement between ITT and PEAKS noteholders;

- Concerning any other government investigations (including investigations by the Consumer Financial Protection Bureau or state regulators) of ITT and/or either of the Defendants;

- That the CUSO loan program should have been consolidated onto ITT's balance sheet;

- That the contingent liability amounts recorded for the PEAKS or CUSO student loan programs were mathematically inaccurate, and/or calculated improperly;[1]

- That consolidation of the PEAKS program onto ITT's balance sheet as of February 28, 2013 was not appropriate under GAAP;[2] or

- That Defendants sold any ITT securities during the period of the alleged violations.

- Further, the SEC has agreed to redact irrelevant inflammatory language regarding analysts from emails that it offers in evidence.

Accordingly, Defendants are not moving *in limine* to exclude evidence or argument on the above issues.[3] Likewise, Defendants have agreed that they will not seek to affirmatively introduce evidence or argument:

- Concerning the fact that the SEC dismissed certain claims on May 16, 2018 (*see* Filing Nos. 273, 274);

- Using the phrase "taxpayer money" with reference to the expenses incurred in the SEC's pursuit of this action; or

- That the SEC did not introduce evidence defining the applicable standard of care (but defendants reserve the right to argue that the SEC did not meet its burden to prove by a preponderance of the evidence that Mr. Modany and/or Mr. Fitzpatrick breached the applicable standard of care).

---

[1] But the SEC reserves the right to argue (i) that the disclosures about the contingent liability during the relevant time period were misleading because the Defendants did not disclose the projected payments that ITT expected to make under the CUSO and/or PEAKS guarantees, and (ii) that, under GAAP, once ITT was required to consolidate the PEAKS program onto its balance sheet, ITT should have recorded no contingent liability for PEAKS as of the date that consolidation was first required under GAAP. And Defendants reserve their rights to make any counter-arguments about the foregoing issues.

[2] The SEC does not concede that there were no other possible dates upon which ITT could have consolidated the PEAKS program, or that consolidation considerations prior to February 28, 2013 are not relevant at trial. Both parties preserve all other arguments concerning the consolidation of the PEAKS program under GAAP.

[3] Defendants reserve the right to move to exclude if the SEC subsequently attempts to introduce evidence or arguments concerning these issues, or concerning other issues that may arise during trial.

There are five remaining issues, however, for which no stipulation could be reached. Defendants accordingly move *in limine* on these issues in order to exclude certain evidence and argument, primarily on grounds that such evidence and argument would be irrelevant, speculative, unduly prejudicial, and confusing to a jury:

- <u>Motion *in Limine* No. 1</u>: The SEC should be barred from presenting any evidence or argument concerning ITT's public filings after the third quarter of 2013.

- <u>Motion *in Limine* No. 2</u>: The SEC should be barred from presenting any evidence or argument concerning written reports of financial analysts.

- <u>Motion *in Limine* No. 3</u>: The SEC should be barred from presenting any evidence or argument regarding the amounts of Defendants' compensation (including but not limited to the amounts of salaries and bonuses received from ITT), amenities of their former executive roles at ITT, or their financial condition.

- <u>Motion *in Limine* No. 4</u>: The SEC should be barred from presenting any evidence or argument that the PEAKS student loan program should have been consolidated onto ITT's balance sheet prior to February 28, 2013.

- <u>Motion *in Limine* No. 5</u>: The SEC should be barred from presenting any evidence or argument concerning alleged deceit of PEAKS program noteholders, prior to the Court's determination of its admissibility.

## **Applicable Law**

<u>Seventh Circuit Standard for Motions *in Limine*</u>

"[T]he motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings…. [It] performs a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." *Scott v. Suelter*, No. 09-CV-1189, 2013 WL 2181128, at *1 (C.D. Ill. May 20, 2013) (quoting *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)) (internal quotation marks omitted). "The purpose of a motion in limine is to 'streamline trials and settle evidentiary issues in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues.'" *Marsh Supermarkets,*

*Inc. v. Marsh*, No. 1:09-cv-00458, 2012 WL 5286928, at *1 (S.D. Ind. Oct. 23, 2012) (quoting *United States v. Tokash,* 282 F.3d 962, 968 (7th Cir. 2002)).

On a motion *in limine*, the court "excludes evidence . . . only if the evidence clearly is not admissible for any purpose." *Rohler v. Rolls-Royce N. Am., Inc.*, No. 1:13-cv-00040, 2014 WL 3405872, at *1 (S.D. Ind. July 11, 2014) (internal quotation omitted) (granting defendant's motions *in limine*). The movant bears the burden of proving that "the evidence is inadmissible on any relevant ground." *United States v. Carmichael*, No. 1:16-cr-00172, 2018 WL 1140391, at *1 (S.D. Ind. Mar. 2, 2018) (internal quotations omitted) (citing *Plair v. E.J. Brach & Sons, Inc.*, 864 F. Supp. 67, 69 (N.D. Ill. 1994)).

Federal Rules of Evidence

Under the Federal Rules of Evidence, only relevant evidence is admissible. FED. R. EVID. 401 ("Rule 401"); FED. R. EVID. 402 ("Rule 402"). Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it is without the evidence." *Brown v. BMW of N. Am., LLC*, No. 1:14-cv-00931, 2017 WL 1047074, at *5 (S.D. Ind. Mar. 20, 2017) (Magnus-Stinson, J.) (granting motion to exclude evidence as irrelevant under Rule 401 and Rule 402), *reconsideration denied*, 2017 WL 3433170 (S.D. Ind. Aug. 10, 2017). *See also Fisher v. United States*, No. 1:08-cv-00908, 2011 WL 1528450, at *2 (S.D. Ind. Apr. 19, 2011) (granting motion *in limine* to exclude evidence as irrelevant under Rule 401 where evidence had "no b[e]aring" on factfinder's assessment of the claims).

Even where evidence is relevant, FED. R. EVID. 403 ("Rule 403") "requires district courts to exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *United States v. Thomas*, 321 F.3d

627, 630, 632 (7th Cir. 2003) (internal citation and quotation omitted) (finding that district court improperly admitted a photo with "little, if any, probative value . . . when balanced against the prejudicial effect [it] may have had on the jury").  *See also Leistner v. Masterbrand Cabinets, Inc.*, No. 3:04-cv-186, 2007 WL 1521604, at *1 (S.D. Ind. May 23, 2007) (conditionally granting motion *in limine* under Rule 403 due to the "danger that the probative value of the [evidence] could be outweighed by the prejudicial effect it would have on the jury").  Rule 403 also demands the exclusion of cumulative evidence that would serve "no purpose other than to repeat [other] testimony" and "add[] very little to the probative force of the other evidence in the case." *United States v. Miles*, 207 F.3d 988, 993 (7th Cir. 2000) (internal quotations and citations omitted) (upholding trial court's proper exclusion of underlying documentary evidence as cumulative in light of other testimony).

Under FED. R. EVID. 801 ("Rule 801"), hearsay is defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  *Scheidler v. Ind.*, No. 1:14-CV-937, 2017 WL 2335981, at *1 (S.D. Ind. May 30, 2017) (internal quotations omitted) (excluding newspaper articles as inadmissible hearsay).  Such hearsay statements are inadmissible under FED. R. EVID. 802 unless subject to a hearsay exception. *Id.  See also Baron v. City of Highland Park,* 195 F.3d 333, 339 (7th Cir. 1999) ("the Rules of Evidence provide that a statement, other than one made by the declarant while testifying at trial, that is offered to prove the truth of the matter asserted is inadmissible hearsay").  The party that seeks to introduce hearsay evidence "bears the burden of establishing that it meets the Rule's requirements for admissibility."  *Lockwood v. McMillan*, 237 F. Supp. 3d 840, 847 (S.D. Ind. 2017) (Magnus-Stinson, J.) (citing *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009)).

**<u>Motion *in Limine* No. 1: The SEC should be barred from presenting any evidence or argument concerning ITT's public filings after the third quarter of 2013.</u>**

The SEC should be barred from presenting any evidence or argument concerning ITT's public filings after the third quarter of 2013 because it has not alleged that any filings after the Form 10-Q for Q3 2013 contain misstatements or omissions that would provide a basis for Defendants' liability.

Claims that have been abandoned or dismissed are properly excluded under Rule 401 on relevance grounds. *See, e.g.*, *Cunningham Charter Corp. v. Learjet Inc.*, No. 07-233, 2012 WL 2830351, at *2 (S.D. Ill. July 10, 2012) (granting motion *in limine* under Rule 401 to exclude as irrelevant any references or evidence "relating to abandoned and/or dismissed claims"). Moreover, district courts in the Seventh Circuit have held that interrogatory responses are binding as admissions on the parties. *See, e.g.*, *Fucarelli v. Schultz*, No. 85 C 3366, 1986 WL 5739, at *2 n.5 (N.D. Ill. May 14, 1986) ("defendants' admissions in their answers to interrogatories and in the uncontested facts of the final pretrial order are binding"); *Remington Arms Co. v. Funasaw Co.*, No. 75 C 784, 1978 WL 21379, at *12 (N.D. Ill. Sept. 12, 1978) ("Defendants' sworn interrogatory answer conceding the irrelevancy of their alleged method distinctions is binding on defendants on the issue of infringement").[4]

The Complaint's allegations of false and/or misleading statements or omissions made in ITT's public filings do not include any filing made later than the Form 10-Q for Q3 2013. [*See, e.g.*, Filing No. 1 at 15-32 (Compl. ¶¶ 54-112) ("Fourth Quarter of 2012 through Second Quarter of 2013: Defendants Engage in Fraudulent Conduct Surrounding the Poor Performance of PEAKS and CUSO, Including Concealing that Poor Performance from Investors"); *id.* at 32-34

---

[4] *But see Intellect Wireless, Inc. v. T-Mobile USA, Inc.*, 735 F. Supp. 2d 928, 937 n.7 (N.D. Ill. 2010) (observing that "courts, particularly in patent suits, generally still do not treat responses to contention interrogatories as binding").

(Compl. ¶¶ 113-123) ("Third Quarter 2013: Defendants Disclose Incomplete Information to Investors and Continue to Withhold Critical Information from Auditors").]

The SEC's interrogatory responses likewise indicate that the SEC does not consider ITT's public filings after Q3 2013 to provide a potential basis for liability in this case. In response to Defendants' Interrogatory No. 1, which asked the SEC to identify every act by Defendants that the SEC alleged constituted a violation of Rule 10b-5, the SEC stated that Defendants had violated Section 10(b) of the Exchange Act and Rule 10b-5 by making material misstatements and/or omissions in, and by signing and certifying, ITT's Form 10-Q for Q3 2012, Form 10-K for 2012, and Forms 10-Q for Q1, Q2, and Q3 2013. [*See* Filing No. 232-12 at 4-5, 7-13, 15-25, 27-31 (SEC's October 19, 2015 Interrogatory Responses).] Similarly, in response to Defendants' Interrogatory No. 2, which asked the SEC to identify every act by Defendants that the SEC alleged constituted a violation of Section 17(a) of the Securities Act, the SEC incorporated by reference its response to Interrogatory No. 1, and did not refer to any public filing made after ITT's Form 10-Q for Q3 2013. *See id.* at 34-36.

Consistent with the SEC's position on these filings, Defendants and the SEC negotiated a stipulated order regarding ITT's waiver of attorney-client privilege, pursuant to Federal Rule of Evidence 502(d), in which ITT waived privilege as to advice concerning its SEC filings limited to Q3 2012 to Q3 2013. [*See* Filing No. 84.] The stipulated 502(d) order expressly limited the waiver of legal advice regarding ITT's disclosures in public filings to its Form 10-Q for Q3 2012, Form 10-K for 2012, and Forms 10-Q for Q1-Q3 2013 (as well as earnings calls and releases during these time periods). *See id.* at 1-2.

Indeed, if the SEC had sought to introduce evidence of filings subsequent to Q3 2013, ITT may have waived privilege (and Defendants would certainly have sought such a waiver),

and discovery would have occurred, as to those filings. The Defendants relied in good faith on the scope of the waiver, and conducted discovery (including producing privileged documents and defending SEC depositions of numerous lawyers) consistent with the scope of the stipulated 502(d) order. Moreover, based upon the Complaint and the SEC's responses to interrogatories, Defendants' discovery efforts concerning ITT's public filings (including, for example, the specific areas covered in depositions) focused on the specific filings that the SEC alleged contained false and misleading statements: *i.e.*, ITT's Form 10-Q for Q3 2012, Form 10-K for 2012, and Forms 10-Q for Q1, Q2, and Q3 2013.[5] The SEC cannot now circumvent discovery by expanding its claims at this point.

The SEC therefore should be barred from introducing any evidence or argument concerning ITT's public filings after Q3 2013.

**Motion *in Limine* No. 2: The SEC should be barred from presenting any evidence or argument concerning written reports of financial analysts.**

The Complaint alleges that statements made by Defendants during earnings calls, including those on October 25, 2012 and January 24, 2013, were materially false. In support of this allegation, the SEC claimed that Defendants "received analyst reports showing that investors were in fact deceived by these statements, and demonstrating that this information was highly material," citing examples of reports from two analysts it claims were misled by remarks made during the January 24, 2013 call. [Filing No. 1 at 24-25 (Compl. ¶¶ 85-86).] In its response to Defendants' Interrogatory No. 10, which asked whether the SEC contended that any statements or writings by securities analysts concerning ITT were relevant to any allegations in the Complaint, the SEC confirmed its view that "writings and statements by securities analysts

---

[5] Notably, Defendants understand that ITT's document productions included limited, if any, documents concerning its public filings made after 2013.

concerning or relating to ITT's PEAKS and CUSO private student loan programs are relevant to allegations in the complaint." [Filing No. 283-1 at 4 (SEC's July 5, 2016 Interrogatory Responses).] Further, the SEC's witness list filed on March 20, 2017 included the names of three financial analysts—Kelly Flynn, Sara Gubins, and James Samford—whom the SEC expected to testify concerning their "analysis and coverage of ITT's stock, ITT's public filings and disclosures, ITT's analyst calls, and communications with Mr. Modany and Mr. Fitzpatrick, and other matters related to the claims in this case." [Filing No. 155 at 4-5.]

More recently, however, the SEC has represented that it will <u>not</u> be calling these analysts to testify at trial. [*See* Filing No. 283-2 at 1 (January 19, 2018 email from SEC to counsel for Defendants) ("Pursuant to the Court's scheduling order (Doc. # 185), we are writing to notify you that the SEC does not intend to call … Kelly Flynn, Sara Gubins, and/or James Samford to testify at trial").] Any evidence or argument concerning statements or writings by securities analysts about ITT, including but not limited to reports by Flynn, Gubins, or Samford, is inadmissible hearsay. *See* Rule 801, Rule 802.

This district court has previously excluded as hearsay analyst reports where the party seeking to introduce the reports did not provide testimony from the analysts who made the statements in the reports. *See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, No. IP 96-1718, 2001 WL 483977, at *2 (S.D. Ind. May 2, 2001) (holding that a stock analyst's report was "inadmissible hearsay" "at the most basic level" where the defendants did not provide "sworn testimony from the analyst or anyone else present . . . to the effect that the statements [in question] were made"). *See also In re oracle Corp. Sec. Litig.*, No. C01-00988, 2009 WL 1709050, at *8 (N.D. Cal. June 19, 2009), *aff'd sub nom. In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010) (analyst reports and newspaper articles are inadmissible hearsay under Rule

801 when used to prove that defendants made false statements unless they fall within a hearsay exception); *In re Cirrus Logic Sec. Litig.*, 946 F. Supp. 1446, 1469 (N.D. Cal. 1996) (finding that analyst reports were inadmissible hearsay to prove statements were made by defendant, and rejecting arguments including that the reports or the analyst's corresponding notes were admissible as present sense impressions, business records, or under the "catch-all" hearsay exception under Fed. R. Evid. 803(24)).[6]

Moreover, if admitted without the testimony of the analysts who wrote them, such reports would be highly likely to cause jury confusion and undue prejudice to Defendants under Rule 403. A jury could improperly infer from the introduction of such reports that the analysts were misled, despite the absence of testimony from the analysts as to their purported understanding of Defendants' remarks when they drafted their reports (and whether the analysts used other sources for their reports) and no opportunity for Defendants to cross-examine those witnesses.

Indeed, Defendants anticipate that the SEC intends to offer analyst reports into evidence in an attempt to make this very argument: that analysts were misled by Defendants during ITT's October 25, 2012 and January 24, 2013 earnings calls, and that Defendants were aware that they had misled analysts but made no attempt to correct their allegedly misleading statements or omissions. For instance, during Mr. Fitzpatrick's deposition, the SEC marked as an exhibit an email from Mr. Modany to ITT's board, forwarding a report by Credit Suisse analyst Kelly Flynn that contained remarks on the contingent liabilities for PEAKS and CUSO that Defendants

---

[6] Rule 803(17) carves out a hearsay exception for "market reports and similar commercial publications," defined as "market quotations, lists, directories, or other compilations that are generally relied on by the public or by persons in particular occupations." Rule 803(17). Although Seventh Circuit case law interpreting this hearsay exception is sparse, "courts have generally taken a . . . narrow view of the scope of Rule 803(17), applying it to compilations of data, not to narrative and potentially subjective assessments in either general or specialized publications." *Bianco v. Globus Med., Inc.*, No. 2:12-CV-00147, 2014 WL 119285, at *1-2 (E.D. Tex. Jan. 12, 2014) (collecting cases, and holding that stock analyst reports containing a "substantial amount of subjective analysis" did not fall within the scope of the exception).

discussed during the January 24, 2013 earnings call. [*See* Filing No. 283-3 (Deposition Ex. 765).] Likewise, during Mr. Modany's deposition, the SEC marked as an exhibit an email showing that Mr. Modany had received a report from Morgan Stanley analyst Suzanne Stein concerning the January 24, 2013 earnings call.[7] [*See* Filing No. 283-4 (Deposition Ex. 817).] Defendants anticipate that the SEC has no other reason to introduce such reports other than to try to prove that analysts were misled during the January 24, 2013 earnings call, and that Defendants knew they were misled. Yet as noted above, the SEC has already stated that it is not calling any analysts as witnesses. Any arguments or evidence concerning whether these analysts were misled would be not only speculative and hearsay, but would also be unduly prejudicial to Defendants and confusing to a jury. The SEC simply cannot circumvent calling witnesses to the stand by eliciting purported statements against Defendants through analyst reports—in order to argue to the jury the SEC's interpretation of those reports—without the opportunity for Defendants to cross-examine.

Further, the SEC's decision not to call these witnesses is grounds for exclusion of evidence or argument. *See Cunningham Charter Corp.*, 2012 WL 2830351, at *2. Any evidence or argument concerning analyst reports therefore should be barred as abandoned, in addition to being inadmissible hearsay under Rule 801 and Rule 802, and unduly prejudicial and likely to cause jury confusion under Rule 403.

**Motion *in Limine* No. 3: The SEC should be barred from presenting**
**any evidence or argument regarding the amounts of Defendants' compensation**
**(including but not limited to the amounts of salaries and bonuses received from ITT),**
**amenities of their former executive roles at ITT, or their financial condition.**

The Court should preclude the SEC from introducing any evidence relating to the amounts of Defendants' compensation on multiple grounds. First, neither Defendant earned

---

[7] Ms. Stein was not even included in the list of analysts the SEC identified as witnesses it intended to call.

income linked to ITT's financial performance, making Defendants' salary or bonus amounts irrelevant to the alleged scheme. Second, as should be done here, courts have rejected a party's introduction of the opposing parties' finances at trial when that information is otherwise clearly irrelevant to the issues being litigated. Third, introduction of such evidence would also be unduly prejudicial to the Defendants and misleading to the jury.

In its March 23, 2018 Summary Judgment Order, the Court granted Defendants' motion for summary judgment on the SEC's claim for primary liability under 17(a)(2) of the Securities Act, holding that "[t]he SEC has not presented evidence showing that Mr. Modany and Mr. Fitzpatrick received money or property themselves, which it must in order to survive summary judgment." [Filing No. 259 at 43.] As the Court made clear, the SEC's proffered evidence—two passages in ITT's 2014 Proxy Statement, the first concerning "focus" as a guide for the Compensation Committee, and the second stating that ITT's Board of Directors reviewed officers' performance in evaluating their continued employment—"simply do not lead to the reasonable conclusion that Mr. Modany and Mr. Fitzpatrick obtained property or money based on ITT's performance." *Id.* In fact, ITT's 2014 Proxy Statement unequivocally states that Defendants received no money or property based on ITT's performance. [*See* Filing No. 250-1 at 5 (ITT Proxy Statement for 2014).] Moreover, as Defendants also observed in their summary judgment memorandum—and to which the SEC has stipulated—neither Mr. Modany or Mr. Fitzpatrick sold stock in ITT during the relevant period. [*See* Filing No. 247-1 at 25-27.]

Simply put, as the Court has acknowledged, neither Defendant earned any income during the relevant time period based on ITT's financial performance. The SEC should therefore be barred from introducing any evidence of the amounts of Defendants' compensation, including

but not limited to any salary or bonus amounts, because Defendants' compensation amounts are irrelevant to any motive or other allegations at issue in this case.[8]

Further, courts in the Seventh Circuit have soundly rejected attempts by litigants to discuss the financial condition of parties at trial. In *Adams Laboratories, Inc. v. Jacobs Engineering Co.*, for instance, the Seventh Circuit held that a "reference to the comparative size and financial wealth" of corporate parties was "improper," because "courts have held that appealing to the sympathy of jurors through references to the relative wealth of the defendants in contrast to the relative poverty of the plaintiffs is improper and may be cause for reversal." 761 F.2d 1218, 1226 (7th Cir. 1985) (internal quotation and citation omitted) (reversing and remanding for a new trial based in part on the plaintiff's prejudicial statements). The Seventh Circuit added, "if the wealth and size of a corporation are not at issue, counsel is bound to refrain from making reference to such size and wealth, or bear the risk of an unfavorable appellate reception." *Id.* Courts have applied the same reasoning in excluding evidence or argument concerning individual defendants' financial condition. *See Stedman v. Hoogendoorn, Talbot, Davids, Godfrey & Milligan*, No. 92 C 5670, 1996 WL 131684, at *1 (N.D. Ill. Mar. 20, 1996) (granting motion *in limine* and excluding "any evidence relating to [the individual plaintiff's] personal wealth or assets"); *Pucci v. Litwin*, No. 88 C 10923, 1993 WL 405448, at *1 (N.D. Ill. Oct. 4, 1993) (granting motion *in limine* under Rule 402 and Rule 403 to "exclude evidence of [individual] plaintiffs' financial condition," because such evidence "would be irrelevant and prejudicial").

---

[8] Indeed, the SEC has already attempted to introduce irrelevant and unduly prejudicial evidence of executive compensation amounts through its "industry expert" Kevin Kinser, whose report devoted two full pages to a comparison of "Executive Compensation" between for-profit schools' executives and executives at public and nonprofit schools. Mr. Kinser's report and testimony have since been excluded in their entirety. [*See* Order, Filing No. 264 at 18 ("The Court finds that Mr. Kinser's testimony is, in various respects, irrelevant, prejudicial, and would not be helpful to the jury").] The SEC should likewise be barred from introducing similar evidence through fact witnesses or argument.

Accordingly, evidence of the amounts of Defendants' compensation or amenities of office while at ITT is irrelevant, as is any evidence of their financial condition, and should be excluded.

Finally, it would be unduly prejudicial to Defendants and misleading to the jury for the SEC to raise the issue of the amounts of Defendants' compensation, amenities of office, or financial condition. *See* Rule 403. Any evidence or argument concerning Defendants' compensation amounts would serve only to, among other things, create the unfounded inference that Defendants' compensation at ITT, or their current financial position, was somehow improved by their alleged "scheme," which as discussed above is flat wrong. Such evidence or argument would also constitute a clear attempt to inflame and prejudice the jury against Defendants based purely on the amounts of compensation they may have received—which, in fact, included stock that is now worthless. For the aforementioned reasons, the SEC should be barred from introducing any evidence or argument concerning Defendants' compensation amounts or amenities of office while at ITT, or their current or past financial condition.

**Motion *in Limine* No. 4: The SEC should be barred from presenting
any evidence or argument that the PEAKS student loan program should
have been consolidated onto ITT's balance sheet prior to February 28, 2013.**

The SEC has also abandoned any claim that ITT should have consolidated the PEAKS Trust onto its balance sheet on any date prior to February 28, 2013. The SEC's Complaint alleges that ITT "did not initially consolidate the PEAKS or CUSO programs into its financial statements," [Filing No. 1 at 12 (Compl. ¶ 41)], implying that PEAKS and CUSO should have been consolidated at their inception, in 2010 and 2009 respectively. [*See also id.* (Compl. ¶ 42) ("Because ITT did not consolidate the PEAKS or CUSO programs into its financial statements, ITT's investors did not have direct information about the performance of the programs or the component student loans").]

The SEC's discovery responses make clear that the SEC believes ITT should have consolidated PEAKS onto its balance sheet as of February 28, 2013, when ITT's right to remove the PEAKS servicer was triggered. [*See* Filing No. 232-12 at 5, 27 (SEC's October 19, 2015 Interrogatory Responses) (alleging failure to consolidate PEAKS "even after ITT's right to remove, or kick out, the PEAKS servicer was triggered," with no allegation that PEAKS should have been consolidated earlier, and alleging that ITT's disclosure that it was "not required to consolidate" PEAKS was a misstatement because the PEAKS kickout right "had been triggered"). Indeed, in the SEC's February 10, 2016 response to ITT's Interrogatory No. 3, which asked the SEC to "[i]dentify each accounting error" that the SEC contended Defendants made in connection with ITT's financial statements or public disclosures, including the "alleged GAAP violation or error," the SEC responded in part, "The principal accounting errors and GAAP violations at issue in this case are the errors in ITT's periodic filings from the first quarter of 2013 through the third quarter of 2013, which did not conform with GAAP because of the Defendants' failure to consolidate the PEAKS Trust." [Filing No. 283-5 at 3 (SEC's February 10, 2016 Interrogatory Responses).] The SEC further responded that the "principal facts" supporting its contention were set forth in ITT's restated Form 10-Qs for Q1-Q3, 2013, quoting the portion of ITT's restated Form 10-Qs that identified February 28, 2013 as "the first date that we could have exercised our right to terminate the [PEAKS] servicing agreement." *Id.* at 4. If the SEC alleged that there were GAAP violations due to ITT's failure to consolidate prior to February 28, 2013, it should have informed Defendants of that allegation during discovery.

The SEC's interrogatory responses, in which the SEC argues that PEAKS should have been consolidated on February 28, 2013 (with no mention of consolidation at the inception of PEAKS or otherwise earlier than February 28, 2013), justify the exclusion of any proffered

evidence at trial that ITT should have consolidated PEAKS prior to February 28, 2013. *See Fucarelli*, 1986 WL 5739, at *2 n.5 (interrogatory answers are binding); *Remington Arms Co.*, 1978 WL 21379, at *12 (same).

Further, the SEC's Statement of Claims fails to clarify the timeframe in which it claims that the PEAKS Trust should have been consolidated, stating only, "The Defendants also failed to consolidate the PEAKS program into ITT's financial statements, which would have shown the declining value of PEAKS loans, despite having the sort of control over the program that should require consolidation."[9]  Filing No. 205 at 2.  Therefore, to the extent that the SEC was ever alleging that PEAKS should have been consolidated earlier than February 28, 2013—much less at the PEAKS program's inception—such allegation has been abandoned. *See, e.g.*, *McGann v. Trathen*, No. 1:16-cv-01235, 2017 WL 5571289, at *12 (S.D. Ind. Nov. 20, 2017) (Magnus-Stinson, J.) (finding that plaintiff "abandoned any negligent infliction of emotional distress or intentional infliction of emotional distress claims by failing to set them forth in his Statement of Claims"); *Schambers v. Key Family of Cos.*, No. 1:16-cv-2406, 2018 WL 1794915, at *7 (S.D. Ind. Apr. 16, 2018) (failure to include claim in initial Statement of Claims "operated as an abandonment of that claim"); *Tucker v. Express Scripts Holding*, No. 1:14-cv-01698, 2016 WL 2643737, at *8 (S.D. Ind. May 10, 2016), *reconsideration denied sub nom. Tucker v. Holding*, 2016 WL 7100652 (S.D. Ind. Dec. 6, 2016).

The SEC has now stipulated that it will not seek to introduce evidence or argument that consolidation of the PEAKS program onto ITT's balance sheet as of February 28, 2013 was "not appropriate" under GAAP.  Yet it is also still preserving the right to introduce evidence and

---

[9] Although the Statement of Claims does not indicate when the SEC believes that "control … requir[ing] consolidation" occurred, the SEC's interrogatory responses again make clear that it is alleging such control occurred on February 28, 2013.  [*See* Filing No. 283-5 at 4-5 (quoting language from ITT's restated Form 10-Qs, which identified February 28, 2013 as the first date that ITT "could have exercised [its] right to terminate the servicing agreement" and therefore the first date on which PEAKS should have been consolidated).]

argument that PEAKS should have been consolidated on a date ***prior*** to February 28, 2013, without indicating what it believes that date or dates should be. The SEC cannot have its cake and eat it too. Over three years have passed since the SEC filed this enforcement action, and although the SEC is no longer alleging—if, indeed, it ever was—that PEAKS should have been consolidated onto ITT's balance sheet any earlier than February 28, 2013, it is still preserving its right to argue exactly that.

The time for guessing what the SEC is claiming is over. Given the SEC's failure to clarify its allegations concerning when PEAKS should have been consolidated, and pursuant to the legal authority concerning abandonment of claims discussed in Motion *in Limine* Nos. 1 and 2, the SEC should be barred from introducing any evidence or argument that ITT should have consolidated the PEAKS Trust onto its balance sheet prior to February 28, 2013, or that ITT's treatment of the PEAKS Trust as off-balance-sheet prior to February 28, 2013 was in any way improper.

### Motion *in Limine* No. 5: The SEC should be barred from presenting any evidence or argument concerning alleged deceit of PEAKS program noteholders prior to the Court's determination of its admissibility.

Based on discussions with the SEC, Defendants understand that the SEC is not contending that the PEAKS program noteholders were victims of securities fraud violations. The SEC has indicated, however, that evidence relating to Defendants' alleged failure to disclose POBOB to PEAKS noteholders is relevant, not as an actionable misstatement or omission, but as evidence in support of the SEC's "scheme liability" claims under Rule 10b-5(a) and (c), and under Section 17(a)(1) and (3) of the Securities Act. [*See* Filing No. 251 at 30-31 (SEC Mem. in Opp. to Defendants' Mtn. for Partial Summary Judgment).] Defendants have argued that they had no legal duty to disclose POBOB to the PEAKS noteholders, and that absent a legal duty to disclose—which the SEC has failed to show—no claims of fraud, including scheme liability

claims, could be predicated on Defendants' alleged failure to disclose POBOB to the noteholders. [*See* Filing No. 247-1 at 38-39 (Defendants' Second Corrected Mem. in Support of Mtn. for Partial Summary Judgment) ("Without a legal duty to disclose, the Defendants' silence cannot amount to fraud."); Filing No. 258 at 16-17 (Defendants' Reply in Support of Mtn. for Partial Summary Judgment) ("Defendants' nondisclosure of POBOB to the PEAKS noteholders still would not support scheme liability (or any fraud).… [T]he SEC has no proof that ITT or Defendants had an affirmative duty to disclose POBOB to the noteholders").][10]

The Court addressed this dispute in its Order on the parties' motions for summary judgment:

> At this stage of the litigation, without seeing all of the evidence presented at trial, the Court cannot judge whether the PEAKS Noteholder allegations do or do not support the SEC's scheme liability claims. While it is true that those claims require more than just a misstatement or omission, the evidence presented could support a reasonable jury finding that the PEAKS Noteholder allegations establish the type of deceptive acts required under Rule 10b-5(a) and (c). If during trial it is evident that the PEAKS Noteholder evidence is irrelevant to the scheme liability claims, based on the context in which that evidence is presented and the other evidence that has been admitted, Defendants may object to its admission. At this point, however, the Court will not pluck certain allegations, out of context, from the SEC's scheme liability theory without seeing the whole picture.

[Filing No. 259 at 24 (denying Defendants' motion for summary judgment as to PEAKS noteholder allegations).]

The Court has therefore preserved for trial the issue of whether evidence concerning disclosures to the PEAKS noteholders could support the SEC's scheme liability claims. Given the Court's determination, Defendants believe that it would cause undue prejudice as well as confusion for the jury to hear evidence or arguments—for example, during the SEC's opening statement—that Defendants did not tell PEAKS noteholders about POBOB, when the Court has

---

[10] [*See also* Filing No. 247-1 at 21 ("ITT (including Defendants) solicited legal advice from ITT's external counsel, Schiff Hardin, regarding disclosure of information to the PEAKS noteholders.").]

not yet ruled on the admissibility of such evidence. *See* Rule 403. Defendants request, therefore, that the SEC be barred from presenting any argument—including in the SEC's opening statement—concerning what information was disclosed or not disclosed to PEAKS noteholders, including but not limited to POBOB, until the Court has ruled on whether evidence relating to disclosures to noteholders is relevant. Further, given the Court's Summary Judgment Order, should the SEC seek to offer any such evidence, Defendants request that the SEC be required to proffer that evidence to the Court outside the jury's presence so that the Court can rule on its admissibility.

## Conclusion

For the foregoing reasons, Defendants respectfully request that the Court grant their motions *in limine*.

Dated: May 23, 2018

Respectfully submitted,

*/s/ David I. Miller*
David I. Miller (*pro hac vice*)
Matthew R. Ladd (*pro hac vice*)
Zoe Phillips (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178
Telephone: (212) 309-6000
Fax: (212) 309-6001
*david.miller@morganlewis.com*
*matthew.ladd@morganlewis.com*

and

Eric W. Sitarchuk (*pro hac vice*)
Ryan P. McCarthy (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103
Telephone: (215) 963-5000
Fax: (215) 963-5001

*eric.sitarchuk@morganlewis.com*
*ryan.mccarthy@morganlewis.com*

and

Steve Korotash (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1717 Main St., Suite 3200
Dallas, TX 75201
Telephone: (214) 466-4144
Fax: (214) 466-4001
*steve.korotash@morganlewis.com*

and

Philip A. Whistler (#1205-49)
Thomas E. Mixdorf (#16812-49)
ICE MILLER, LLP
One American Square, Suite 2900
Indianapolis, IN 46282-0200
Telephone: (317) 236-5832
Fax: (317) 592-4708
*Philip.Whistler@icemiller.com*
*Thomas.Mixdorf@icemiller.com*

*Attorneys for Defendant Kevin M. Modany*

*/s/ Michael A. Ungar* (by consent)
Fredric D. Firestone (*pro hac vice*)
Michael A. Ungar (*pro hac vice*)
James M. Commons (*pro hac vice*)
Irene A. Firippis (*pro hac vice*)
MCDERMOTT WILL & EMERY LLP
500 North Capitol St., N.W.
Washington, DC 20001
Telephone: (202) 756-8000
Fax: (202) 756-8087
*rfirestone@mwe.com*
*mungar@mwe.com*
*jcommons@mwe.com*
*ifirippis@mwe.com*

Alan S. Brown (#3536-49)
Bryan S. Strawbridge (#29076-49)
FROST BROWN TODD LLC
201 N. Illinois St.

Suite 1900
Indianapolis, IN 46204-4236
Telephone: (317) 237-3841
Fax: (317) 237-3900
*abrown@fbtlaw.com*
*bstrawbridge@fbtlaw.com*

*Attorneys for Defendant Daniel M. Fitzpatrick*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing document to be served upon all counsel of record by operation of the Court's Electronic Notification system this 23rd day of May, 2018.

*/s/ David I. Miller*

David I. Miller