**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,    )<br>)<br>)<br>Plaintiff,    )<br>)<br>v.    )<br>)<br>)<br>ITT EDUCATIONAL SERVICES, INC., )<br>KEVIN M. MODANY, and DANIEL M. )<br>FITZPATRICK,    )<br>)<br>Defendants.    )<br>) | Civil Action No. 1:15-cv-00758-JMS-MJD |

**PLAINTIFF UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S**
**RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE**

Plaintiff, Securities and Exchange Commission, hereby submits its responses to

defendants' motions in limine.

I.      Evidence Concerning ITT's Public Filings After The Third Quarter Of 2013 Should Be
        Allowed.

The SEC intends to offer several of ITT"s public filings made after the third quarter of

2013 into evidence. Defendants seek preclusion of this evidence on the ground that it is

irrelevant. *See* [Filing No. 282 (Motion) at p. 6]. However, defendants' apparent premise, that

public filings after the third quarter of 2013 are relevant *only* if the SEC alleges those filings

*violated the law* is simply wrong. Further, Defendants have been on notice from the outset of this

litigation that evidence related to public filings after the third quarter of 2013 were relevant. *See*

Dkt. # 1 (Complaint) at ¶¶ 130-139. Evidence concerning ITT's public filings after the third

quarter of 2013 is relevant to this matter and should be admitted.

As defendants recognize, evidence is relevant if it has *any* tendency to make any fact that

is of consequence to the determination of the action more probable or less probable than it would

be without the evidence. *See* Fed. R. Evid. 401; *Brown v. BMW of N. Am., LLC*, No. 1:14-cv-00931, 2017 WL 1047074, at *5 (S.D. Ind. Mar. 20, 2017) (Magnus-Stinson, J.). A number of ITT's public filings after the third quarter of 2013 have the tendency to make consequential facts more probable and are therefore relevant.

The most obvious example is ITT's annual statement (10-K) for the year ended 2013 and its restated quarterly statements (10-Qs) for the first, second, and third quarters of 2013 – all of which were certified by the defendants – which restated ITT's financial statements for the first three quarters of 2013 by, among other things, consolidating the PEAKS student loan program into ITT's financial statements. The SEC has alleged that ITT's financial statements for the first three quarters of 2013 were materially misstated because of the failure to consolidate the PEAKS student loan program into ITT's financial statements for those periods. Even though the SEC does not allege that there are misstatements in the restatements, ITT's restatements for those periods have the tendency to make the fact of misstatements in the earlier periods more probable – they are relevant. *See, e.g.*, *SEC v. Battenberg*, 2010 WL 3835760, *2-3 (E.D. Mich. Sept. 24, 2010) (denying motion in limine to exclude restatement; citing cases).

Similarly, several of ITT's 8-Ks filed in 2014 are relevant to misstatements in earlier filings and as evidence relevant to the defendants' fraudulent scheme.[1]

Because ITT filings after the third quarter of 2013 are relevant to misstatements in earlier filings and to defendants' fraudulent scheme, there is no basis for their exclusion and they should be admitted.

---

[1] Discovery was not temporally limited. In fact, ITT waived privilege as to and produced documents prepared by ITT's lawyers in 2014 and the parties took the depositions of those lawyers. For instance, ITT produced documents reflecting legal advice received between August 2013 and February 2014 that ITT violated agreements by making Payments on Behalf of Borrowers. A March 17, 2014 8-K filed the ITT and signed by Mr. Fitzpatrick also acknowledges that violation. This information is relevant to defendant's fraudulent scheme.

II.     Evidence Concerning Written Reports Of Financial Analysts Should Be Allowed.

The SEC intends to introduce emails from, to, and between defendants attaching and discussing written reports of financial analysts. The purpose of this evidence is, as defendants recognize, to show defendants' knowledge and awareness of how the information they were transmitting into the marketplace was being understood. Defendants' state of mind is a central issue in this case and the jury will have to determine whether defendants acted intentionally, recklessly, negligently, or in good faith depending on the claim at issue. Defendants move to exclude this evidence under Fed. R. Evid. 802 and 403. *See* [Filing No. 282 (Motion) at pp. 9, 10].

A.  This Evidence is Not Hearsay.

The SEC does not intend to offer any analyst reports other than those attached to emails to, from, or between defendants or other witnesses.[2] The reports will not be offered to show the truth of any particular statement in the report, but rather to show knowledge, awareness, and state of mind. As such, they are not hearsay. *See* Fed. R. Evid. 801(c)(2). This district court has previously allowed out of court statements offered to show a defendant's state of mind. *See Wilson v. Republic Airways Holdings, Inc.*, 2015 WL 1564988 at *5 (S.D. Ind. April 8, 2015) (Magnus-Stinson, J.) (statements offered to show state of mind are not hearsay); *see also United States v. Norwood*, 798 F.2d 1094, 1097 (7th Cir. 1986) (out of court statement offered for the purpose of showing the probable state of mind of the defendant is not hearsay) *Luckie v. Ameritech Corp.,* 389 F.3d 708, 716 (7th Cir. 2004) (statements were not hearsay because they were offered to show state of mind).[3]

---

[2] The SEC has not listed as exhibits analyst reports other than those attached to emails. *See* [Filing No. 156-1].

[3] In each of the cases cited by defendants, the analyst reports were not attachments to emails, nor were they offered to show the state of mind or knowledge of a party.

B. This Evidence is Relevant.

As noted above, defendants' state of mind is a central issue in this case. The fact that

defendants monitored analyst reports, and the related evidence about what they knew or

understood about how shareholders were understanding information about ITT, makes the

determination that defendants acted with a particular state of mind more probable.

C. This Evidence will not Confuse the Jury.

Given the clear relevance of this evidence, its probative value outweighs any potential

confusion or prejudice. The issue is not whether analysts were misled, but rather whether

defendants thought or knew investors were misled. From the way the evidence will be presented,

as attachments to emails to, from, or between defendants or other witnesses, it will be clear that

what defendants thought or knew is what is at issue.

D. This Evidence Should be Admitted.

There is no basis under either Rule 801 or Rule 403 to exclude this evidence and it should

be allowed.

III.     Evidence Regarding The Amounts Of Defendants' Compensation And Amenities Of
         Their Former Executive Roles At ITT Should Be Allowed.[4]

The SEC intends to introduce evidence of defendants' compensation to show defendants'

motive to engage in fraudulent conduct. Defendants move to exclude this evidence as irrelevant

and unfairly prejudicial. *See* [Filing No. 282 at pp. 11-12].

A. This Evidence is Relevant

While the SEC is not required to prove a defendant's motive, evidence of motive is

relevant to a defendant's intent. *SEC v. Church Extension of Church of God, Inc.*, 2004 WL

---

[4] The SEC has no evidence of defendants' current financial condition or wealth and does not intend to adduce any such evidence. Indeed, the SEC believes such evidence should be precluded. *See* [Filing No. 280 (SEC's Motions in Limine) at p. 30.

771171, *3 (S.D. Ind. Mar. 23, 2004); *see also SEC v. Life Wealth Management, Inc.*, 2012 WL

12919299 at *6 (C.D. Cal. Nov. 9, 2012); *SEC v. Battenberg*, 2011 WL 3472619 at *15 (E.D.

Mich. Aug. 9, 2011) (motive evidence may be relevant in proving scienter). Thus, it is

appropriate for the SEC to introduce motive evidence to attempt to prove scienter. *See, e.g., SEC

v. Goldstone;* 952 F. Supp. 2d 1060, 1242 (D. N.M. 2013). Evidence of high salaries and

continued employment may be evidence of a motive to misrepresent a company's financial

situation.[5] *See United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2007); *see also SEC v.

Delphi Corp.*, 508 F. App'x 527, 532 (6th Cir. Dec. 18, 2012) (noting that factors relevant to

scienter include "the self-interested motivation of defendants in the form of saving their salaries

or jobs"); *SEC v. Goldstone*, 2016 WL 3654273, at *16 (D. N.M., 2016) (Defendants "might

have been tempted to fudge the truth in a tough situation in late 2007 and early 2008 to keep

their income stream intact. Some people do not tell the truth and cross the line when times get

tough. The high salaries suggest a motive, in that [defendants] had skin in the game.").

   B.  This Evidence is More Probative than Prejudicial.

   Evidence of motive may be admitted as long as its probative value outweighs its

prejudicial effect on the party. *See* Fed. R. Evid. 403. Courts routinely find that the probative

value of a financial motive outweighs the risk of prejudice. *See*, *e.g.*, *Quattrone*, 441 F.3d at 187;

*United States v. Holden*, 625 Fed.Appx. 316, 318, 2014 WL 10754146 (9th Cir. Dec. 3, 2014);

*United States v. McMahon*, 938 F.2d 1501, 1508 (1st Cir. 1991); *United States v. Peake*, 143 F.

Supp. 3d 1, 17 (D. P.R. 2013); *United States v. Ferguson*, 2007 WL 4240782 at * 1 (D. Conn.

Nov. 30, 2007); *SEC v. Goldstone*, 2016 WL 3654273, at *16 (D. N.M., 2016). So, too, in this

---

[5] While the specific amount of compensation the Defendants received may not have been tied to ITT's financial performance, ITT's financial performance *was* evaluated when determining whether Defendants would remain employed at ITT. *See* Dkt. # 250-1 at 5.

case, the evidence of defendants' compensation is more probative to prove defendants' motive and scienter than it is prejudicial.

IV.     Evidence That The PEAKS Student Loan Program Could Have Been Consolidated Onto ITT's Balance Sheet Prior To February 28, 2013 Should Be Allowed.[6]

The SEC intends to introduce evidence that defendants were required to reconsider consolidation throughout the relevant time period, that they failed to do so, and that they withheld from the auditors information relevant to that analysis. Defendants have given no examples of the type of evidence they wish to exclude, but to the extent they wish to exclude evidence that the PEAKS program *could* (not should) have been consolidated earlier, the evidence is relevant to defendants' fraudulent scheme and should be admitted.

Defendants certified to ITT's auditors every quarter that they had properly reconsidered consolidation of PEAKS into ITT's balance sheet. Defendants knew that the auditors had been told that Payments on Behalf of Borrowers ("POBOB") complied with the PEAKS agreements. Defendants also knew that that fact was important to the auditors' consideration of whether PEAKS needed to be consolidated into ITT's financial statements. Shortly after ITT began making POBOB, however, defendants received information suggesting that POBOB did not comply with the PEAKS agreements. This information was important information to the consideration of whether PEAKS should be consolidated. Nevertheless, defendants did not provide the information they knew contradicted the auditors understanding.

Information concerning ITT's right to terminate the PEAKS loans servicer was also not provided to auditors in a timely fashion. ITT's right to terminate the servicer was the ultimate reason that PEAKS was consolidated into ITT's financial statements. In addition, while ITT ultimately determined that the right to terminate the servicer was triggered in February 2013,

---

[6] The SEC has explained to defendants that it does not intend to argue that consolidation as of February 28, 2014 was inappropriate or attempt to prove that consolidation *should* have occurred at some other date.

Defendants initially believed that right was triggered months earlier. The information concerning

ITT's right to terminate the servicer was important information to the consideration of whether

PEAKS should be consolidated.

This, and other, evidence that defendants were required to reconsider consolidation

throughout the relevant time period, that they failed to do so, and that they withheld from the

auditors information relevant to that analysis, is relevant to defendants' fraudulent scheme.

Defendants' reference to the SEC's answers to Interrogatory 3 is inapposite. As is clear

from the interrogatory itself, the question asks about "accounting errors." The correct reference

should be to the SEC's answer to Interrogatory 1, which sets forth in detail the factual basis of

defendants' fraudulent scheme. *See* [Filing No. 286-1 at pp 3-7 (Plaintiff's Response to

Defendants' First Set of Interrogatories)]. Moreover, even the answer to Interrogatory 3 does not

support defendants' claim that the SEC has affirmed February 28, 2013 as the only possible date

of consolidation. Instead, it states that "[i]n at least February 2013," defendants knew PEAKS

should be consolidated. [Filing No. 283-5 at p. 7]. The SEC clearly never indicated that February

28, 2013 was the only date at which consolidation should have occurred.

There is no basis for excluding evidence that defendants were required to reconsider

consolidation throughout the relevant time period, that they failed to do so, and that they

withheld from the auditors information relevant to that analysis, and such evidence should be

allowed.

V.      Evidence Concerning Alleged Deceit Of PEAKS Program Noteholders Prior To The
        Court's Determination Of Its Admissibility Should Be Allowed.

The SEC intends to offer evidence of communications between defendants and PEAKS

noteholders about the PEAKS program in general and POBOB specifically and argument that

those communications helped defendants in their fraudulent scheme to conceal information from

ITT's auditors and shareholders. Defendants make a huge leap by arguing that, based on their contention that evidence of defendants' failure to disclose POBOB to the noteholders *as a stand-alone violation* should be excluded, *all* evidence concerning deceit of noteholder should be precluded. They provide no basis for this extreme request.

Evidence regarding deceit of the PEAKS noteholders is relevant to the SEC's claims. For example, it was ITT's auditors' understanding from defendant Fitzpatrick that POBOB was discussed, agreed to, and understood by the parties involved in the PEAKS agreements, thus defendant Fitzpatrick's contrasting failure to disclose the information to the noteholders is relevant. PEAKS noteholders also raised several objections that defendants did not communicate to ITT's auditors, and instead continuing to claim that POBOB was entirely consistent with the PEAKS contracts. *See* Dkt. # 251 at 45. Thus, evidence that Defendants did not consult the PEAKS noteholders prior to making this claim is probative of Defendants' deceptive conduct toward ITT's auditors. Further, the Defendants' failure to consult with the PEAKS noteholders is probative of Defendants' lack of good faith; a jury could infer that, had Defendants intended to ensure POBOB was wholly proper, they would have confirmed the PEAKS noteholders had no objection to the practice. And as discussed above, the fact that defendants allowed the auditors to continue to believe that POBOB complied with the PEAKS agreements helped defendants' fraudulent scheme to conceal from investors the true condition and impact of the PEAKS program. Defendants' continuous refusal and delay in providing information to the noteholders after the noteholders learned of POBOB also delayed the day of reckoning when ITT was forced to admit that POBOB did, in fact, violated the PEAKS agreements.

Whether this evidence is viewed as separate deceptive conduct aimed at noteholders or additional evidence of deceit of auditors and investors, this evidence is relevant to defendants'

fraudulent scheme. Moreover, if it is viewed as separate deceptive conduct aimed at noteholders, it is axiomatic that, once defendants' told noteholders about POBOB, they had a duty to speak fully and truthfully. *See Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033 (7th Cir.), cert. denied, 434 U.S. 875, 98 S.Ct. 224, 225, 54 L.Ed.2d 155 (1977). Their failure to do so also bears on defendants' good faith.

Defendants have no basis for their request that <u>all</u> evidence concerning deceit of noteholder should be precluded. Evidence of communications between defendants and noteholders and other evidence of the deceit of noteholders is relevant and should be allowed for all purposes.

VI.     <u>Conclusion</u>

For the reasons stated above, defendants' motions in limine should be denied.

Dated:  May 30, 2018                    Respectfully submitted,

                                        */s/ Polly A. Atkinson*
                                        Nicholas P. Heinke
                                        Polly A. Atkinson
                                        Zachary T. Carlyle
                                        U.S. Securities and Exchange Commission
                                        1961 Stout Street, Suite 1700
                                        Denver, CO 80294-1961
                                        Phone: (303) 844-1071 (Heinke)
                                        (303) 844-1046 (Atkinson)
                                        (303) 844-1084 (Carlyle)
                                        *HeinkeN@sec.gov*
                                        *AtkinsonP@sec.gov*
                                        *CarlyleZ@sec.gov*

                                        *Attorneys for Plaintiff United States*
                                        *Securities and Exchange Commission*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a copy of the foregoing document to be served upon all counsel of record by operation of the Court's Electronic Notification system this 30th day of May, 2018.

/s/ Polly A. Atkinson
Polly A. Atkinson