UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br>     *Plaintiff*, <br><br> *vs.* <br><br> ITT EDUCATIONAL SERVICES, INC., KEVIN M. MODANY, and DANIEL M. FITZPATRICK, <br>     *Defendants*. | ) <br> ) <br> ) <br> )    1:15-cv-00758-JMS-MJD <br> ) <br> ) <br> ) <br> ) <br> ) |

## **ORDER**

Plaintiff United States Securities and Exchange Commission (the "SEC") has sued Defendants Kevin Modany, the former Chief Executive Officer of ITT Educational Services, Inc. ("ITT"), and Daniel Fitzpatrick, the former Chief Financial Officer of ITT, alleging that they violated federal securities laws in connection with two student loan programs created by ITT for ITT students. The SEC and Defendants have filed Motions in Limine in advance of the July 9, 2018 trial in this matter, and those motions are now ripe for the Court's consideration. [Filing No. 280; Filing No. 282.]

### I.
#### STANDARD OF REVIEW

Given the evidentiary vacuum in which denials of motions in limine are made, such a denial is not final. *Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). A court's ruling on a motion in limine is subject to reconsideration "as events at trial unfold." *Moore v. General Motors Corp., Delco Remy Div.*, 684 F.Supp. 220, 220 (S.D. Ind. 1988). Accordingly, none of the Court's rulings here precludes counsel from objecting to offers of evidence at the time of trial or from offering excluded evidence outside the presence of the jury as part of an offer of proof.

# II.
# THE SEC'S MOTION IN LIMINE

The SEC moves in limine to exclude five categories of evidence, which the Court will consider in turn.

### A. Evidence Concerning the Investigation Conducted by Cravath at the Direction of ITT's Audit Committee

First, the SEC seeks to exclude evidence related to an investigation conducted by Cravath, Swaine & Moore, LLP ("Cravath") at the request of ITTs auditor, PriceWaterhouseCoopers ("PWC"), including: (1) evidence of the conclusions of the Cravath investigation; (2) evidence of PWC's response to the Cravath investigation; and (3) PWC's workpapers summarizing Cravath's investigation.

*1. Conclusions of the Cravath Investigation*

The SEC argues that conclusions of the Cravath investigation – specifically, a report by PWC about what Cravath told PWC regarding Cravath's conclusions – should be excluded as hearsay. [Filing No. 280 at 9.] It also argues that evidence about the Cravath investigation has been withheld from the SEC as privileged information. [Filing No. 280 at 9.] The SEC contends that the conclusions of the Cravath investigation are of limited probative value, would cause jury confusion, would be unfairly prejudicial, and would waste time.

Defendants respond that PWC documents regarding the Cravath investigation are probative and are not hearsay because Defendants intend to question the Cravath partner who led the investigation and who delivered Cravath's findings to ITT's Audit Committee. [Filing No. 289 at 4.] Defendants then dispute the SEC's contention that PWC documents regarding the Cravath investigation have been withheld from the SEC, stating that the SEC knew ITT had waived any claim of privilege as to the documents, and that the SEC has not called Cravath witnesses involved in

the investigation, moved to compel production of Cravath's underlying documents, or "otherwise availed itself of abundant opportunities to obtain the material it once again claims is being unfairly withheld." [Filing No. 289 at 5.] As for any jury confusion, Defendants argue that the Court can instruct the jury "that Cravath's conclusions are not a substitute for the jury's own independent determination of Defendants' liability…." [Filing No. 289 at 6.]

The Court finds that PWC documents regarding the Cravath investigation are relevant, and relate directly to the SEC's allegations that ITT withheld certain information from PWC. [*See, e.g.,* Filing No. 306 at 41 (the SEC alleging in the Amended Complaint that Defendants misled PWC by, among other things, withholding that ITT had received a legal opinion that POBOB payments were likely not permitted under the terms of the PEAKS agreements, and failing to disclose that ITT was projecting more than $100 million in CUSO payments if it continued using the minimum monthly payment method).] The documents are not hearsay, as they will be discussed in connection with the Cravath partner who led the investigation and delivered the findings to ITT. Additionally, the SEC has not shown that Defendants failed to produce the documents based on a claim of privilege. To the contrary, it appears that Defendants maintained that the documents were not privileged. [Filing No. 288-2 at 1-2 (letter from counsel for ITT to the SEC's counsel stating "there was never any privilege covering [the documents] – [Cravath] did not have an attorney-client relationship with PwC, and as such, the communications between Cravath and PwC have never been privileged") (emphasis omitted).] And the Court agrees that any confusion the documents may cause can easily be cured by instructing the jury to not substitute Cravath's conclusions for its own judgment.

### 2. *PWC's Response to the Cravath Investigation*

The SEC seeks to exclude testimony that, after Cravath's investigation, "PWC performed the audit of ITT's financials for 2013 and accepted management representation letters from defendants." [Filing No. 280 at 12.] The SEC argues that the evidence would be of limited probative value, would be unfairly prejudicial and confusing, and would waste time. [Filing No. 280 at 13-14.]

Defendants argue that this evidence is relevant to the issue of whether PWC believes it had been deceived. [Filing No. 289 at 7.] They also argue that the evidence is not hearsay, and that any jury confusion can be alleviated through jury instructions. [Filing No. 289 at 7-8.]

The Court finds that evidence of PWC's response to Cravath's investigation is relevant to the issue of whether PWC thought it had been deceived by Defendants based on the results of the investigation. Again, this information is not hearsay given that Defendants will use PWC witnesses to testify regarding PWC's response to Cravath's investigation. [*See* Filing No. 289 at 4 (Defendants noting that they intend to cross-examine PWC witnesses "concerning Cravath's findings and their role in PwC's evaluation of those findings").]

### 3. *PWC's Workpapers Summarizing Cravath's Investigation*

The SEC asserts that Cravath interviewed individuals during its investigation, that a Cravath Associate relayed to PWC employees a summary of the interviews, that "PWC's recollection of [the Associate's] summary was then reduced to a memo from a PWC Senior Associate and that memo was included in PWC's workpapers," and that the memo was not intended to be a verbatim recitation of Cravath's summary. [Filing No. 280 at 14.] The SEC argues that any memos of this nature relating to Cravath's investigation should be excluded because they are inadmissible hearsay, would be unfairly prejudicial, and would cause confusion. [Filing No. 280 at 15-17.]

Defendants argue that the memos are not hearsay because they are not admitted for their truth, but to show PWC's response to the investigation. [Filing No. 289 at 8.] They note that if they impeach a witness with the memos, they either will not be used as prior inconsistent statements but rather to show how PWC reacted to the interviews, or will be with interviewees who reviewed and/or approved their interview memos before the workpapers were finalized, rendering the memos admissible for impeachment. [Filing No. 289 at 8-9.] Defendants also assert that they have named several Cravath witnesses to testify about their interviews. [Filing No. 289 at 9.]

The Court finds the Cravath witness interview memos to be admissible to the extent that they show PWC's response to the Cravath investigation. This evidence is directly relevant to what PWC knew and, consequently, what ITT had told PWC. And because the evidence is not being offered for its truth, it is not hearsay.

The SEC's Motion in Limine #1, relating to evidence concerning the investigation conducted by Cravath at the direction of the ITT Audit Committee, is **DENIED** as discussed above.

### B. PWC Documents Not Seen by Defendants

Second, the SEC argues that as part of its engagement to review and audit ITT's financial statements, PWC created documents (to which Defendants did not have access) which the SEC anticipates Defendants will offer "as substantive proof that there are no material misstatements in ITT's public filings," and to show that Defendants relied on PWC in preparing ITT's public filings. [Filing No. 280 at 17-18.] The SEC contends that these documents are of limited probative value because whether PWC thought Defendants made misrepresentations is irrelevant, and they are of limited value in terms of showing whether information was withheld from PWC because PWC witnesses can testify regarding that. [Filing No. 280 at 18.] The SEC also argues that the documents could cause jury confusion because the jury must decide whether ITT's filings contained

misstatements and should not defer to PWC's conclusions, and because Defendants could not have relied on the documents since they did not have access to them. [Filing No. 280 at 19.]

Defendants respond that PWC's workpapers are probative of PWC's response to the information it received from ITT, and that the evidence corroborates the reasonableness of Defendants' reliance on PWC to "conduct a robust and thorough audit of ITT's financial statements." [Filing No. 289 at 10.] Defendants argue that the workpapers are evidence of the scope and thoroughness of PWC's audit, which supports Defendants' position that their reliance on PWC was reasonable. [Filing No. 289 at 11.]

The Court finds the PWC documents not seen by Defendants to be relevant to the issue of whether Defendants reasonably relied on PWC's advice, and to the extent the documents reflect the information of which PWC was aware. The SEC has alleged that Defendants withheld information from PWC, and the documents are relevant to the extent that they reflect what PWC actually knew. [*See, e.g.*, Filing No. 306 at 41-42 (the SEC alleging in the Amended Complaint that Defendants withheld numerous types of information from PWC).] The focus is not on what Defendants knew, but on what PWC knew based on the information they received from Defendants, and these documents are relevant to that inquiry. Any potential confusion regarding the role of the jury in determining whether ITT's public filings contained misstatements can be cured through appropriate jury instructions. Accordingly, the SEC's Motion in Limine #2 is **DENIED** to the extent the PWC documents not seen by Defendants reveal or relate to the information that PWC was aware of and, additionally, to the extent they reflect PWC's efforts and whether Defendants reasonably relied on PWC's advice.

## C. Evidence Related to Lawyer Witnesses

The SEC notes that Defendants "intend to introduce evidence regarding the involvement of lawyers in ITT's disclosures," and that testimony regarding whether ITT's disclosures complied with the law should be precluded because the lawyers were not disclosed as experts. [[Filing No. 280 at 20](#).] The SEC also argues that Brian Lane should be precluded from testifying about pre-third quarter 2013 disclosures because Defendants have disclaimed any reliance on Mr. Lane for disclosures prior to the third quarter 2013 Form 10-Q, and because Mr. Lane testified that he did not recall providing any advice to ITT on the disclosures in the pre-third quarter 2013 filings. [[Filing No. 180 at 21](#).] Additionally, the SEC contends that Defendants should be precluded from offering evidence of the "silence or non-objection" of counsel because "[c]ounsel merely being present and not speaking up is not advice." [[Filing No. 280 at 22](#).] The SEC asserts that Defendants should have to show that Defendants actually sought and received advice. [[Filing No. 280 at 24](#).]

Defendants argue in their response that attorneys should be permitted to testify regarding the judgments they made and the advice they rendered. [[Filing No. 289 at 13-14](#).] As to Mr. Lane, Defendants argue that he should be able to testify to explain the purpose of the enhanced disclosure language in the Q3 2013 filings, "including the fact that it was not intended to cure a prior inadequate disclosure, which he viewed to be adequate, but was instead meant to address the SEC's focus on POBOB disclosure." [[Filing No. 289 at 14](#).] Defendants contend that ITT's attorneys were not silent, and that evidence regarding their participation in Disclosure Committee meetings and in reviewing ITT's public filings is proper. [[Filing No. 289 at 14](#).] They assert that their argument that they relied on advice of counsel "is not centered on 'silence' during some one-off transaction, but rather addresses a well-established procedure, followed every quarter, in which

7

inside and outside counsel worked shoulder-to-shoulder with ITT management to prepare ITT's public filings, earnings releases, and earnings call scripts." [Filing No. 289 at 15.]

The Court finds that testimony from ITT's lawyers is admissible. First, testimony regarding ITT's disclosure process and the attorneys' role in that process is directly relevant to whether Defendants relied on the attorneys' advice. While the Court stated in its April 23, 2018 Order that no witness may testify regarding another person's scienter, testimony regarding the advice of ITT's counsel may show that Defendants relied on counsel's advice which is a proper consideration in analyzing Defendants' state of mind. [*See* Filing No. 259 at 17; Filing No. 265 at 5.] Additionally, testimony from Mr. Lane regarding the robust disclosures in the Q3 2013 filings is relevant to the issue of why the nature of the disclosures changed from the pre-Q3 2013 disclosures. Defendants contend that the robust disclosure was not intended to cure prior inadequate disclosures, and they are entitled to present testimony from Mr. Lane to rebut the SEC's allegations that the robust disclosure indicates that prior disclosures were inadequate. Finally, while an attorney simply staying silent may not constitute legal advice under certain circumstances, silence in a situation where attorneys played an integral role in the disclosure process and only raised concerns if they believed disclosures were inadequate – as Defendants contend was the case here – is relevant to the issue of whether Defendants relied on ITT's attorneys' advice and, in turn, to the issue of Defendants' scienter.

Testimony regarding the advice ITT's attorneys provided to Defendants, testimony from Mr. Lane regarding the enhanced disclosure language in the Q3 2013 disclosures, and testimony regarding situations where ITT's attorneys did not raise issues with disclosures is admissible, and the Court **DENIES** the SEC's Motion in Limine #3.

### D. Evidence of Defendants' Purported Good Character

The SEC argues that Defendants should be precluded from eliciting testimony of their good character, contending that character evidence is inadmissible to show that an individual acted in accordance with that character on a particular occasion. [[Filing No. 280 at 25-26](#).] The SEC also argues that evidence of good character is only admissible after an individual's character has been attacked, and that neither the allegations of fraud, nor the possibility that the SEC will seek to impeach Defendants, constitute attacks on character. The SEC contends that if Defendants are allowed to present evidence of their good character, the SEC intends to present rebuttal evidence. [[Filing No. 280 at 27](#).]

In response, Defendants argue that the evidence they seek to present is not character evidence, but rather is evidence regarding Mr. Fitzpatrick's state of mind and exercise of reasonable care, which are relevant to his scienter. [[Filing No. 289 at 18](#).] Defendants assert that if the SEC elicits testimony from witnesses that Defendants intentionally deceived them as part of a scheme to hide material information, then they "may contend that the SEC has attacked Defendants' character for truthfulness, which would open the door to rebuttal reputation and/or opinion evidence of Defendants' character for truthfulness." [[Filing No. 289 at 18-19](#).] Defendants note that the SEC has stipulated that it will not seek to introduce evidence of other investigations or of ITT's bankruptcy, and should not be permitted to breach this stipulation even if Defendants present character evidence in response to the SEC's witnesses' attacking Defendants' character for truthfulness. [[Filing No. 289 at 19](#).]

Federal Rule of Evidence 404(a)(1) provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Rule 608 states that "evidence of truthful character is admissible

9

only after the witness's character for truthfulness has been attacked." Fed. R. Evid. 608(a). It is well-settled that "[f]iling a claim based on allegations of securities fraud does not constitute an attack on a defendant's character for truthfulness." *Securities and Exchange Commission v. Jacobs*, 2014 WL 12597832, at *3 (N.D. Oh. 2014) (citing *S.E.C. v. Towers Fin. Corp.*, 966 F.Supp. 203, 206 (S.D. N.Y. 1997); *S.E.C. v. Morelli*, 1993 WL 603275, at *1 (S.D.N.Y. 1993)). Because evidence that the SEC presents relating to Defendants' alleged commission of securities fraud does not constitute an attack on Defendants' character, the Court **GRANTS** the SEC's Motion in Limine #4 regarding evidence of Defendants' good character. To the extent the SEC does directly attack Defendants' character at trial, the Court will consider whether Defendants may present character evidence at that point. But presenting evidence that Defendants engaged in securities fraud does not automatically constitute an attack on character triggering Defendants' entitlement to present evidence of good character under Fed. R. Evid. 608.

### E. Evidence or Argument Regarding the SEC's Charging Decisions

The SEC moves to exclude evidence or argument regarding the SEC's charging decisions, arguing that such evidence is irrelevant, would waste time, and would confuse the jury. [Filing No. 280 at 28-29.] It notes that the evidence "has no probative value to the issue of whether the defendants committed the alleged violations of the law, and would only serve to mislead the jury, waste time, cause the jury to speculate regarding the SEC's deliberative processes, and ultimately confuse the issues the jury needs to decide under the Court's instructions." [Filing No. 280 at 29.]

Defendants argue in response that evidence regarding the SEC's charging decisions "is highly relevant with respect to the motive and potential bias of particular witnesses whom the SEC declined to charge in this case and whom the Defendants expect will testify for the SEC." [Filing

10

No. 289 at 20.] Defendants assert that they are entitled to cross-examine these witnesses to demonstrate their bias or motive in testifying (i.e., that the witnesses "had a motive to skew their testimony to avoid charges"), and to argue that the witnesses' testimony should be discounted or disregarded. [Filing No. 289 at 20.]

The Court agrees with Defendants that testimony regarding the SEC's charging decisions is relevant to the issue of whether certain witnesses may be biased. Defendants "have the right to cross-examine witnesses and expose 'a witness' motivation in testifying.'" *U.S. v. Beck*, 625 F.3d 410, 417 (7th Cir. 2010) (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). "[T]he exposure of these motivations lies at the 'core' of the confrontation right." *Beck*, 625 F.3d at 417 (quoting *Davis*, 415 U.S. at 316). The Court finds that evidence regarding whether certain witnesses were "charged" or targeted by the SEC is relevant to whether those witnesses may be biased, and Defendants may inquire into those decisions on cross examination. *See United States v. Presbitero*, 569 F.3d 691, 703 (7th Cir. 2009) ("Cross examining a witness to establish bias implicates a core value of the Sixth Amendment's Confrontation Clause"); *United States v. Manske*, 186 F.3d 770, 777 (7th Cir. 1999) ("parties should be granted reasonable latitude in cross-examining target witnesses"). Accordingly, the Court **DENIES** the SEC's Motion in Limine #5.

### F. Evidence or Argument of Adverse Impact from this Case or any Remedies

The SEC moves to exclude evidence or argument of the impact that the SEC's investigation or this litigation has had on Defendants and the impact the imposition of any remedies would have on them. [Filing No. 280 at 30-32.] Defendants do not object to the SEC's motion, so the Court **GRANTS** the SEC's Motion in Limine #6.

11

# III.
## DEFENDANTS' MOTION IN LIMINE

Defendants move to exclude five categories of evidence, which the Court discusses below.

### A. Evidence or Argument Concerning ITT's Public Filings After the Third Quarter of 2013

Defendants argue that the SEC should not be permitted to present evidence regarding ITT"s public filings after the third quarter of 2013 because it has not alleged that any filings after that time period contain misstatements or omissions. [Filing No. 282 at 6.] Defendants contend that they negotiated a stipulation with the SEC regarding ITT's waiver of the attorney-client privilege for filings from the third quarter of 2013 and certain filings from before that time period, and "may have waived privilege (and Defendants would certainly have sought such a waiver), and discovery would have occurred, as to those filings" had Defendants known the SEC would seek to present evidence regarding post-third quarter 2013 filings. [Filing No. 282 at 7-8.] Defendants argue that the SEC should not be permitted to "expand[ ] its claims at this point." [Filing No. 282 at 8.]

In its response, the SEC argues that filings from after the third quarter of 2013 are relevant because they "have the tendency to make consequential facts more probable and are therefore relevant." [Filing No. 287 at 2.] The SEC also contends that discovery was not temporally limited, and that ITT waived privilege as to, and produced documents prepared by, ITT's lawyers in 2014. [Filing No. 287 at 2.]

The Court finds that evidence regarding public filings after the third quarter of 2013 are relevant to the SEC's allegations. The SEC alleges that Defendants engaged in a scheme, and that part of the evidence of this scheme is that ITT began to disclose the consequences of its practices over the course of 2014, and restated its financial results in post-third quarter 2013 filings. Even though the SEC does not allege that these post-third quarter 2013 filings contain misstatements,

12

those filings are directly relevant to the SEC's scheme liability allegations and also to whether statements in public filings for the third quarter of 2013 and earlier were false. The Court **DENIES** Defendants' Motion in Limine #1.

## B. Evidence or Argument Concerning Written Reports of Financial Analysts

Defendants argue that any evidence or argument concerning statements or writings by securities analysts about ITT during earnings calls is inadmissible hearsay, and could cause jury confusion and undue prejudice to Defendants. [Filing No. 282 at 10.] They argue that "[a]ny arguments or evidence concerning whether these analysts were misled would be not only speculative and hearsay, but would also be unduly prejudicial to Defendants and confusing to a jury." [Filing No. 282 at 11.]

The SEC responds that it intends to introduce emails from, to, and between Defendants attaching and discussing written reports of financial analysts "to show defendants' knowledge and awareness of how the information they were transmitting into the marketplace was being understood." [Filing No. 287 at 3.] Defendants argue that this evidence is not hearsay because it is not offered for its truth, but rather to show Defendants' "knowledge, awareness, and state of mind." [Filing No. 287 at 3.] It argues that "defendants' state of mind is a central issue in this case. The fact that defendants monitored analyst reports, and the related evidence about what they knew or understood about how shareholders were understanding information about ITT, makes the determination that defendants acted with a particular state of mind more probable." [Filing No. 287 at 4.]

Evidence regarding Defendants' communications related to written reports of financial analysts is relevant to the issues of what Defendants knew and their state of mind – key issues in this case. These documents are relevant to the extent that they reveal Defendants' awareness of how

13

shareholders were understanding the information in the marketplace regarding ITT, and are generally admissible because they are not offered to show their truth. To the extent that Defendants have hearsay objections to particular documents at trial, the Court will rule on those objections if they arise. In addition, given that the SEC is only seeking to admit the information for a limited purpose – and not to prove the truth of the analysts' statements – Defendants may request a limiting instruction prior to trial. Defendants' Motion in Limine #2 is **DENIED**.

### C. Evidence or Argument Regarding the Amounts of Defendants' Compensation, Amenities of Their Former Executive Roles at ITT, or Their Financial Conditions

Defendants argue that the Court should bar the SEC from introducing evidence relating to the amounts of Defendants' salaries and bonuses, amenities of their former roles at ITT, and financial conditions. They assert that "neither Defendant earned income linked to ITT's financial performance, making Defendants' salary or bonus amounts irrelevant to the alleged scheme," and that such evidence would be unduly prejudicial and misleading to the jury. [Filing No. 282 at 11-12.] Defendants point to Seventh Circuit caselaw which they contend stands for the proposition that evidence of the financial condition of parties should not be admissible at trial. [Filing No. 282 at 13.]

In response, the SEC argues that evidence of compensation and amenities is relevant because it shows motive, which may be relevant to scienter. [Filing No. 287 at 4-5.] It argues that "[e]vidence of high salaries and continued employment may be evidence of a motive to misrepresent a company's financial situation." [Filing No. 287 at 5.] The SEC contends that this evidence is more probative than it is prejudicial. [Filing No. 287 at 5-6.] The SEC advises that it does not have any evidence of Defendants' financial condition and does not intend to adduce any such evidence. [Filing No. 287 at 4.]

14

The Court notes that its finding on summary judgment that the SEC had not presented evidence that Defendants received money or property based on ITT's performance is irrelevant to the issue presented here. In order to show that Defendants had violated Section 17(a)(2) of the Securities Act, the SEC needed to show that they "obtain[ed] money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 15 U.S.C. § 77q(a). The Court concluded in its March 23, 2018 Order that the SEC had not presented evidence that Defendants "obtained property or money based on ITT's performance," so its § 17(a)(2) claim failed. The issue now is whether evidence of Defendants' compensation arrangement, including salary, bonus, and amenities, is relevant to the SEC's remaining claims.

The Court finds that evidence regarding the Defendants' salaries, bonuses, and amenities they received in connection with their positions at ITT is relevant to Defendants' motive. *See Securities and Exchange Commission v. Goldstone*, 2016 WL 3654273, at *15 (D. N.M. 2016) (allowing evidence of defendants' salaries, dividends, and bonuses because it was relevant to defendants' motive); *United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006) (evidence of defendant's salary allowed to show that his "substantial salary established a motive for him to obstruct the IPO allocation investigations"); *United States v. Logan*, 250 F.3d 350, 369 (6th Cir. 2001) (salary admissible as evidence of motive because "it demonstrated what [defendants] stood to lose if they properly reported the actual loan delinquencies").

Second, because the SEC stated in its response that is "has no evidence of defendants' current financial condition or wealth and does not intend to adduce any such evidence," [Filing

15

No. 287 at 4], Defendants' motion is moot as to the issue of evidence of Defendants' financial condition or wealth.

Defendants' Motion in Limine #3 is **DENIED** as it relates to Defendants' salary, bonuses, and amenities they received while officers at ITT, and is **DENIED AS MOOT** as it relates to Defendants' financial condition or wealth.

### D. Evidence or Argument That the PEAKS Student Loan Program Should Have Been Consolidated Onto ITT's Balance Sheet Prior to February 28, 2013

Defendants argue that the SEC has abandoned any claim that ITT should have consolidated the PEAKS Trust onto its balance sheet on any date prior to February 28, 2013, so should be precluded from introducing related evidence. [Filing No. 282 at 14-17.] Defendants contend that the SEC has stipulated that it will not seek to introduce evidence or argument that consolidation of the PEAKS Program onto ITT's balance sheet as of February 28, 2013 was "not appropriate" under GAAP, but is preserving the right to introduce evidence that consolidation should have taken place before February 28, 2013 "without indicating what it believes that date or dates should be." [Filing No. 282 at 16-17.]

The SEC states in its response that it intends to introduce evidence that Defendants were required to reconsider consolidation of the PEAKS Program "throughout the relevant time period, that they failed to do so, and that they withheld from the auditors information relevant to that analysis." [Filing No. 287 at 6.] It argues that evidence that the PEAKS Program could have been consolidated earlier is relevant to Defendants' fraudulent scheme because Defendants certified to ITT's auditors every quarter that they had properly reconsidered consolidation of PEAKS, they knew that the auditors had been told that POBOB complied with the PEAKS agreements, and they knew that this fact was important to the auditors. [Filing No. 287 at 6.] The SEC also asserts that

16

other information, such as ITT's right to terminate the PEAKS loan servicer, was not provided to auditors in a timely fashion. [Filing No. 287 at 6-7.]

The Court finds that the evidence Defendants seek to preclude is relevant to the SEC's scheme liability allegations. Even if the SEC is not claiming that ITT should have consolidated the PEAKS Trust before February 28, 2013, evidence relating to its consideration of whether it should do so, including the information it provided to auditors on this issue, is relevant to the SEC's scheme liability allegations. Much like public filings after the third quarter of 2013, discussed above, evidence related to acts or omissions for which the SEC does not specifically assert a claim can still support the SEC's scheme liability allegations. Consequently, the Court **DENIES** Defendants' Motion in Limine #4.

### E. Evidence or Argument Concerning Alleged Deceit of PEAKS Program Noteholders Prior to the Court's Determination of Its Liability

Defendants move to exclude evidence or argument related to the alleged deceit of PEAKS Program Noteholders because they "understand that the SEC is not contending that the PEAKS program noteholders were victims of securities fraud violations," but rather that the SEC will present the evidence in support of its scheme liability claims. [Filing No. 282 at 17.] Defendants argue that, through its rulings on the parties' Cross Motions for Summary Judgment, "[t]he Court has…preserved for trial the issue of whether evidence concerning disclosures to the PEAKS noteholders could support the SEC's scheme liability claims," so such evidence should not be admissible until the Court has ruled on whether the evidence is relevant. [Filing No. 282 at 18-19.] Defendants request that, should the SEC seek to introduce the evidence, it be required to do so outside the jury's presence so that the Court can rule on its admissibility. [Filing No. 282 at 19.]

In response, the SEC states that it intends to offer evidence of communications between Defendants and PEAKS Noteholders about the PEAKS Program in general and POBOB and "argument that those communications helped defendants in their fraudulent scheme to conceal information from ITT's auditors and shareholders." [Filing No. 287 at 7-8.] The SEC argues that even though it does not claim failure to disclose POBOB to the PEAKS Noteholders was a standalone violation, the evidence is relevant to its scheme liability allegations. For example, the SEC argues that the understanding ITT's auditors had regarding what Defendants had told the PEAKS Noteholders versus what Defendants actually told the PEAKS Noteholders is relevant to the SEC's allegations that Defendants withheld information from the auditors. [Filing No. 287 at 8.] It also asserts that Defendants' failure to consult with the PEAKS Noteholders is relevant to Defendants' lack of good faith. [Filing No. 287 at 8.]

Consistent with its ruling on Defendants' Motion for Summary Judgment as to the PEAKS Noteholder allegations, [Filing No. 259 at 24], the Court finds no basis to exclude evidence related to Defendants' alleged deceit of the PEAKS Program Noteholders at this point. This evidence is relevant to the SEC's scheme liability allegations, and particularly to what ITT's auditors knew and whether Defendants were withholding information from them. Defendants' Motion in Limine #5 is **DENIED**.

## IV.
### CONCLUSION

For the foregoing reasons, the SEC's Motion in Limine, [280], is **GRANTED IN PART** and **DENIED IN PART** as follows:

- Motion in Limine #1 is **DENIED**;
- Motion in Limine #2 is **DENIED**;
- Motion in Limine #3 is **DENIED**;

- Motion in Limine #4 is **GRANTED**;

- Motion in Limine #5 is **DENIED**; and

- Motion in Limine #6 is **GRANTED**.

Defendants' Motion in Limine, [282], is **DENIED** in all respects.

To the extent the parties' objections to exhibits do not already reflect which objections fall within the Motions in Limine,[1] and given the volume of exhibits and objections to those exhibits, the Court **ORDERS** the parties to file updated objections by **noon on June 20, 2018** reflecting which objections have now been resolved by this Order. Further, counsel are strongly counseled to carefully scrutinize their proposed exhibit lists, and to take full advantage of various methods of streamlining presentation of the evidence to the jury. For example, Rule 1006 of the Federal Rules of Evidence provides a mechanism for summarizing voluminous records. Stipulations are also encouraged. The parties shall work next week to resolve objections, agree to summaries and/or stipulations, and file a joint report of their efforts by **noon on June 22, 2018**.

Date: 6/15/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

---

[1] For example, the SEC's Objections to Defendants' Trial Exhibit List include as an exhibit a spreadsheet which reflects which specific exhibits are subject to the SEC's Motions in Limine. [Filing No. 311-1.] A similar spreadsheet provided by Defendants and reflecting their objections to the SEC's Trial Exhibit List does not appear to reflect which objections are now resolved by the rulings on Defendants' Motion in Limine. [Filing No. 316.] Defendants list only the rules upon which their objections are based, and not whether the objections are included in their Motion in Limine.